# EXHIBIT 13

# LOAN AGREEMENT

This Agreement, dated the 17 day of October, 2016, by and between EFG America, LLC, a Delaware limited liability company (hereinafter called the "Borrower") and A.S.K. – 2000, LLC, an Arizona limited liability company ("Creditor").

## WITNESSETH

**WHEREAS,** Borrower has requested that Creditor provide it with a credit facility, as more particularly described herein; and

**WHEREAS,** Creditor has agreed to the request so made by Borrower, subject to and upon the terms and conditions set forth in this Agreement.

**WHEREAS,** Borrower has secured the interest of certain residential real estate to be used as collateral for the credit facility.

**NOW, THEREFORE,** the parties hereto, in consideration of the mutual covenants and conditions herein contained, and intending to be legally bound, do hereby agree as follows:

**Section 1.  Loan**

Subject to the terms and conditions of this Agreement, Creditor agrees to loan to Borrower the sum of Five Hundred Thousand Dollars ($500,000) (the "Loan"). This Loan is evidenced by a Note (the "Note") executed and delivered by Borrower dated of even date herewith and shall be payable and bear interest in accordance with the terms described therein. Proceeds of the Loan shall be made available to Borrower upon execution of this Agreement, the Note, Security Agreement and Escrow Agreement (all together defined as the Loan Documents"). Proceeds shall be wire transferred to the trust account of Niehaus Wise & Kalas, Ltd. legal counsel for Borrower. Wiring instructions are provided by exhibit hereto. The Loan shall be due and payable in full, including all accrued interest payable in cash on the date which is six months from the date hereof. The term may be extended on one or more occasions in Creditor's sole discretion upon written notice from Creditor. Borrower agrees to execute any documents requested by Creditor in connection with any such renewal.

As an inducement to provide the credit facility, Borrower shall issue to Lender or its assigns two and one-half B Unit Royalty Interests of the Borrower, such issuance shall be effective as of the date of the execution and funding of the Note.

**Section 2.  Purpose**

The proceeds of the Loan shall be used for business purposes of the Borrower.

- 1 -

## Section 3. Representations and Warranties

Borrower represents and warrants that:

3.1    Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and is duly authorized to do business in the State of Texas and in every other state where the nature of its business so requires.

3.2    Borrower has full power and authority and is duly authorized and empowered to enter into, execute, deliver and perform this Agreement, the Note and all other Loan Documents; each of this Agreement, Note and the other Loan Documents, upon delivery to the Creditor, will constitute a valid and binding obligation of Borrower enforceable in accordance with its respective terms.

3.3    No material litigation is pending or threatened against Borrower.

3.4    The execution, delivery and performance by Borrower of this Agreement, Note and the other Loan Documents shall not, by the lapse of time, the giving of notice or otherwise, constitute a violation of any applicable law or a breach of any provision contained in Borrower's Certificate of Formation or Operating Agreement or in any agreement, instrument or document to which Borrower is now a party or by which it or its property is bound.

3.5    During the term of this Loan, the representations of Borrower shall remain materially accurate and correct.

## Section 4. Covenants of the Borrower

Borrower agrees that, so long as the Note shall be outstanding, unless Creditor shall otherwise consent in writing:

4.1    Borrower shall pay when due the principal and the interest on the Note.

4.2    Borrower shall pay all charges, taxes, assessments, and claims in a timely manner so that they will not become or result in a lien against Borrower's assets, except any charges or liabilities which are being contested in good faith by appropriate legal proceedings.

4.3    Borrower shall maintain and keep in force insurance of the types and in amounts customarily carried by responsible companies in lines of business similar to Borrower's and as required by any other agreement with Creditor, including but not limited to fire, public liability, property damage, and workers' compensation insurance, with companies and in amounts satisfactory to Creditor and shall deliver to Creditor from time to time at Creditor's request evidence of such insurance acceptable to Creditor.

4.4    Borrower will not violate any laws or regulations.

CONFIDENTIAL                                                                                    CAPITAL0002824

## Section 5. Events of Default

The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder:

5.1    Borrower shall fail to pay when due any principal or interest on the Note or on any other obligation of Borrower to Creditor.

5.2    Borrower shall fail to perform or comply with any obligation required to be performed or complied with by it under this Agreement, the Note, or the other Loan Documents or any other agreement with Creditor which failure continues for a period of 10 calendar days following notice by Creditor.

5.3    Any representation, warranty, request or certificate made or furnished by Borrower to Creditor that proves to have been untrue or misleading in any material respect when made.

5.4    Borrower (a) files a petition in bankruptcy under the Bankruptcy Code, as it now exists or may hereafter be amended, (the "Code") or an admission seeking the relief therein provided; (b) any bankruptcy or insolvency proceeding is commenced against Borrower and remains undismissed for a period of 30 days; (c) is unable or admits in writing its inability to pay its debts as they become due; (d) makes an assignment for the benefit of creditors; (e) consents to the appointment of a receiver for all or a substantial part of its property; (f) fails to have vacated or set aside within 30 days of its entry an order of a court appointing without its consent a receiver or trustee for all or a substantial part of its property; (g) has an order for relief entered against it under the Code and not discharged within 30 days; or (h) winds up its affairs, suspends its current business or dissolves or terminates its existence.

## Section 6.  Rights on Default

6.1    Upon the occurrence of an Event of Default under Section 7.4, the outstanding principal balance of the Loan, and all accrued interest thereon, and all other obligations of Borrower to Creditor, whether matured or unmatured, (collectively, the "Obligations") shall automatically without any action by Creditor, and without demand, notice or legal process of any kind, be due and payable in full. Upon the occurrence of any other Event of Default under Section 7, and at any time thereafter if such Event of Default is then continuing, all of the Obligations may, at the option of Creditor, and without notice, demand or legal process of any kind, be declared immediately due and payable.

6.2    Upon the occurrence of an Event of Default, Creditor shall have the right to cease making any further advances under the Loan if not already advanced.

6.3.    Upon the occurrence of an Event of Default, Creditor shall have the right to exercise its interests under the Security Agreement, and the Escrow Agreement which shall provide Creditor with the right to transfer upon filing of the deeds held in escrow for the real

CONFIDENTIAL                                                        CAPITAL0002825

property securing this Loan without further notice or cooperation from Borrower or any other party.

## Section 7.  Miscellaneous

7.1      Neither a failure nor any delay on the part of Creditor to exercise any right or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or privilege preclude any other or further exercise thereof or the exercise of any other right or privilege.

7.2      This Agreement shall be binding upon Borrower, its successors and assigns, and shall be binding upon and shall inure to the benefit of Creditor and its respective successors and assigns.

7.3      Borrower will reimburse Creditor for all costs, expenses and reasonable attorney's fees, to the extent permitted by applicable law, expended or incurred by Creditor in (i) enforcing this Agreement, (ii) collecting any sums which become due Creditor hereunder or on the Note, or (iii) realizing on any collateral.   Borrower acknowledges and agrees that (a) this Agreement constitutes a "contract of indebtedness," and (b) the Note has been issued for a business purpose, and not for a purpose that is primarily personal, family or household.

7.4      This Agreement shall be construed in accordance with and governed by the laws of the State of Arizona.

7.5      All notices, requests, demands or other communications required by this Agreement, the Note, or the Subscription Agreement shall be addressed as follows:

| Borrower: | Lender: |
|---|---|
| EFG America LLC | A.S.K. – 2000, LLC |
| 1045 E McKellips Rd, | 2153 E. Coconino Place |
| Mesa AZ 85203 | Chandler, AZ 85249 |
| Attention: Elroy Fimrite 713 548 4753 | Attention: Steven A. Eddy  408 282 7604 |

or at such other address as a party may from time to time request in writing.

7.6      All representations, warranties and agreements herein contained shall survive the issuance of the Note and the making of any advance hereunder.

7.7      This Agreement may be executed in several counterparts, and all counterparts so executed shall constitute one agreement, binding on all parties hereto, notwithstanding that all the parties are not signatories to the same counterpart.

7.8      In case any one or more of the provisions contained in this Agreement, the Note, or the Subscription Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, the invalidity, illegality or unenforceability of such provisions shall

4

not affect any other provisions of this Agreement, the Note, or the Subscription Agreement, and such shall be construed as though the invalid, illegal, or unenforceable provision had never been contained therein.

      7.9    Borrower acknowledges that, as to any and all disputes that may arise between the Borrower and the Creditor, the commercial nature of the transaction out of which this Agreement arises would make any such dispute unsuitable for trial by jury. Accordingly, Borrower hereby knowingly, voluntarily and irrevocably waives any right to trial by jury as to any and all disputes that may arise relating to this Agreement, the Note, the Subscription Agreement or to any of the other instruments executed in connection herewith.

      7.10    This Agreement represents the agreement of the Borrower and the Creditor with respect to the subject matter hereof, and there are no promises, undertakings, representations or warranties by the Creditor related to the subject matter hereof not expressly set forth or referred to in the Note, the Subscription Agreement or herein.

**CREDITOR:**
A.S.K. – 2000, LLC

By: _____
    Steve Eddy, President
        MANAGER

**BORROWER:**
    EFG America, LLC

By: _____
D. Elroy Pintrite, President

5

CAPITAL0002827

# Note

CONFIDENTIAL

CAPITAL0002828

# PROMISSORY NOTE

$500,000.00                     Mesa, Arizona                     *October 17*, 2016

    **FOR VALUE RECEIVED**, EFG America, LLC a Delaware limited liability company ("Maker"), promises to pay to the order of A.S.K. – 2000, LLC, an Arizona limited liability company ("Payee"), at its address _____, in lawful money of the United States of America the sum of FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($500,000), together with interest on the unpaid principal balance hereof at the rate of thirty percent (30%) per annum payable in full six months from the date hereon (the "Due Date"). Payment in full of this note is sometimes referred to as the "Cancellation Payment." No periodic payments are required to be made by Maker. All amounts of principal and interest are due upon the Due Date.

    This Note may be prepaid in whole or in part at any time provided however the minimum interest accrued shall be $75,000.

    Payment of this Note is secured by a Security Agreement dated of even date herewith between Maker and Payee as Secured Party, covering certain real property and certain units of limited liability companies which own such real property.

    Whenever any payment to be made under this Note shall be stated to be due on a Saturday, Sunday or legal holiday for commercial banks under the laws of the State of Arizona, then such payment shall be made on the next succeeding business day.

    Except as otherwise set forth herein, unless otherwise provided by law, Maker and any and all co-makers, endorsers, guarantors and sureties severally waive notice (including, but not limited to, notice of protest, notice of dishonor and notice of intent to accelerate and notice of acceleration), demand, presentment for payment, protest and the filing of suit for the purpose of fixing liability and consent that the time of payment hereof may be extended and re-extended from time to time without notice to them or any of them, and each agrees that his, her or its liability on or with respect to this Note shall not be affected by any release of or change in any security at any time existing or by any failure to perfect or to maintain perfection of any lien or security interest in any such security.

    Maker warrants and represents to Payee, and to all other owners and holders of any indebtedness evidenced hereby, that the loan evidenced by this Note is and shall be solely for business or commercial purposes and not primarily for personal, family or household use. Maker acknowledges that the loan evidenced by this Note is specifically exempted under Section 226.3(a) of Regulation Z issued by the Board of Governors of the Federal Reserve System and under the Truth-in-Lending Act and that no disclosures are required to be given under such regulations and federal laws in connection with this Note.

    It is agreed that time is of the essence of this agreement, and that, in the event of the failure of the Maker to pay any installment of interest when due and the continued failure to pay such installment for ten (10) days after such installment is due, the principal balance of this Note shall

accrue interest from such tenth (10th) day at the rate of thirty-six percent (36%) per annum until all accrued interest hereon has been paid.

Maker acknowledges that this Note has been executed and delivered in Mesa, Arizona and the rights, duties, obligations of the parties and the provisions contained in this Note shall be governed and construed in accordance with the laws of the State of Arizona. In the event that any provisions of this Note shall, for any reason and to any extent, be invalid or unenforceable, the remainder of this Note and/or the application of such provision shall not be affected thereby, but rather shall be enforced to the greatest extent permitted by law. For purposes of any suit relating to this Note, Maker hereof submits itself to the jurisdiction of any court sitting in the State of Arizona and further agrees that venue in any suit arising out of this Note or any venue shall be fixed in the County where Mesa, Arizona resides. Final judgment in any suit shall be conclusive and may be enforced in any jurisdiction within or without the United States of America, by suit on the judgment, a certified or exemplified copy of which shall be conclusive evidence of such liability.

All of the endorsers hereof waive presentment, demand, notice of dishonor, protest, notice of protest and non-payment, agree and consent to any and all waivers, extensions and renewals which the holder may grant and agree and consent that any collateral for this Note may be exchanged or surrendered by the holder in whole or in part from time to time and that the rate of interest may from time to time be changed, notice of any and all such waivers, extensions, renewals, changes, exchanges or surrenders being hereby waived. All of the endorsers hereof waive advertisement or other notice of the sale of any such collateral and agree that all of the provisions of this Note shall apply to and bind the undersigned endorsers as though they were Makers.

EFG AMERICA, LLC,
a Delaware limited liability company

By: _____
D. Elroy Fimrite, President

CAPITAL0002830

# Wiring Instructions

Niehaus Wise & Kalas, Ltd. IOLTA
Acct #2016145
Routing #041215621
Swift Code: SIGTUS31
Signature Bank, N.A.
4607 W. Sylvania Ave.
Toledo, OH 43623
419.841.7773

7

CONFIDENTIAL

CAPITAL0002831

# SECURITY AGREEMENT

## FOR

### $500,000 NOTE

This Security Agreement (the "**Security Agreement**"), dated as of the *17th* day of October, 2016, is by and between EFG AMERICA, LLC, a Delaware limited liability company ("**Debtor**") and A.S.K. – 2000, LLC ("**Secured Party**").

## SECTION I.
## CREATION OF SECURITY INTEREST

The Debtor hereby grants to the Secured Party a security interest in the Collateral described in Section II of this Security Agreement to secure performance and payment of all obligations and indebtedness of Debtor to the Secured Party described in Section III of this Security Agreement (collectively, the "**Obligations**").

## SECTION II.
## COLLATERAL

In order to secure the payment when due of any and all Obligations, including specifically a certain promissory note of even date herewith in the amount of $500,000 from Debtor to Secured Party, the Debtor hereby pledges to the Secured Party and grants to the Secured Party a security interest in certain real property assets and certain personal property in the form of units of certain limited liability companies and all other rights, contractual or otherwise, with respect thereto and all proceeds, distributions, cash, instruments and other property from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of such collateral, and all proceeds of any and all of the foregoing; whether now owned or hereafter acquired or controlled by Debtor and howsoever Debtor's interest therein may arise or appear (whether by ownership, security interest, claim or otherwise)(collectively, the "**Collateral**") as identified as follows:

The real properties identified on Exhibit A representing five separate properties at various locations.

All of the outstanding units of the limited liability companies which own one of the real properties identified on Exhibit A; the limited liability company and such units are identified on Exhibit B attached hereto.

## SECTION III.
## PAYMENT OBLIGATIONS OF THE DEBTOR

1.    The Debtor shall pay to the Secured Party any sum or sums due or which may become due pursuant to that certain promissory note dated of even date herewith from Debtor to Secured Party in the original principal amount of $500,000.00 (the "**Promissory Note**").

2.    The Debtor shall account fully and faithfully to the Secured Party for proceeds from disposition of the Collateral in any manner and shall pay or turn over promptly in cash, negotiable instruments, drafts, assigned accounts or chattel paper all the proceeds from each sale to be applied to the Obligations to the Secured Party, subject if other than cash, to final payment or collection. Application of such proceeds to Obligations of the Debtor shall be in the sole discretion of the

CAPITAL0002832

Secured Party, provided such application of proceeds is made by the Secured Party in a reasonable manner.

3.     The Debtor shall pay to the Secured Party on demand all expenses and expenditures, including reasonable attorney's fees and other legal expenses incurred or paid by the Secured Party in exercising or protecting its interests, rights and remedies under this Security Agreement.

4.     The Debtor shall pay immediately, without notice, the entire unpaid Obligations of the Debtor to the Secured Party whether created or incurred pursuant to this Security Agreement or otherwise, upon the Debtor's default under Section V of this Security Agreement.

5.     Delivery of the Collateral.

(a)     Upon the request of the Secured Party, any certificates evidencing or representing a portion of the Collateral shall be delivered to the Secured Party upon the execution and delivery of this Agreement. All other certificates and instruments constituting, evidencing or representing a portion of the Collateral from time to time shall be delivered to the Secured Party promptly upon the request thereof by the Secured Party. All such certificates and instruments shall be held by or on behalf of the Secured Party pursuant hereto, and shall be delivered to the Secured Party in suitable form for transfer by delivery or shall be accompanied by duly executed instruments of transfer or assignment in blank, all in form and substance satisfactory to the Secured Party.

(b)     If the Debtor shall receive, by virtue of it being or having been an owner of any Collateral, any (i) stock certificate, promissory note or instrument (ii) option or right, whether as an additional to, substitution for, or in exchange for, any Collateral, or otherwise; (iii) dividends payable in securities or other property; or (iv) dividends or distributions on dissolution, in partial or total liquidation or from capital, capital surplus or paid-in surplus, the Debtor shall receive such stock certificate, promissory note, instrument, payment or distribution in trust for the benefit of the Secured Party, shall segregate it from the Debtor's other assets and shall deliver it forthwith to the Secured Party in the exact form received, with any necessary endorsement and appropriate stock powers duly executed in blank, to be held by the Secured Party as Collateral and as additional collateral security for the Obligations.

## SECTION IV.
## THE DEBTOR'S COVENANTS

The Debtor makes the following covenants to the Secured Party:

1.     The Debtor shall, at its own expense, do, make, procure, execute and deliver all acts, things, writings and assurances as the Secured Party may at any time request to protect, assure or enforce its interests, rights and remedies created by, provided in or emanating from this Security Agreement.

2.     The Debtor shall not sell, transfer, assign or otherwise dispose of the Collateral or any interest therein except as contemplated herein, or in the ordinary course of Debtor's business or as authorized in writing by the Secured Party, and the Debtor shall keep the Collateral, free from

CONFIDENTIAL                                                                    CAPITAL0002833

unpaid charges, including taxes, and from liens, encumbrances and security interests other than that of the Secured Party as of the due date of the Note.

3.    The Debtor shall sign and execute alone or with the Secured Party any Financing Statement or other document or procure any document and pay all connected costs necessary to protect the security interest under this Security Agreement against the rights or interests of third persons.

4.    Debtor represents and warrants that, upon filing of a financing statement with the Secretary of State for the State of Delaware, the security interest granted to the Secured Party in the Collateral is a perfected first priority interest. If the Collateral is owned other than by Debtor, Debtor shall secure a power of attorney for the control of such Collateral.

## SECTION V.
## EVENTS OF DEFAULT

The Debtor shall be in default under this Security Agreement upon the happening of any condition or event set forth below (herein called an "**Event of Default**"):

1.    Debtor's failure to pay when due any Obligations secured by this Security Agreement;

2.    Default by the Debtor in punctual performance of any of the obligations, covenants, terms or provisions contained or referred to in this Security Agreement or the Promissory Note and such failure continues for a period of five (5) business days following Debtor's receipt of notice of such failure;

3.    Any warranty, representation or statement contained in this Security Agreement or made or furnished to the Secured Party by or on behalf of the Debtor in connection with this Security Agreement or to induce the Secured Party to make a loan to Debtor proves to have been false in any material respect when made or furnished;

4.    Loss, theft, sale (except as authorized in this Security Agreement) or encumbrance to or of any of the Collateral, or the making of any levy, seizure or attachment thereof or thereon;

5.    Sale (other than in the ordinary course of business) of the assets of the Debtor; or

6.    The Debtor's dissolution, termination of existence, insolvency or business failure; the appointment of a receiver of all or any part of the property of the Debtor; an assignment for the benefit of creditors by the Debtor; the calling of a meeting of creditors of the Debtor; or the commencement of any proceeding under any bankruptcy or insolvency laws by or against the Debtor.

## SECTION VI.
## SECURED PARTY'S RIGHTS AND REMEDIES

A.    <u>Rights Exclusive of Default</u>

1.    This Security Agreement, the Secured Party's rights hereunder or the Obligations hereby secured may be assigned by Secured Party, and in any such case the assignee shall be

entitled to all of the rights, privileges and remedies granted in this Security Agreement to the Secured Party.

       2.     The Secured Party may execute, sign, endorse, transfer or deliver in the name of the Debtor, notes, checks, drafts or other instruments for the payment of money and receipts, certificates of origin, applications for certificates of title or any other documents, necessary to evidence, perfect or realize upon the security interest and obligations created by this Security Agreement.

       3.     At its option, the Secured Party may discharge taxes, liens or security interests or other encumbrances at any time levied or placed on the Collateral. The Debtor agrees to reimburse the Secured Party on demand for any payment made, or expense incurred by the Secured Party pursuant to the foregoing authorization, plus interest thereon at the highest lawful rate.

       4.     The Secured Party may at any time demand, sue for, collect or make any compromise or settlement with reference to the Collateral as the Secured Party, in its sole discretion, chooses.

B.     <u>Rights in Event of Default</u>

       1.     Upon the occurrence of an Event of Default, and at any time thereafter, the Secured Party may declare all Obligations immediately due and payable and shall have the rights and remedies of a Secured Party under the applicable Uniform Commercial Code, including without limitation thereto, the right to sell or otherwise dispose of any or all of the Collateral and the right to take possession of the Collateral, and for that purpose the Secured Party may enter upon any premises on which the Collateral or any part thereof may be situated and remove the same therefrom, so long as the same may be accomplished without a breach of the peace. The Secured Party may require the Debtor to assemble the Collateral and make it available to the Secured Party at a place to be designated by the Secured Party which is reasonably convenient to both parties. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, the Secured Party will send the Debtor reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or other disposition thereof is to be made. The requirement of sending reasonable notice shall be met if such notice is mailed, postage prepaid, to the Debtor at the address set forth below at least five days before the time of the sale or disposition. Expenses of retaking, holding, preparing for sale, selling or the like shall include the Secured Party's reasonable attorney's fees and legal expenses, and the Debtor agrees to pay such expenses, plus interest thereon at the highest lawful rate. The Debtor shall remain liable for any deficiency.

       2.     Upon the occurrence of an Event of Default, Secured Party may elect to transfer all of the Collateral in exchange for full payment of the Note and shall be free to hold or liquidate the Collateral in its discretion and without further obligation to Debtor. If Secured Party shall elect to exercise its right to sell the whole or any part of the Collateral hereunder, Debtor agrees to comply or cooperate with Secured Party in complying with all state and federal securities laws, rules and regulations applicable to any sale or disposition of the Collateral by Secured Party hereunder and to take all actions and execute any and all documents, forms and other writings reasonably requested by Secured Party in order to effect such compliance and sale or disposition.

       3.     The Secured Party may remedy any default and may waive any default without waiving any other prior or subsequent default.

CAPITAL0002835

4.    The remedies of the Secured Party hereunder are cumulative, and the exercise of any one or more of the remedies provided for herein shall not be construed as a waiver of any of the other remedies of the Secured Party.

## SECTION VII.
## ADDITIONAL AGREEMENTS

1.    The pronouns used in this instrument are in the masculine gender but shall be construed as feminine or neuter as occasion may require, **"Secured Party"** and **"Debtor,"** as used in this instrument, include the heirs, executors or administrators, successors, representatives, receivers, trustees and assigns of those parties.

2.    If more than one person executes this instrument as the Debtor, their obligations under this instrument shall be joint and several.

3.    The section headings appearing in this instrument have been inserted for convenience only and shall be given no substantive meaning or significance whatever in construing the terms and provisions of this instrument. Terms used in this instrument which are defined in the Arizona Uniform Commercial Code are used with the meanings as therein defined.

4.    The law governing this agreement alone shall be that of the State of Arizona in force at the date of this instrument. The parties acknowledge and agree that they have entered into other instruments and agreements of even date herewith and that such other instruments and agreements may specify a different law governing those instruments and agreements.

5.    All property acquired by the Debtor after the date hereof, which by the terms hereof is required or intended to be subjected to the lien of this Security Agreement, shall, immediately upon the acquisition thereof and without further mortgage, conveyance or assignment, become subject to the lien of this Security Agreement as fully as though now owned by the Debtor and specifically described herein. Nevertheless, the Debtor will do all such further acts and execute, acknowledge and deliver all such further conveyances, mortgages, financing statements and assurances as the Secured Party shall reasonably require for accomplishing the purposes of this Security Agreement.

[SIGNATURE PAGE TO FOLLOW]

CAPITAL0002836

EXECUTED to be effective as of the 17th day of Oct, 2016

**DEBTOR**

BFG America, LLC.

By: _____
Name: _____Douglas E Fimrite_____
Title: _____President_____

**SECURED PARTY**

A.S.K. – 2000, LLC

By: _____
Name: _Dr. Steve Eddy_____
Title: ____MANAGER____

CONFIDENTIAL

CAPITAL0002837

# Exhibit A

## Real Estate Properties

CONFIDENTIAL

CAPITAL0002838

PREPARED BY AND WHEN RECORDED MAIL TO:

Charles D. Niehaus
Niehaus Wise & Kalas Ltd.
7150 Granite Circle, Suite 203
Toledo, Ohio 43617

## QUIT CLAIM DEED

This Indenture is made this _17th_ day of October, 2016, by and between **Gale Ronald Wiltbank**

Grantor herein and **A.S.K. – 2000, LLC**, Grantee herein.

For valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Grantors quit

claim to Grantee all rights, title and interest of Grantor in the real property located at 1578 Union Grove Church

Road, Auburn, Barrow County, Georgia together with all buildings, improvements and fixtures and all rights

and privileges appurtenant or to become appurtenant thereto and legally described as:

**See Exhibit A**

Parcel No.: XX006 039

IN WITNESS WHEREOF, Granotrs have signed their names herein as of the date written above.

**Gale Ronald Wiltbank**

*Gale Ronald Wiltbank*

Grantor

CAPITAL0002839

STATE OF ARIZONA          )
                          ) ss.
MESA COUNTY               )

      **SUBSCRIBED AND SWORN TO** before me this _17_ day of October, 2016, by Gale Ronald Wiltbank as Grantor.

**MY COMMISSION EXPIRES**

_Sept 4, 2018_
Date

_____
Notary Public

OFFICIAL SEAL
BARRY A. SPATH
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Sept. 4, 2018

CONFIDENTIAL

CAPITAL0002840

Exhibit A
To
1578 Union Grove Church Road, Union GA

Legal Description:

All that tract or parcel of land lying and being in the 1740th District G.M., State of
Georgia, County of Barrow, and being more particularly described as Parcel B
according to a plat and survey prepared by W. T. Dunahoo and Associates, Inc.,
certified by W. T. Dunahoo, Georgia Registered Surveyor No. 1577, dated November
20, 1992, entitled "Plot Plan for Harris Hardegree", said plat being of record in the
Office of the Clerk of Superior Court for Barrow County, Georgia in Plat Book 40,
Page 111, which said plat and the recording thereof are by reference hereto
incorporated herein for a more complete and detailed description.

Subject to:    Current taxes and other assessments, reservations in patents and all easements,
rights of way, encumbrances, liens, covenants, conditions, restrictions, obligations and liabilities
as may appear of record.

CONFIDENTIAL

WHEN RECORDED MAIL TO:

Charles D. Niehaus
Niehaus Wise & Kalas Ltd.
7150 Granite Circle, Suite 203
Toledo, Ohio 43617

## QUIT CLAIM DEED

For valuable consideration, **Gale Ronald Wiltbank** Grantor herein, quit claim to **A.S.K. – 2000, LLC**

all rights, title and interest of Grantor in the real property located at 10351 East El Moro Circle, Mesa, Maricopa

County, Arizona together with all buildings, improvements and fixtures and all rights and privileges appurtenant

or to become appurtenant thereto and legally described as:

### See Exhibit A

Parcel No.: 220-71-336

### THIS DEED IS EXEMPT FROM THE AFFIDAVIT OF REAL PROPERTY
VALUE PURSUANT TO ARS 11-1134 A-5

**Gale Ronald Wiltbank**

Grantor

STATE OF ARIZONA )
                    ) ss.
MARICOPA COUNTY )

        **SUBSCRIBED AND SWORN TO** before me this 17 day of October, 2016, by Gale Ronald Wiltbank as Grantor.

**MY COMMISSION EXPIRES**
Sept 4 2018

Notary Public

OFFICIAL SEAL
BARRY A. OPATH
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Sept. 4, 2018

CONFIDENTIAL

CAPITAL0002843

Exhibit A
To
10351 East El Moro

Legal Description:

Lot 313, Parkwood Ranch Parcel 4, According to the Plat of Record in the Office of the County Recorder of Maricopa County, Arizona, Recorded in Book 437 Of Maps, Page 16.

Subject to:     Current taxes and other assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions, restrictions, obligations and liabilities as may appear of record.

CONFIDENTIAL

WHEN RECORDED MAIL TO:

Charles D. Niehaus
Niehaus Wise & Kalas Ltd.
7150 Granite Circle, Suite 203
Toledo, Ohio 43617

## QUIT CLAIM DEED

For valuable consideration, **North Mesa, LLC,** an Arizona limited liability company, Grantor herein,

quit claims to **A.S.K. – 2000, LLC** all rights, title and interest of Grantor in the real property located at 2243 N.

Mesa Drive, Mesa, Maricopa County, Arizona together with all buildings, improvements and fixtures and all

rights and privileges appurtenant or to become appurtenant thereto and legally described as:

### See Exhibit A

Parcel No. 136-13-002T

### THIS DEED IS EXEMPT FROM THE AFFIDAVIT OF REAL PROPERTY
### VALUE PURSUANT TO ARS 11-1134 A-5

**North Mesa, LLC**

By: _Gale Ronald Wiltbank_
　　　Gale Ronald Wiltbank

Its: Managing Member, Grantor

CONFIDENTIAL

STATE OF ARIZONA          )
                          ) ss.
MARICOPA COUNTY           )

      **SUBSCRIBED AND SWORN TO** before me this _17_ day of October, 2016, by Gale Ronald Wiltbank, by and behalf of North Mesa, LLC as its Managing Member, as Grantor.

**MY COMMISSION EXPIRES**
_Sept 4 2018_

                                    Notary Public

OFFICIAL SEAL
BARRY A. SPATH
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Sept. 4, 2018

CAPITAL0002846

Exhibit A
To
2243 North

Legal Description:

A portion of the Southwest quarter of Section 2, Township 1 North, Range 5 East of the Gila and Salt River Base and Meridian, Maricopa County, Arizona, described as follows:

Commencing at the West quarter corner of Section 2, Township 1 North, Range 5 East of the Gila and Salt River Base and Meridian;
Thence South (assumed) along the West Line of said Section 2, a distance of 648.4 feet;
Thence South 89 degrees 32 minutes 44 seconds East a distance of 55 feet to the East right of way of North Mesa Drive;
Thence South along said right of way a distance of 170.00 feet to the TRUE POINT OF BEGINNING;
Thence continuing South along said right of way a distance of 140.00 feet
Thence South 89 degrees 32 minutes 44 seconds East, a distance of 120.00 feet;
Thence North a distance of 140.00 feet;
Thence North 89 degrees 32 minutes 44 seconds West, a distance of 120 feet to the TRUE POINT OF BEGINNING.

Except the North 70 feet.

Subject to:    Current taxes and other assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions, restrictions, obligations and liabilities as may appear of record.

Parcel No.: 136-13-002T

CAPITAL0002847

WHEN RECORDED MAIL TO:

Charles D. Niehaus
Niehaus Wise & Kalas Ltd.
7150 Granite Circle, Suite 203
Toledo, Ohio 43617

---

## QUIT CLAIM DEED

---

For valuable consideration, **7th Street Mesa, LLC**, an Arizona limited liability company, Grantor herein,

quit claims to **A.S.K. – 2000, LLC** all rights, title and interest of Grantor in the real property located at 1049 W.

7th Street, Mesa, Maricopa County, Arizona together with all buildings, improvements and fixtures and all rights

and privileges appurtenant or to become appurtenant thereto and legally described as:

**See Exhibit A**

Parcel No.: 135-29-025

**THIS DEED IS EXEMPT FROM THE AFFIDAVIT OF REAL PROPERTY
VALUE PURSUANT TO ARS 11-1134 A-5**

**7th Street Mesa, LLC**

By: *Gale Ronald Wiltbank*
Gale Ronald Wiltbank

Its: Managing Member, Grantor

STATE OF ARIZONA      )
                          ) ss.
MARICOPA COUNTY    )

        **SUBSCRIBED AND SWORN TO** before me this _15_ day of October, 2016, by Gale Ronald Wiltbank, by and behalf of 7ᵗʰ Street Mesa, LLC as its Managing Member, as Grantor.

**MY COMMISSION EXPIRES**
_Nov. 11, 2019_

                                      Notary Public

```
NOTARY PUBLIC
STATE OF ARIZONA
Maricopa County
GARY S LAW
My Commission Expires November 11, 2019
```

CAPITAL0002849

Exhibit A
To
1049 W. 7th Street


Legal Description:


Lot 25, Emerson Manor, according to Book 59 of Maps, page 20, records of Maricopa County, Arizona.

Subject to:    Current taxes and other assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions, restrictions, obligations and liabilities as may appear of record.

Parcel No.: 135-29-025

CONFIDENTIAL

CAPITAL0002850

WHEN RECORDED MAIL TO:

Charles D. Niehaus
Niehaus Wise & Kalas Ltd.
7150 Granite Circle, Suite 203
Toledo, Ohio 43617

---

## QUIT CLAIM DEED

---

For valuable consideration, **Gale Ronald Wiltbank**, Grantor herein, quit claim to **A.S.K. – 2000, LLC** all rights, title and interest of Grantor in the real property located at 1114 North Sailors Way, Gilbert, Maricopa County, Arizona together with all buildings, improvements and fixtures and all rights and privileges appurtenant or to become appurtenant thereto and legally described as:

### See Exhibit A

**Parcel No.: 304-96-838**

**THIS DEED IS EXEMPT FROM THE AFFIDAVIT OF REAL PROPERTY VALUE PURSUANT TO ARS 11-1134 A-5**

**Gale Ronald Wiltbank**

*Gale Ronald Wittbank*

Grantor

CONFIDENTIAL

CAPITAL0002851

STATE OF ARIZONA          )
                          ) ss.
MARICOPA COUNTY           )

      **SUBSCRIBED AND SWORN TO** before me this _11_ day of October, 2016, by Gale Ronald Wiltbank as Grantor.

**MY COMMISSION EXPIRES**
_Sept 4 2018_

                        Notary Public

OFFICIAL SEAL
BARRY A. BRATH
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Sept. 4, 2018

CONFIDENTIAL

CAPITAL0002852

Exhibit A
To
1114 North Sailors Way

Legal Description:

Lot 37, Park Village Unit III, according to Book 314 of Maps, page 9, records of Maricopa County, Arizona

Subject to:    Current taxes and other assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions, restrictions, obligations and liabilities as may appear of record.

Parcel No.: 304-96-838

CONFIDENTIAL

# Exhibit B

## Limited Liability Company Units

**North Mesa, LLC**
**7th Street Mesa, LLC**

CONFIDENTIAL

CAPITAL0002854

## BLANK UNIT POWER

### North Mesa, LLC

FOR VALUE RECEIVED, the undersigned, Gale Ronald Wiltbank ("Pledgor"), does hereby sell, assign and transfer to _____ all of his Equity Interests (as hereinafter defined) in North Mesa, LLC, an Arizona limited liability company ("Issuer"), standing in the name of Pledgor on the books of said Issuer. Pledgor does hereby irrevocably constitute and appoint _____, as attorney, to transfer the Equity Interests in said Issuer with full power of substitution in the premises. The term "Equity Interest" means any security, share, unit, partnership interest, membership interest, ownership interest, equity interest, option, warrant, participation, equity security or analogous interest (regardless of how designated) of or in a corporation, partnership, limited partnership, limited liability company, business trust or other entity, of whatever nature, type, series or class, whether voting or nonvoting, certificated or uncertificated, common or preferred, and all rights and privileges incident thereto. Such transfer shall only occur and be effective, however, in the event of a default under the Note as that document is defined and referred to a Loan Agreement between EFG America, LLC and A.S.K. – 2000, LLC dated October _____, 2016.

Dated: 10/15/2016

_Gale Ronald Wiltbank_
Gale Ronald Wiltbank

State of Arizona        )
                        )
County of Maricopa      )

On this 15 day of October , 20 16 , before me personally appeared Gale Ronald Wiltbank (name of signer), whose identity was proved to me on the basis of satisfactory evidence to the person whose name is subscribed to this document, and who acknowledged that he/she signed the above/attached document.

(seal)
NOTARY PUBLIC
STATE OF ARIZONA
Maricopa County
GARY S LAW
My Commission Expires November 11, 2019

_Gary Law_
Notary Public

**BLANK UNIT POWER**

**7th Street Mesa, LLC**

FOR VALUE RECEIVED, the undersigned, Gale Ronald Wiltbank ("Pledgor"), does hereby sell, assign and transfer to _____ all of his Equity Interests (as hereinafter defined) in 7th Street Mesa, LLC, an Arizona limited liability company ("Issuer"), standing in his name on the books of said Issuer. Pledgor does hereby irrevocably constitute and appoint _____, as attorney, to transfer the Equity Interests in said Issuer with full power of substitution in the premises. The term "Equity Interest" means any security, share, unit, partnership interest, membership interest, ownership interest, equity interest, option, warrant, participation, equity security or analogous interest (regardless of how designated) of or in a corporation, partnership, limited partnership, limited liability company, business trust or other entity, of whatever nature, type, series or class, whether voting or nonvoting, certificated or uncertificated, common or preferred, and all rights and privileges incident thereto. Such transfer shall only occur and be effective, however, in the event of a default under the Note as that document is defined and referred to a Loan Agreement between EFG America, LLC and A.S.K. – 2000, LLC dated October _____, 2016.

Dated: 10/15/16

_____
Gale Ronald Wiltbank

State of Arizona      )
                      )
County of Maricopa    )

On this 15 day of October, 20 16, before me personally appeared Gale Ronald Wiltbank (name of signer), whose identity was proved to me on the basis of satisfactory evidence to the person whose name is subscribed to this document, and who acknowledged that he/she signed the above/attached document.

(seal)

NOTARY PUBLIC
STATE OF ARIZONA
Maricopa County
GARY S LAW
My Commission Expires November 11, 2019

_____
Notary Public

## ESCROW AGREEMENT

THIS ESCROW AGREEMENT ("Agreement") is made and entered into this _17th_ day of October, 2016, by and among A.S.K. – 2000, LLC, an Arizona limited liability company ("Lender") and EFG America, LLC, a Delaware limited liability company ("EFG"), collectively the "Parties", and Niehaus Wise & Kalas Ltd, 7150 Granite Circle, Suite 203, Toledo, Ohio 43617 (the "Escrow Agent").

## WITNESSETH:

WHEREAS, the Lender has loaned $500,000 to EFG pursuant to a Loan Agreement, Note, Security Agreement and other related documents (hereinafter, the "Loan Documents), dated of even date herewith; the extension of credit for the loan is secured by certain assets, including residential real estate and the units of each limited liability company which owns such real estate. To provide Lender with an ability to enforce the collateral on the loan, transfer documents for the residential real estate and for the limited liability companies which own such real estate shall be held in escrow.

WHEREAS, pursuant to the Loan Documents, EFG has secured a quit claim deed for each property and has secured a blank stock power to transfer the ownership of each limited liability company owning each property to Lender or others for the purpose of enforcing the Loan should default occur. Lender and EFG desire to place the quit claim deeds and blank stock powers in escrow subject to the terms and conditions of this Agreement.

WHEREAS, the Parties desire to have Escrow Agent act in connection with such responsibilities and to hold the quit claim deeds and blank stock powers and such other documents as may be agreed to by the parties hereto, pending the terms provided herein. Escrow Agent desires to act in such capacity. This Agreement is an exhibit to the Loan Agreement, but enforceable upon its own terms.

## AGREEMENT

Now, therefore, in consideration of the foregoing premises and of the mutual promises contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, each party agrees as follows:

1. <u>Background Statements</u>. The Parties hereby represent and warrant to the Escrow Agent that the statements above are true.

2. <u>Appointment of Escrow Agent</u>. The Parties hereby appoint Niehaus Wise & Kalas Ltd whose address is 7150 Granite Circle, Suite 203, Toledo, Ohio 43617 as the Escrow Agent and Niehaus Wise & Kalas Ltd hereby accepts such appointment to serve as the Escrow Agent, all in accordance with the terms and conditions set forth herein.

3. <u>Escrow Deposits</u>.

   a. <u>Deposit of Quit Claim Deeds</u>. Upon execution of the Note, EFG shall deposit with the Escrow Agent a fully executed Quit Claim Deed for each residential real estate property identified as collateral under the Security Agreement in the form attached to the Security Agreement.

   b. <u>Deposit of Blank Stock Powers</u>: Certain of the residential real estate properties is held in a limited liability company. EFG shall secure and deposit with the Escrow Agent a fully executed blank stock power which evidences the transfer of all of the outstanding units of each limited liability company which owns the real estate and which shall serve as evidence of ownership and transfer to Lender.

Such documents are herein referred to as the "Escrow Deposits".

1

CONFIDENTIAL

CAPITAL0002857

4.    Responsibilities of Escrow Agent. Unless otherwise herein expressly provided, the Escrow Agent, including its officers, directors, employees, and agents, shall:

    a.   Not be liable for any action taken or omitted under this Agreement so long as it shall have acted in good faith and without negligence;

    b.   Have no responsibility to inquire into or determine the genuineness, authenticity, or sufficiency of any documents or instruments submitted to it in connection with its duties hereunder;

    c.   Be entitled to deem the signatories of any documents or instruments submitted to it hereunder as being those purported to be authorized to sign such documents or instruments on behalf of the parties hereto and shall be entitled to rely on the genuineness of the signatures of such signatories without inquiry and without requiring substantiating evidence of any kind.

5.    Release of Escrow Deposits. Steve Eddy or an authorized representative of Lender shall be the designated lender representative ("Lender Authorized Representative"). Upon the earlier to occur of the payment in full of the Note or immediately following close of business on a date ten (10) days following the due date of the Note, the Lender Authorized Representative shall provide notice to the Escrow Agent to deliver the Escrow Deposits to either Lender or to EFG as follows:

    a.   Release to EFG.    Following Escrow Agent's receipt of written notice from the Lender Authorized Representative that the Note is paid in full prior to a date ten (10) days following the due date of the Note, the Escrow Agent shall release the Escrow Deposits to EFG as soon as is practicable and not later that 14 days following such notice.

    b.   Release to Lender.    Following Escrow Agent's receipt of written notice from the Lender Authorized Representative that the Note has not been paid following close of business on a date ten (10) days following the due date of the Note, the Escrow Agent shall release the Escrow Deposits to the Lender Authorized Representative as soon as is practicable and not later that 14 days following such notice. Lender shall then be free to file the quit claim deeds for transfer to it of the residential real estate and also transfer ownership of the limited liability companies owning such real estate. Escrow Agent shall not be responsible for such transfers.

6.    Compensation of Escrow Agent. Escrow Agent shall be entitled to compensation for its services hereunder in such amount as may be agreed upon, from time to time, and reimbursement of its normal out-of-pocket expenses including but not by way of limitation, the fees and cost of attorneys or agents which it deems necessary to engage in performance of its duties, hereunder. EFG shall be responsible for all costs and compensation to Escrow Agent.

7.    Indemnification. Each party hereby agrees to indemnify and hold harmless the Escrow Agent from and against any and all claims, liabilities, losses, actions, suits or proceedings at law or in equity, which it may incur or with which it may be threatened by reason of its acting as Escrow Agent as herein described by reason of act or omission of such party, and in connection therewith, to indemnify Escrow Agent against any and all expenses (including reasonable attorney's fees) or costs of defending any such action, suit or proceeding or resisting any such claims; provided, however, that the provisions of this paragraph shall not apply in the event of any claim, expense liability, loss, action, suit or proceeding, resulting from a breach by the Escrow Agent of any provisions of this Agreement or which occasioned by its bad faith, gross negligence or willful misconduct.

8.    No Legal Advice, Representation or Warranties. This transaction is in escrow, and Escrow Agent is an escrow holder only and as an escrow holder Escrow Agent shall not be required to give any legal advice or make any representation or warranties with respect to any condition or requirement of this Agreement or the transaction contemplated therein.

2

CONFIDENTIAL

CAPITAL0002858

9. <u>Contingencies</u>. If any event, circumstance or happening shall occur that is not provided for hereunder, the Escrow Agent shall have no duty to act or not act, as the case may be, until (i) written instructions are received from the parties hereto, or (ii) instructions are provided by a Court of competent jurisdiction.

10. <u>Termination</u>. Upon disbursement of the documents deposited pursuant to Section 3 of this Agreement, this Agreement and the duties of the Escrow Agent shall automatically terminate.

11. <u>Resignation</u>. The Escrow Agent may resign by mailing written notice to all parties to this Agreement. In the event of any such resignation, the Escrow Agent shall refrain from taking any action with respect to the escrowed documents until it receives written instructions from all parties to this Agreement designating a successor Escrow Agent.

12. <u>No Third Party Beneficiaries</u>. The parties hereto acknowledge and agree that no third party beneficiaries shall be created and neither party shall be subject to any third party beneficiary claims as a result of entering into this Agreement.

13. <u>Notices</u>. All notices, requests, demands and other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given if delivered personally, sent by overnight delivery service, or mailed first class mail, postage prepaid to the other parties addressed to the last known address of the party or to any other address hereafter designated by the party to whom notice is given.

If to Lender

A.S.K. – 2000, LLC
2153 E. Coconino Place
Chandler, AZ 85249
Attention: Dr. Steven Eddy
Phone: 480 282 7604
Email: seddy2@cox.net

If to EFG America, LLC:

EFG America, LLC
1045 E. McKellips Road
Mesa, AZ 85203
Attention: D. Elroy Fimrite
Email to: efimrite@efgglobal.com

If to Escrow Agent:

Niehaus Wise & Kalas, Ltd.
7150 Granite Circle, Suite 203
Toledo, Ohio 43617
Attention: Charles Niehaus, Niehaus@nwklaw.com
Facsimile: (419) 517-9090

14. <u>Governing Law</u>. All questions concerning the validity, intention, or meaning of this Agreement or relating to the rights and obligations of the parties with respect to performance hereunder shall be construed and resolved under the laws of the State of Ohio. EACH PARTY HERETO AGREES AND SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE LUCAS COUNTY COURT OF COMMON PLEAS, LUCAS COUNTY, OHIO FOR RESOLUTION OF ANY DISPUTES ARISING HEREUNDER.

15. <u>Counterparts</u>. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, and all of which shall constitute one (1) Agreement. The signatures of any party to any counterpart shall be deemed to be a signature to, and may be appended to, any other counterpart. Facsimile, telecopy and electronic signatures shall be deemed effective as originals.

16. <u>Survival</u>. All representations, warranties, covenants, agreements, and indemnification obligations made by any party pursuant to this Agreement shall survive the closing of the transactions contemplated hereby.

3

CAPITAL0002859

17. <u>Severability</u>. If any provision of this Agreement is or shall be deemed to be illegal, invalid, or unenforceable, the remaining provisions hereof shall remain in full force and effect and interpreted as if such illegal, invalid, or unenforceable provision did not exist herein.

18. <u>Assignability</u>. The Parties shall not assign this Agreement or any rights or obligations hereunder without the prior written consent of the other Parties.

4

CONFIDENTIAL

CAPITAL0002860

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be executed as of the date set forth above.

Escrow Agent:
NIEHAUS WISE & KALAS, LTD.                        EFG AMERICA, LLC:

By: _____                    By: _____

Its: _____                   Its: _____

A.S.K. -- 2000, LLC

By: _____ (STEVE EDDY)
Its: _____

*Escrow Agreement Signature Page*

5

CONFIDENTIAL                                      CAPITAL0002861