# EXHIBIT 15

Scot A. Hinshaw (*pro hac vice*)
Niehaus Kalas Hinshaw Ltd.
7150 Granite Circle, Suite 203
Toledo, OH  43617
Phone: (419) 517-9090
Fax: (419) 517-9091
hinshaw@nwklaw.com

Christopher H. Bayley (010764)
Anthony King (027459)
Snell & Wilmer L.L.P.
One Arizona Center
400 E. Van Buren Street
Phoenix, AZ 85004-2202
Phone: 602.382.6214
cbayley@swlaw.com
aking@swlaw.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eversource Capital, LP, an Idaho limited partnership,<br><br>          Plaintiff,<br><br>     v.<br><br>Douglas Elroy Fimrite, et al.,<br><br>          Defendants. | Case No. 2:18-cv-02583-DJH<br><br>**DEFENDANTS'[1] REVISED FIRST SUPPLEMENTAL MANDATORY INTIAL DISCOVERY RESPONSES** |

Pursuant to Fed. R. Civ. P. 26(a)(1) and General Order 17-08 of this Court, Defendants Douglas Elroy Fimrite ("Fimrite"), EFG America, LLC ("EFG"), Enviropark Texas, LLC, EF Global Corporation ("EF Global"), EFG Polymers, LLC, D&H Sophie Brown, LLC, Ocean Sky Finance Limited ("Ocean Sky"), Tex-Gas Holdings, LLC, Texen Holdings, LLC ("Texen"), International Tejas Operating LLC ("International Tejas"), Don Carroll ("Carroll"), Mark Boyd ("Boyd"), Charles D. Niehaus ("Niehaus") and Niehaus Kalas Hinshaw Ltd. ("NKH") (and all collectively referred to herein as

---

[1] Not as to Gate Corporation Limited, Doris Fimrite, or Carey Holdings, Ltd., which have all filed motions to dismiss based on the Court's lack of personal jurisdiction over them.

"Defendants") submit the following supplemental mandatory initial discovery responses due to continued discovery and Plaintiff's filing of the Second Amended Complaint ("SAC").   Defendants incorporate herein by reference their prior mandatory initial discovery responses and responses to discovery provided in this litigation.

## PRELIMINARY ISSUES

Defendants continue discovery and preparation for trial in this matter. The information contained in this disclosure and any documents identified, described or produced are based only on information presently available to Defendants and is given in a good faith effort to comply with Rule 26(a)(1) and General Order 17-08. These supplemental initial discovery responses are therefore made without prejudice to Defendants' right to produce, pursuant to the Federal Rules of Civil Procedure, any information which subsequently may be discovered or determined to be relevant to the subject matter of this action. These initial discovery responses should not be construed as prejudicing or in any way limiting Defendants with respect to further discovery, research, analysis or proof.

These mandatory initial discovery responses are provided in a consolidated format from all Defendants for efficiency and due to the overlap in various Defendants' knowledge about the claims and defenses.  However, not all of the Defendants have all the same knowledge and not every defendant knows all the information and disclosures provided herein.  For example, Defendants Carroll and Boyd had little knowledge or understanding regarding the airplane transaction and Ryan McHugh and Plaintiff's payment of $800,000 into the transaction.  Defendants Carroll and Boyd also have limited knowledge related to payments made by Fimrite or any Fimrite Entity Defendants (as defined in the SAC) to individuals, businesses or other Fimrite Entity Defendants as variously alleged in the SAC.  Niehaus and NKH have limited knowledge regarding Fimrite and EFG's efforts to raise capital and seek investments, limited knowledge related to allegations of fraudulent statements of other defendants, and no knowledge of alleged money laundering, bank fraud, or witness tampering.

Except for the explicit facts stated, no incidental or implied admissions are intended. Defendants have submitted these supplemental initial discovery responses solely in compliance with Rule 26(a)(1) and local orders, and they are solely for the purpose of and in relation to this action.

## INITIAL DISCOVERY RESPONSES

**1.     State the names, and, if known, the addresses and telephone numbers of all persons who you believe are likely to have discoverable information relevant to any party's claims or defenses, and provide a fair description of the nature of the information each such person is believed to possess.**

Defendants incorporate by reference any witness or documents identified by the parties to this civil action in prior or subsequent discovery responses or deposition testimony to which Defendants have not objected, as if fully stated here.    Additional individuals are:

| | |
|---|---|
| D. Elroy Fimrite<br>President<br>EFG America, LLC<br>Managing Director<br>DRM Elastomers, LLC<br>Enviropark Texas, LLC<br>EFG Polymer, LLC<br>D&H Sophie Brown, LLC<br>Tex-Gas Holdings, LLC<br>Director<br>EF Global Corporation<br>Ocean Sky Finance Limited<br>Managing Member<br>Texen Holdings LLC (during existence)<br>International Tejas Operating LLC (during existence)<br><br>Contact through undersigned counsel | Mr. Fimrite has knowledge of the allegations in Plaintiff's SAC, the lack of merit to the allegations, Mr. Fimrite's defenses to those allegations, the lack of involvement in the allegations by multiple defendants, including numerous corporate defendants named by Plaintiff, the involvement of Ryan McHugh in and responsibility for Plaintiff's various allegations, Mr. McHugh's role as Chief Financial Officer, the promises Mr. McHugh made with regard to completing the airplane purchase, Mr. McHugh's and Plaintiff's failure to complete the deal, and the witnesses and documents supporting Mr. Fimrite's defenses. |
| Don Carroll<br>Executive Vice President<br>Investor Relations<br>EFG America, LLC<br>Contact through undersigned counsel | Mr. Carroll has knowledge of the allegations in Plaintiff's SAC, the lack of merit to the allegations, Mr. Carroll's defenses to those allegations, the lack of his involvement in numerous allegations, the involvement of Ryan McHugh in and responsibility for Plaintiff's allegations, Mr. McHugh's role as Chief Financial |

| | | |
|---|---|---|
| 1 | | Officer of EFG America, LLC ("EFG"), Mr. McHugh's unauthorized demand that Mr. Carroll issue royalty units in Plaintiff's name, and the witnesses and documents supporting Mr. Carroll's defenses. |
| 4 | Mark Boyd<br>Executive Vice President<br>Finance and Compliance<br>EFG America, LLC<br>Contact through undersigned counsel | Mr. Boyd has knowledge of the allegations in Plaintiff's SAC, the lack of merit to the allegations, Mr. Boyd's defenses to those allegations, the lack of his involvement in various allegations, the involvement of Ryan McHugh in and responsibility for Plaintiff's allegations, Mr. McHugh's role as Chief Financial Officer, and the witnesses and documents supporting Mr. Boyd's defenses. |
| 10 | Charles D. Niehaus<br>Managing Partner<br>Niehaus Kalas Hinshaw Ltd., formerly Niehaus Wise & Kalas Ltd.<br>Contact through undersigned counsel | Mr. Niehaus has knowledge of the allegations in Plaintiff's SAC, the lack of merit to the allegations, Mr. Niehaus' and his law firm's defenses to those allegations, the lack of involvement in most of the allegations by either Mr. Niehaus or NKH., Ryan McHugh's role as Chief Financial Officer and involvement in the allegations, and the witnesses and documents supporting Mr. Niehaus' and his law firm's defenses. |
| 16 | Vaughn Wilhelm | Mr. Wilhelm has knowledge of the lack of merit to Plaintiff's various allegations against the Defendants, namely Plaintiff's various allegations of fraud. Mr. Wilhelm also has knowledge of Ryan McHugh's role as Chief Financial Officer and involvement in and responsibility for Plaintiff's various allegations.  Mr. Wilhelm also has knowledge of Mr. McHugh's unauthorized issuance of royalty units to Plaintiff.  Mr. Wilhelm also has knowledge of Ocean Sky's efforts to negotiate an airplane lease agreement with Hongtu Airlines. |
| 24 | Ryan McHugh | Mr. McHugh has knowledge of the lack of merit to Plaintiff's various allegations against the Defendants, his responsibility in and for various allegations, the lack of terms to the various alleged agreements, his unauthorized issuance of royalty units to Plaintiff, the source of funds provided to EFG, the promises Mr. McHugh made with regard to completing the airplane purchase and Mr. McHugh's and Plaintiff's failure to |

| | | |
|---|---|---|
| 1 | | complete the deal. |
| 2 | Investors in Eversource Capital, LP | Upon information and belief, the investors in Eversoure Capital, LP have knowledge of the lack of merit to Plaintiff's various allegations against the Defendants, the lack of terms to the various alleged agreements, the source of funds provided to EFG, Ryan McHugh's role in EFG, the promises Mr. McHugh made with regard to completing the airplane purchase and Mr. McHugh's and Plaintiff's failure to complete the deal. |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | McHugh Holdings, Inc.<br>General Partner of Plaintiff | McHugh Holdings, Inc. has knowledge of the investment activity and sources of funds with regard to the various advances to EFG alleged in Plaintiff's SAC. |
| 9 | | |
| 10 | Li Xing Ru<br>371-#2 Huifuxl West Road,<br>Flat #501<br>Huadu District<br>Guangzhou, Guangdong<br>P.R. China | Dr. Li has knowledge of the development, efficacy and legitimacy of the rubber devulcanzation technology developed by him and subsequently licensed and sold by him. Dr. Li has knowledge of Excel Fortress Limited's ownership of rubber devulcanization technology developed by him and the compensation he received for the transfer of ownership. Dr. Li also has knowledge of Ryan McHugh's efforts to employ Dr. Li and deny EFG the full use of the technology. |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | Li Zhe Ying<br>Boise, Idaho area | Ms. Li has knowledge of the development, efficacy and legitimacy of the rubber devulcanzation technology developed by her father, Dr. Li, and subsequently licensed and sold by him. Ms. Li also has knowledge of Ryan McHugh's efforts to employ Dr. Li and deny EFG the full use of the technology. |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | W. Mark Eddington<br>President<br>LLFC Corporation<br>870 Research Drive, Ste. #2<br>Palm Springs, CA 92262<br>(760) 325-0067 | Mr. Eddington has knowledge regarding the airplane purchase deal, Mr. McHugh's payment of an $800,000 non-refundable deposit, the promises Mr. McHugh made with regard to completing the airplane purchase and Mr. McHugh's and Plaintiff's failure to complete the deal. Mr. Eddington also has knowledge of the damages Counterplaintiffs suffered as a result of the loss of the airplane transaction. |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | Devon Cottrell<br>General Counsel<br>LLFC Corporation<br>870 Research Drive, Ste. #2 | Mr. Cottrell has knowledge regarding the airplane purchase deal, Mr. McHugh's payment of an $800,000 non-refundable deposit, the promises Mr. McHugh made |
| 28 | | |

| | |
|---|---|
| Palm Springs, CA 92262 (760) 325-0067 | with regard to completing the airplane purchase and Mr. McHugh's and Plaintiff's failure to complete the deal.  Mr. Cottrell also has knowledge of the damages Counterplaintiffs suffered as a result of the loss of the airplane transaction. |
| Juan M. Cabrera Director Le Groupe Delta, S.A. 8 Copthall Roseau Valley 00152 Commonwealth of Dominica (786) 339-3352 | Mr. Cabrera has knowledge regarding the airplane purchase deal, Mr. McHugh's payment of an $800,000 non-refundable deposit. |
| Scott Nance Contractor EFG America, Inc. Contact through undersigned counsel | Mr. Nance has knowledge of the legitimate operations of EFG and various affiliates, as well as the legitimacy of the rubber devulcanization technology used by EFG. |
| Don Lagrone Contractor EFG America, Inc. Contact through undersigned counsel | Mr. Lagrone has knowledge of the legitimate operations of EFG and various affiliates, as well as the legitimacy of the rubber devulcanization technology used by EFG. |
| Glenn McGinnis Contractor EFG America, Inc. Contact through undersigned counsel | Mr. McGinnis has knowledge of the legitimate operations of EFG and various affiliates, as well as the legitimacy of the rubber devulcanization technology used by EFG. |
| Michael Kumbalek Contractor EFG America, LLC Contact through undersigned counsel | Mr. Kumbalek, a chemist, has general knowledge of rubber chemistry, and he has knowledge of the facts and circumstances surrounding EFG's use and commercialization of the rubber devulcanization technology, its efficacy and legitimacy. |
| W. Clay Richards Contractor EFG America, LLC Contact through undersigned counsel | Mr. Richards has knowledge of the legitimate operations of EFG and various affiliates, as well as the legitimacy of the rubber devulcanization technology used by EFG.  Mr. Richards also has knowledge of Ryan McHugh's motivations in this lawsuit, efforts to conduct a "hostile takeover" of EFG, destroy Fimrite, and take the rubber devulcanization technology for his own. |
| Dr. Ian Hadfield Director | Dr. Hadfield has knowledge of the facts and circumstances surrounding the history |

| | |
|---|---|
| EFG America, LLC<br>Contact through undersigned<br>counsel | of, corporate structure of and formalities<br>followed by EFG and its legitimate<br>business operations. |
| Carl Buccellato<br>Director<br>EFG America, LLC<br>Contact through undersigned<br>counsel | Mr. Buccellato has knowledge of the facts<br>and circumstances surrounding the history<br>of, corporate structure of, and formalities<br>followed by EFG and its legitimate<br>business operations. |
| Brian Kalas<br>Niehaus Kalas Hinshaw Ltd.<br>Contact through undersigned<br>counsel | Mr. Kalas has knowledge regarding<br>Plaintiff's claims regarding EFG's<br>attempted purchase of Edge Rubber and<br>Niehaus Defendants' involvement in the<br>same. |
| Robert Chernicoff<br>Cunningham, Chernicoff<br>&Warshawsky, P.C.<br>2320 N. 2nd Street<br>Harrisburg, PA 17110<br>(717) 238-6570 | Mr. Chernicoff has knowledge regarding<br>Plaintiff's claims regarding EFG's<br>attempted purchase of Edge Rubber and<br>Niehaus Defendants' involvement in the<br>same. |
| Jason Meyer<br>Address and telephone<br>information unknown | Mr. Meyer has knowledge regarding<br>Plaintiff's claims regarding EFG's<br>attempted purchase of Edge Rubber and<br>Niehaus Defendants' involvement in the<br>same. |
| Qiwen (Nicole) Zhao, CPA<br>Youxing Zhang<br>Malone Bailey LLP<br>9801 Westheimer Rd., Suite 1100<br>Houston, TX 77042<br>(713) 343-4281 | Ms. Zhao and/or Mr. Zhang has knowledge<br>of EF Global's and its relevant<br>subsidiaries' tax filings. |
| Robert Haveman<br>Address and telephone<br>information unknown | Mr. Haveman has knowledge regarding<br>Plaintiff's claims of money laundering, the<br>attempted purchase of Edge Rubber and<br>equipment purchases by EFG. |
| Dr. Myron Hansen<br>Cactus Foot & Ankle LLC<br>1880 West Frye Rd., Ste. 3<br>Chandler, AZ 85224<br>(480)889-2905 | Dr. Hansen has knowledge relating to<br>Plaintiff's allegations in the SAC of fraud<br>and witness tampering. Dr. Hansen also<br>has knowledge of Ryan McHugh's<br>motivations in this lawsuit, efforts to<br>conduct a "hostile takeover" of EFG,<br>destroy Fimrite, and take the rubber<br>devulcanization technology for his own. |
| Waylon Brian | Mr. Brian has knowledge relating to<br>Plaintiff's allegations in the SAC of fraud<br>and witness tampering. Mr. Brian also has<br>knowledge of Ryan McHugh's motivations<br>in this lawsuit, efforts to conduct a "hostile |

| | | |
|---|---|---|
| 1 | | takeover" of EFG, destroy Fimrite, and take the rubber devulcanization technology for his own. |
| 2 | | |
| 3 | Robert Perna | Mr. Perna has information regarding the bagging system ordered by EFG. |
| | Aaron Equipment Company, Inc. | |
| 4 | 201 Hansen Ct. Suite 125 | |
| | Wood Dale, IL 60191 | |
| 5 | 630-350-2200 | |
| 6 | Terry Batt | Mr. Batt has information regarding Ryan McHugh, information Mr. Batt initially provided to Mr. McHugh, Mr. McHugh's introduction to Elroy Fimrite and EFG. |
| 7 | | |
| 8 | | |
| | Jim Kyle | Mr. Kyle has information regarding Mr. McHugh's introduction and early interaction with Elroy Fimrite and EFG. |
| 9 | Director | |
| | Contact through undersigned | |
| 10 | counsel | |
| 11 | Bonnie Allen | Ms. Allen has information regarding Mr. McHugh's position as Chief Financial Officer for EFG and his work and knowledge within that role. |
| 12 | | |
| 13 | | |
| | Jules Mazzuca | Mr. Mazzuca has information regarding Mr. McHugh's motivations in this lawsuit, efforts to conduct a "hostile takeover" of EFG, destroy Fimrite, and take the rubber devulcanization technology for his own. |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | Brian Carroll | Mr. Carroll has knowledge regarding the legitimate use of his retirement funds to invest in EFG. |
| | 2505 E. Mountain Dr. | |
| 18 | Gilbert, AZ 85297 | |
| | 480-330-5033 | |
| 19 | Dan Greenbank | Mr. Greenbank has knowledge regarding the legitimate use of his retirement funds to invest in EFG. |
| | 58370 S. 2550 East | |
| 20 | Ogden, UT 84403 | |
| | 801-391-4107 | |
| 21 | | |
| | David Erikson | Mr. Erikson has knowledge regarding the legitimate use of his retirement funds to invest in EFG. |
| 22 | 128 W. Oakridge Dr. | |
| | Elk Ridge, UT 54651 | |
| 23 | 801-369-8988 | |
| 24 | Candice McHugh | Mrs. McHugh likely has knowledge of Ryan McHugh's business dealings on behalf of Plaintiff, other investors of Plaintiff involved with the claims in the SAC, Plaintiff's source of funds for the alleged advances to EFG and for the airplane transaction, and Mr. McHugh's efforts to cause a "hostile takeover" of EFG. |
| | 738 W. Colbert Street | |
| 25 | Meridian, Idaho | |
| 26 | | |
| 27 | | |
| 28 | | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**2.      State the names, and, if known, the addresses and telephone numbers of all persons who you believe have given written or recorded statements relevant to any party's claims or defenses. Unless you assert a privilege or work product protection against disclosure under applicable law, attach a copy of each such statement if it is in your possession, custody, or control. If not in your possession, custody, or control, state the name and, if known, the address and telephone number of each person who you believe has custody of a copy.**

Defendants are aware of declarations provided by Dr. Myron Hansen and Waylon Brian.  Mr. Hansen's contact information is above.  Mr. Brian's address and telephone information is unknown.  Their statements were previously produced at EFGLLC002133-2137. If recorded means audio recorded statements, an audio recording of a call with Ryan McHugh was also previously provided at EFGLLC002138.   Other than information obtained and protected by the attorney-client privilege and work product doctrine, Defendants are not aware of any other written or recorded statements in this matter.

**3.      List the documents, electronically stored information ("ESI"), tangible things, land, or other property known by you to exist, whether or not in your possession, custody or control, that you believe may be relevant to any party's claims or defenses. To the extent the volume of any such materials makes listing them individually impracticable, you may group similar documents or ESI into categories and describe the specific categories with particularity. Include in your response the names and, if known, the addresses and telephone numbers of the custodians of the documents, ESI, or tangible things, land, or other property that are not in your possession, custody, or control.**

1. Various email communications among and between Messrs. Fimrite, McHugh, Carroll and Boyd regarding financial and operational issues of Defendant EFG.

2. Various corporate and financial records of Defendants, including but not limited to fixed asset information, general ledger, balance sheets, profit and loss statements and bank records related to Defendants EFG and EF Global Corporation.

3. Documents and communications related to Ryan McHugh's efforts and role as Chief Financial Officer of EFG.

4. Documents and video recordings demonstrating EFG's right to use and development of rubber devulcanization technology as represented to Plaintiff.

5. Various email communications among and between Messrs. Fimrite and McHugh regarding the alleged loans.

6. Various email communication among and between Messrs. Fimrite, McHugh and Niehaus regarding the $250,000 deposit for the Edge Rubber transaction.

7. Documents and communications related to the Edge Rubber transaction.

8. Various email communications among and between Mr. Fimrite, Mr. McHugh, Mr. Cabrera, Mr. Cottrell and various agents of Synergy Aerospace Corporation.

9. LLFC Corporation Offer Letter and Summary of Purchase Terms and Conditions, to Synergy Aerospace Corp., dated October 6, 2015.

10. Wire transfer confirmation reports for two $400,000 wires.

11. Draft term sheet for sale of airplanes to Tianju Airlines.

12. Lease documentation regarding Hongtu Airlines.

13. Plaintiff's alleged Royalty and Security Agreements.

14. Plaintiff's alleged royalty certificates.

15. Ryan McHugh's alleged employment contract.

16. Documentation of any assignment of royalty units claimed to be owned by Plaintiff

17. Interrogatory responses of Vaughn Wilhelm, Ryan McHugh, and Eversource Group and Eversource Tech in *Excel Fortress Limited, et al. v. Wilhelm, et al.*, Case No. 17-cv-04297-DWL

18. Videos related to EFG's operations and product, including at https://youtu.be/_zWtXtYOEXo, https://youtu.be/qg-iupFwcK4,

1    https://youtu.be/1wrJOO_y_8Y, https://youtu.be/zt75QCfAsMo,

2    https://youtu.be/kwpVMNbdusc.

3         Defendants adopt documents and recordings previously produced at

4    EFGLLC000001-2493, NWK000001-67, DC000001-61, and MB000001-81, as well as

5    unmarked ESI files previously produced. As discussed between the parties, additional

6    documents will be supplemented. Defendants reserve their right to supplement these

7    responses throughout discovery and up to trial and incorporate herein any document

8    responses or ESI provided during discovery.

9         **4.**    **For each of your claims or defenses, state the facts relevant to it and the**

10   **legal theories upon which it is based.**

11        1.    Plaintiff's claims fail to state a claim upon which relief may be granted, and

12   Defendants are entitled to dismissal of all of Plaintiff's claims against them. Plaintiff

13   cannot state a claim for fraud against multiple Defendants because they either made no

14   representations or are not alleged to have made misrepresentations to Plaintiff, including

15   Enviropark Texas, LLC, EF Global, EFG Polymers, LLC, D&H Sophie Brown, LLC, Ocean Sky,

16   Tex-Gas Holdings, LLC, Texen, and International Tejas. Plaintiff cannot state a claim for

17   fraud because, to the extent any representations were made, the information provided to

18   Plaintiff was correct, it was the best information possessed by the Fraud Defendants (as

19   defined in the SAC) at the time it was disclosed, and/or the information contained

20   permissible statements of opinion. Additionally, Plaintiff's principle, Ryan McHugh,

21   served and Chief Financial Officer for EFG and was well aware of (or grossly

22   incompetent and should have been aware of) all operational and financial facts and

23   circumstances about which Plaintiff now complains. Neither Defendant Niehaus nor

24   Defendant NKH converted any of Plaintiff's money. Plaintiff cannot demonstrate

25   conversion of fungible money. Assuming it can, no conversion occurred because there

26   was no improper or unprivileged dominion exercised over Plaintiff's property. Plaintiff

27   was well aware of the purpose of the $250,000 nonrefundable deposit and fully authorized

28   its use as it was used in the transaction at issue. Because no fraud occurred, no conspiracy

1    claim can survive against any Defendant.  Moreover, there was no effort on any of the

2    Defendants' parts to plan to commit any fraud against Plaintiff.  Additionally, to the

3    extent there is any merit to Plaintiff's piercing the corporate veil assertion as to Defendant

4    Fimrite and the so-called Fimrite Entities, no conspiracy could have occurred between and

5    among the Fraud Defendants because one cannot conspire with one's self and agents

6    acting in the scope of their agency cannot conspire with their principal.  Because no fraud

7    occurred, none of the Fraud Defendants (as defined in the SAC) aided or abetted any

8    fraud.  Moreover, the documents prepared by the same did not contain false information.

9    Defendants Niehaus and NKH likewise did not have a fiduciary duty to Plaintiff, and thus

10   could not have breached one.  Nonetheless, to the extent any fiduciary duty did exist,

11   which it did not, the same defendants did not take any action that could constitute a breach

12   of a fiduciary duty to Plaintiff.  Defendants Niehaus and NKH also did not negligently

13   misrepresent any information to Plaintiff, and/or Plaintiff did not suffer any harm from

14   any alleged misrepresentation, failing to state a claim for such.  Plaintiff's claims against

15   Defendants Niehaus and NKH fail because their actions were, though not unlawful, taken

16   in their capacities as legal representatives of EFG and/or other defendants, and thus, do

17   not support a claim against them personally.  To the extent such defendants were agents of

18   EFG, Plaintiff and its agents were fully aware of the agency relationship between

19   Defendants Niehaus and NKH and EFG.  Plaintiff's unjust enrichment claim fails to state

20   a claim as most of the Defendants because they did not, even under Plaintiff's allegations,

21   personally benefit from Plaintiff's alleged loans or any other activity alleged by Plaintiff.

22   Plaintiff's breach of contract claim fails to state a claim as to all defendants, not including

23   Defendants Fimrite, EFG, EF Global and Ocean Sky, on the basis that none of the other

24   defendants were or are alleged to have been parties to the alleged loans.  To the extent

25   Defendants Fimrite, EFG, EF Global or Ocean Sky were a party to Plaintiff's alleged

26   loans, no terms existed for those loans, or no meeting of the minds occurred for any terms,

27   and thus no contract existed and/or no breach has occurred.  Plaintiff's additional breach

28   of contract claim as to the royalty and security agreements also fails because Defendant

Fimrite and the Fimrite Entities had no meeting of the minds on such agreement and Plaintiff never executed any such agreements.  Moreover, such agreements are only executed with and on behalf of EFG.  Thus, none of the other defendants are subject to them.  Plaintiff's securities fraud claims should also fail because no fraud occurred, and Plaintiff was not authorized to receive and did not purchase any securities.  As to the Racketeer Influenced and Corrupt Organizations Act, Plaintiff can show no sufficient predicate acts, no pattern, no proof that the RICO Defendants (as defined in the SAC) participated in the operation or management of the conduct of the enterprise, and some of the RICO Defendants cannot be racketeers because Plaintiff alleges they are alter egos of Defendants Fimrite, EFG and the other Fimrite Entities and therefore not separate from the alleged enterprise.  Because no sufficient evidence of RICO exists, no RICO conspiracy claim can survive. Lastly, Defendants owed no implied duty of good faith and fair dealing since Plaintiff has no legitimate claim to any royalty unit interest and has a mere breach of contract claim seeking monetary damages.  The economic loss doctrine prevents Plaintiff from seeking additional damages in tort to the extent they are available on the alleged contracts.

2.    Any damages Plaintiff claims to have suffered were the result of Plaintiff's own acts or omissions, thereby barring Plaintiff's claims in whole or in part.  Plaintiff's principle, Ryan McHugh, served as Chief Financial Officer for EFG and was well aware of all operational and financial facts and circumstances about which Plaintiff complains.  To the extent Plaintiff now claims such activities were improper or fraudulent, Plaintiff's principle caused Plaintiff's damage.  To the extent it suffered any damages, Plaintiff could have minimized or avoided damages by continuing to participate in the Defendants' business enterprises, seeking their success.  Instead, its agents misappropriated the trade secrets of Excel Fortress Limited (the owner of the rubber devulcanization technology licensed by EFG), disparaged the Defendants, breached their own nondisclosure agreements, interfered with Excel Fortress Limited's and EFG's business and contractual arrangements, converted EFG's assets, committed negligent or intentional acts and

generally caused harm to Defendants in their on-going business efforts. Plaintiff knowingly provided the alleged loans for nonrefundable purposes, thus not expecting to be repaid or only repaid in the event certain events occurred, which did not occur. Namely, Plaintiff failed to fully fund the remainder of the initial deposit for the airplane transaction. Further, Plaintiff also failed to form a contract or achieve a meeting of the minds as to terms with regard to the alleged loans or the royalty and security agreement claims.

3.    Any damages Plaintiff claims to have suffered were the result of third parties' acts or omissions, thereby barring Plaintiff's claims in whole or in part. To the extent Plaintiff disowns the actions of its agent, Ryan McHugh, then, as described in Section 2 above, McHugh caused Plaintiff's alleged damages. Additionally, Plaintiff's allegations relating to the $800,000 nonrefundable airplane transaction deposit were caused by individuals with Synergy Aerospace Corporation, Le Groupe Delta, SA and/or LLFC Corporation. Plaintiff was aware that the deposit to Synergy Aerospace Corporation was nonrefundable. The deposit was an issue of litigation in *Synergy Aerospace Corp. v. U.S. Bank National Association, et al.*, 16-cv-02268-WHP, in the United States District Court for the Southern District of New York.

4.    If any damages were sustained by Plaintiff, there is no causal connection between the damages and Defendants. Plaintiff's alleged damages were not the result of any actions taken by multiple Defendants because they had no involvement in the transactions about which Plaintiff complains and upon which it seeks damages, including Enviropark Texas, LLC, EFG Polymers, LLC, D&H Sophie Brown, LLC, Tex-Gas Holdings, LLC, Texen, and International Tejas. Additionally, Plaintiff's allegations relating to the $800,000 nonrefundable airplane transaction deposit were caused by individuals with Synergy Aerospace Corporation, Le Groupe Delta, SA and/or LLFC Corporation. Plaintiff was also aware that the $800,000 airplane deposit to Synergy Aerospace was potentially nonrefundable and failed to fully fund the remainder of the initial deposit for the airplane transaction. The deposit was also an issue of litigation in *Synergy Aerospace*

*Corp. v. U.S. Bank National Association, et al.*, 16-cv-02268-WHP, in the United States District Court for the Southern District of New York. To the extent Defendants Fimrite and/or EFG were a party to Plaintiff's alleged loans, Plaintiff failed to create sufficient terms for those loans and thus no contract existed and/or no breach has occurred. Plaintiff's claims against Defendants Niehaus and NKH fail because their actions were, though not unlawful, taken in their capacities as legal representatives of EFG America, LLC, and thus, do not support a claim against them personally.  To the extent such defendants were agents of EFG, Plaintiff and its agents were fully aware of the agency relationship between Defendants Niehaus and NKH and EFG.

5.     Defendants Texen Holdings, LLC, International Tejas Operating LLC and D&H Sophie Brown do not have the capacity to be sued, are not on-going concerns and are cancelled companies in each state in which they were incorporated.

6.     Defendants rely upon their compliance with the standard of reasonable care recognized by law and by the community at large as governing their activities. Defendants did not breach any implied duty of good faith and fair dealing to Plaintiff (assuming one existed, which it did not) and acted in compliance with the applicable standard of care in its actions in this matter.  Additionally, Niehaus and NKH did not breach any fiduciary duty to Plaintiff (assuming one existed, which it did not) and acted in compliance with the applicable standard of care in its actions in this matter.

7.     Defendants rely upon compliance with the standards and practices of businesses or organizations similar to Defendants, and that they acted in conformity with a standard of reasonable care and prudence during all times relevant to this cause. Defendants did not engage in or aid and abet any fraud.  Defendants either did not provide any representations to Plaintiff or information provided to Plaintiff was correct, the best information possessed by Defendants Fimrite, EFG, the EFG Associates and the Fimrite Entities at the time it was disclosed, or constituted permissible statements of opinion.

8.     Plaintiff has failed to mitigate its alleged damages.  Discovery continues in this action, but Plaintiff could have minimized or avoided its damages by continuing to

1  participate in the Defendants' business enterprises, seeking their success.  Instead, its

2  agents misappropriated the trade secrets of Excel Fortress Limited (the owner of the

3  rubber devulcanization technology licensed by EFG), disparaged the Defendants,

4  breached their nondisclosure agreements with EFG, interfered with Excel Fortress

5  Limited's contractual arrangements, converted EFG's assets, committed negligent or

6  intentional acts and generally caused harm to Defendants in their on-going business

7  efforts.  Plaintiff was also aware that the $800,000 airplane deposit to Synergy Aerospace

8  was potentially nonrefundable and failed to fully fund the remainder of the airplane

9  transaction deposit so that the transaction could continue and Plaintiff or Ryan McHugh

10  could obtain the intended benefit of that effort.  Additionally, since the institution of this

11  litigation, Plaintiff's principle, Ryan McHugh, is purposefully and admittedly attempting

12  to destroy Defendants EFG and Elroy Fimrite and either execute a "hostile takeover" of

13  EFG or acquire the rubber devulcanization technology for his own business use.  The

14  effort causes distress and disruption to EFG's business, from which Plaintiff seeks

15  damages.

16      9.    Plaintiff's claims are barred by the doctrine of estoppel. Plaintiff is estopped

17  from taking positions inconsistent with previous positions it took.  Plaintiff, through its

18  agent, Ryan McHugh, had possession of, approved of and created various business and

19  financial information of EFG and the Fimrite Entities and never objected or disputed the

20  information.  Mr. McHugh also participated in the creation of that information and its

21  disclosure to others, including potential investors.  For example, through Mr. McHugh,

22  Plaintiff was aware that the Bay City plant title was held by Tex-Gas for the benefit of

23  EFG.  Plaintiff cannot now claim to have been defrauded by that same information.

24  Further, Plaintiff was well aware of the purpose of the $250,000 nonrefundable deposit for

25  the Edge Rubber transaction and the $800,000 nonrefundable deposit to Synergy

26  Aerospace Corp. and fully authorized or specifically directed the use and distribution of

27  such monies in their associated transactions. Plaintiff, through its agents, was aware that

28  Defendants Niehaus and NKH had no fiduciary duty to it.  Plaintiff was aware and never

took a contrary position that most of the Defendants did not have a contractual relationship with it.  Further, Plaintiff also failed to form a contract or achieve a meeting of the minds as to terms with regard to the alleged loans.  Plaintiff cannot now claim that terms to the alleged loans existed.  Given the above circumstances, Plaintiff likewise cannot claim a breach of an implied duty that did not exist and was not breached and has no basis upon which to rely on allegations of racketeering by the RICO Defendants (as defined in the SAC) when Plaintiff (through McHugh) was aware of Defendants' actions and raised no objections or complaints about them.

10.    Plaintiff's claims are barred by the applicable statutes of limitations. Plaintiff's claims against Niehaus and NKH for breach of duty and negligent misrepresentation are barred by the applicable two-year statute of limitations. To the extent Plaintiff's fraud and related claims are related to the sale or potential sale of securities in the form of royalty agreements, Plaintiff's claims are barred by the two-year statute of limitations for such claims. Plaintiff's claims of breach of oral contract are barred by the applicable three year statute of limitations.  Plaintiff's claim for breach of implied duty of good faith and fair dealing is also barred by the applicable two-year statute of limitations.

11.    Plaintiff's claims are barred by the statute of frauds.  Plaintiff failed to obtain sufficient written agreement or terms with regard to the alleged loans.   Thus, Plaintiff's breach of contract claim is barred.   Plaintiff cannot seek for any of the Defendants to answer for the debt of another defendant without a written agreement to the same.  Thus, Plaintiff's contract claims fail outright as to all Defendants other than with regard to Plaintiff's allegations against Fimrite, EFG, Ocean Sky and EF Global.  Plaintiff also cannot demonstrate that one or more of the alleged contracts were to be performed in less than a year, thus requiring a written agreement.  Finally, several of Plaintiff's alleged loans were for greater than $250,000, and thus required to be in writing.

12.    Plaintiff's claims are barred by laches.  Plaintiff was aware of its alleged claims at least as early as February 2016.  However, Plaintiff made no claim against

1    Defendants for two and a half years and only just filed five additional claims three and a

2    half years after discovery of some or all of these additional claims.  Plaintiff was also

3    aware that the claims existed upon the filing of *Excel Fortress Limited, et al. v. Wilhelm,*

4    *et al.*, Case No. 17-cv-04297-DWL, but failed to assert them as counterclaims therein.

5        13.    Plaintiff's claims are barred by unclean hands.  Plaintiff, through its agents,

6    namely Ryan McHugh, prepared and approved of various business and financial

7    information of the Fimrite Entities.  Plaintiff's agents also participated in the creation of

8    that information and its disclosure to others, including potential investors.  Plaintiff also

9    advised Defendant Fimrite and EFG with regard to corporate structure issues, including

10   the creation of EF Global Corporation, about which Plaintiff now complains.  Plaintiff

11   and/or its agents also misappropriated the trade secrets of Excel Fortress Limited (the

12   owner of the rubber devulcanization technology licensed by EFG), disparaged the

13   Defendants, breached their nondisclosure agreements with EFG, interfered with Excel

14   Fortress Limited's contractual arrangements, converted EFG's assets, committed

15   negligent or intentional acts and generally caused harm to Defendants in their on-going

16   business efforts.  Plaintiff was also aware that the $800,000 airplane deposit to Synergy

17   Aerospace was potentially nonrefundable and failed to fully fund the remainder of the

18   airplane transaction deposit so that the transaction could continue and Plaintiff or Ryan

19   McHugh could obtain the intended benefit of that effort.  Plaintiff's alleged royalty

20   interests in EFG were improperly issued at Ryan McHugh's unauthorized demand.

21   Additionally, since the institution of this litigation, Plaintiff's principle, Ryan McHugh, is

22   purposefully and admittedly attempting to destroy Defendants EFG and Elroy Fimrite and

23   either execute a "hostile takeover" of EFG or acquire the rubber devulcanization

24   technology for his own business use.

25       14.    Plaintiff's claims are barred by waiver and/or release. Plaintiff was aware

26   that the $800,000 airplane deposit to Synergy Aerospace was potentially nonrefundable

27   and provided it with that knowledge.  Plaintiff also previously sought repayment of the

28   deposit from the third parties involved in that transaction, including Synergy Aerospace

Corp. and LLFC Corporation.  Discovery continues, however, Plaintiff's exhibits to the SAC assert that Plaintiff agreed, sought to agree, or received compensation for at least $250,000 of the alleged loans through the issuance of royalty interests in Defendant EFG. Although now, Plaintiff asserts that those royalty interest were issued for a different and inconsistent purpose.

15.    Plaintiff's claims are barred by accord and satisfaction.    Discovery continues, however, Plaintiff's exhibits to the SAC assert that Plaintiff agreed, sought to agree, or received compensation for at least $250,000 of the alleged loans through the issuance of royalty interests in Defendant EFG. Although now, Plaintiff asserts that those royalty interest were issued for a different and inconsistent purpose.

16.    Plaintiff has failed to join one or more indispensable parties.  Plaintiff's general partner, McHugh Holding, Inc., its alter ego, Ryan McHugh, and/or its limited partners are likely the real parties in interest in this matter with regard to the alleged loaned funds.  Plaintiff also fails to attach third parties involved in the $800,000 airplane transaction deposit, from which Plaintiff previously sought repayment, including Synergy Aerospace Corporation, Le Groupe Delta, SA and LLFC Corporation.

17.    Plaintiff's claims are barred because it is not the real party in interest. Plaintiff's general partner, McHugh Holding, Inc., its alter ego, Ryan McHugh, and/or its limited partners are likely the real parties in interest in this matter with regard to the alleged loaned funds.

18.    Plaintiff's claims fail due to lack of consideration or want of consideration. Plaintiff alleges its bargain was with Fimrite, EFG, Ocean Sky and/or EF Global.  Thus, none of the other Fimrite Entity Defendants had a contract or bargain with Plaintiff whether regarding the alleged loans or the royalty and security agreements, of which the remaining Fimrite Entity Defendants are, on the face of the agreements, not a party.  To the extent an agreement did exist, Plaintiff cannot demonstrate a term related to sufficient consideration or a meeting of the minds for the same.  Moreover, Plaintiff primarily identifies Defendants EFG, EF Global and Fimrite as receiving benefit from the alleged

loans.  Plaintiff also alleged Mr. McHugh's contract employment as Chief Financial Officer was with EFG.  Thus, no consideration was provided to the remaining Fimrite Entity Defendants with regard to these alleged claims.

19.    Plaintiff had no special relationship with Defendants Charles D. Niehaus and Niehaus Wise & Kalas, Ltd.  Thus, no fiduciary duty existed between Plaintiff and these defendants.

### Ocean Sky Finance and EF Global Corporation's Counterclaims

1.    Breach of Contract – Ocean Sky and EF Global made an agreement with Plaintiff/Counterdefendant Eversource Capital, LP, its agent Ryan McHugh, and/or its investors to fund the deposit required in a transaction to purchase several airplanes from a Panamanian company, Synergy Aerospace Corp.  The purpose of the transaction was then to resell or lease out the purchased airplanes to create a profit for the parties involved. Eversource Capital, LP, its agent Ryan McHugh, and/or its investors agreed to fund the initial deposit of $500,000 per aircraft for the transaction pending the completion of a purchase agreement with the end user of the aircraft and receipt of a purchase deposit. That initial deposit was nonrefundable if the total deposit was not paid.  Originally, the parties sought to purchase three planes, but later changed it to two planes.  Eversource Capital, LP, its agent Ryan McHugh, and/or its investors paid $800,000 on the deposit but failed to provide the remainder.  Counterplaintiffs identified the airplanes for purchase, negotiated the transaction, and searched for and negotiated with a potential lessor and buyer of the planes.  Counterplaintiffs also made multiple efforts to seek extensions to the deposit deadlines in order to complete the transaction.  Unfortunately, Synergy Aerospace canceled the transaction.

2.    Promissory Estoppel – In the event no contract is found to exist between the parties, Counterplaintiffs reasonably relied upon the promises of Eversource Capital, LP, its agent Ryan McHugh, and/or its investors to fund the initial deposit for the airplanes, allowing the parties to continue their effort to realize a profit upon leasing or reselling them.  Counterdefendant's promise reasonably induced Counterplaintiffs to identify the

airplanes for purchase, negotiate the transaction, and search for and negotiate with a potential lessee or buyer of the planes. Counterplaintiffs also made multiple efforts to seek extensions to the deposit deadlines in order to complete the transaction. Counterdefendant breached that promise to Counterplaintiffs detriment as they were unable to realize the expected profit from the transaction and from their work and effort.

Defendants further incorporate in this mandatory initial discovery response all defenses made in their answer to Plaintiff's SAC and reserve the right to supplement this disclosure as the case progresses in discovery. Counterplaintiffs Ocean Sky Finance and EF Global Corporation further incorporate in this mandatory initial discovery response all counterclaim allegations made in their counterclaims against Plaintiff and reserve the right to supplement this disclosure as the case progresses in discovery.

**5.     Provide a computation of each category of damages claimed by you, and a description of the documents or other evidentiary material on which it is based, including materials bearing on the nature and extent of injuries suffered. You may produce the documents or other evidentiary materials with your response instead of describing them.**

As to Ocean Sky Finance's and EF Global Corporation's counterclaims, Counterplaintiffs seek the loss of profit. The planes were to be purchased from Synergy Aerospace for $47 million each. Counterplaintiffs identified two potential lessees and negotiated and signed lease terms with Hongtu Airlines, on or about April 15, 2016. The Hongtu lease agreement provided for the lease of two planes at a cost of $390,000 per airplane per month for 72 months, in addition to other provisions provided in the agreement produced in this litigation (EFGLLC000226-233). Two consecutive 12-month extensions were available, for a total possible lease period of 96 months. Upon obtaining a qualified and verified lessee, Counterplaintiffs anticipated obtaining bank financing to complete the purchase transaction with Synergy. The $780,000 per month lease payments per month would then have been divided in thirds with Ocean Sky receiving one third. Over the 96 month term of the lease, revenues to Ocean Sky would have been

$24,960,000.  According to Devon Cottrell of LLFC Corporation, the estimated net profit on the lease deal after costs would have been approximately 10% of the lease revenues, which equals $2,496,000.  Counterplaintiffs would have then shared this profit with Counterdefendant at no more than 50%.  Thus, Counterplaintiffs lost at least $1,248,000 in lost profits with regard to the lease transaction with Hongtu.   At the end of the lease, the planes (Airbus A320-214) would have had a residual value of $23,843,333 each according to LLFC Corporation.  The parties also potentially could have entered a similar additional lease of the planes.

On or about July 25, 2016, a potential buyer, Terra Master, Inc., agreed to purchase the two planes for $58 million each (EFGLLC000253-261).  This is an alternative means of determining Counterplaintiffs' lost profits.   That price would have provided approximately $11 million profit on each plane for a total of $22 million profit.  Ocean Sky was to receive one-third of the profit, or approximately $7,333,333 million for both planes.   From that amount, Counterdefendant's deposit, which would have been $1,000,000 on the two planes, would have been subtracted and returned to Counterdefendant.  The net profit would have been $6,333,333.  Counterplaintiffs would have then shared this profit with Counterdefendant at no more than 50%.   Thus, Counterplaintiffs lost at least $3,166,666.50 in lost profits with regard to the sale transaction with Terra Master.  Counterplaintiffs also seek interest through trial in the statutory amount of 10%.

**6.    Specifically identify and describe any insurance or other agreement under which an insurance business or other person or entity may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse a party for payments made by the party to satisfy the judgment. You may produce a copy of the agreement with your response instead of describing it.**

None.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the information in the foregoing related to the claims against me and/or EFG America, LLC,

Enviropark Texas, LLC, EFG Polymers, LLC, D&H Sophie Brown, LLC, Tex-Gas Holdings, LLC, EF Global Corporation, Ocean Sky Finance Limited, Texen Holdings, LLC and International Tejas Operating LLC is true and correct. Executed on the __ day of November, 2019.

_____
D. Elroy Fimrite

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the information in the foregoing of which I have knowledge and related to the claims against me is true and correct. Executed on the __ day of November, 2019.

_____
Don Carroll

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the information in the foregoing of which I have knowledge and related to the claims against me is true and correct. Executed on the __ day of November, 2019.

_____
Mark Boyd

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the information in the foregoing of which I have knowledge and related to the claims against me and/or Niehaus Wise & Kalas Ltd. (now known as Niehaus Kalas Hinshaw Ltd.) is true and correct. Executed on the __ day of November, 2019.

_____
Charles D. Niehaus

1

2

NIEHAUS KALAS HINSHAW LTD

3

/s/ Scot A. Hinshaw

4

Scot A. Hinshaw (*pro hac vice*)
Niehaus Kalas Hinshaw Ltd

5

7150 Granite Circle, Suite 203
Toledo, OH  43617

6

Phone: (419) 517-9090
Fax: (419) 517-9091

7

hinshaw@nwklaw.com

8

Attorney for Defendants

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on November 5, 2019, a true and correct copy of the foregoing

3   Defendants' Revised First Supplemental Mandatory Initial Discovery Responses was

4   served by electronic mail on:

5

6      John M. McHugh
       REILLY POZNER LLP

7      1700 Lincoln Street, Suite 3400
       Denver, CO 80203

8      Phone: (303) 893-6100
       Fax: (303) 893-6110

9      jmchugh@rplaw.com

10
       Attorney for Plaintiff

11

12

13                              */s/ Scot A. Hinshaw*
                                Scot A. Hinshaw (*pro hac vice*)

14                              Niehaus Kalas Hinshaw Ltd.
                                Attorney for Defendants

15

16

17

18

19

20

21

22

23

24

25

26

27

28