# EXHIBIT 18

# ORLOFF, LOWENBACH, STIFELMAN & SIEGEL, P.A.

101 Eisenhower Parkway – Suite 400 • Roseland, New Jersey 07068-1097

(973) 622-6200 • Fax: (973) 622-3073

E-Mail: attorneys@olss.com

www.olss.com

*Date*:      March 30, 2016

*This fax is for:*

   *Name*:        William M. Eddington

   *Company*:     LLFC Corporation

   *Fax Number:*   (760) 325-0433

*From*:     Samuel Feldman, Esq.

*My E-Mail Address*:   sf@olss.com

*Re*:   Synergy Aerospace Corp. v. LLFC Corporation and U.S. Bank National Association
       Docket No. 16-cv-02268-WHP

*Comments*:         Pursuant to Sections 15 and 16 of the Escrow Agreement dated as of October 23,
2015 among LLFC Corporation, U.S. Bank National Association and Synergy Aerospace Corp.,
service is hereby made on defendant LLFC Corporation of the attached Summons and Complaint.

**Total number of pages (including cover sheet):** 52

**File No.:** 101516-003

Confidentiality Notice: This fax contains confidential information meant only for the addressee.
Unauthorized use or distribution of this fax by anyone else is prohibited. If you receive this fax by
mistake, please call and let us know, and mail the original back to us. (We will reimburse the postage.)

CONFIDENTIAL                                                          CAPITAL0001764

To: 17603250433   From: 19736223073   Date: 03/30/16   Time: 12:50 PM Page: 02
MAR-30-2016 0Case 2:16-cv-02583-SMM   Document 198-20   Filed 12/20/19   Page 3 of 53 Page:2/52

Case 1:16-cv-02268-WHP   Document 9   Filed 03/30/16   Page 1 of 1

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

|  |  |
|---|---|
| SYNERGY AEROSPACE CORP. | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No.  16-cv-02268-WHP |
| LLFC CORPORATION AND U.S. BANK NATIONAL ASSOCIATION, | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  LLFC Corporation
870 Research Drive, Suite #2
Palm Springs, California 92262

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Samuel Feldman, Esq.
Orloff, Lowenbach, Stifelman & Siegel, P.A.
101 Eisenhower Parkway - Suite 400
Roseland, New Jersey 07068

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date:    03/28/2016

/s/ R. Chambers

*Signature of Clerk or Deputy Clerk*

CONFIDENTIAL

CAPITAL0001765

To: 17603250433  From: 19736223073    Date: 03/30/16  Time: 12:50 PM Page: 03
MAR-30-2016  Case 2:18-cv-02583-SMM    Document 198-20    Filed 12/20/19   Page 4 of 53   Page:3/52

Case 1:16-cv-02268-WHP   Document 1   Filed 03/28/16   Page 1 of 10

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SYNERGY AEROSPACE CORP., | |
| | Docket No. |
| Plaintiff, | |
| -against- | |
| | **COMPLAINT** |
| LLFC CORPORATION AND U.S. BANK NATIONAL ASSOCIATION, | |
| Defendants. | |

Plaintiff Synergy Aerospace Corp. ("Synergy" or "Seller") by its counsel
Orloff Lowenbach, Stifelman & Siegel, P.A., as and for its complaint against defendants
LLFC Corporation ("LLFC" or "Purchaser") and U.S. Bank National Association
("USB" or "Escrow Agent"), respectfully alleges as follows:

### NATURE OF ACTION

1. Synergy brings this action to against LLFC to recover damages for its
breach of a contract by which it agreed to purchase from Synergy three (3) new Airbus
aircraft or $47 million each. It also brings this action to recover damages and obtain
injunctive relief against USB for its failure to distribute escrow funds to Synergy
pursuant to the terms of a written Escrow Agreement.

31N0172

To: 17603250433  From: 19736223073  Date: 03/30/16  Time: 12:50 PM Page: 04
MAR-30-2016  Case 2:18-cv-02583-SMM  Document 198-20  Filed 12/29/18  Page 5 of 53  Page: 4/52
Case 1:16-cv-02268-WHP  Document 1  Filed 03/28/16  Page 2 of 10

## THE PARTIES

2. Synergy is a Panamanian Corporation with a place of business located in Sao Paulo, Brazil.

3. LLFC is a Utah corporation with its principal place of business at 870 Research Dr., Suite Two, Palm Springs, California. Upon information and belief LLFC is in the business of financing commercial and corporate aircraft.

4. USB is a national banking association organized under the laws of the United States located in Ohio with an office at 60 Livingston Street, St. Paul, Minnesota.

## JURISDICTION AND VENUE

5. Jurisdiction is proper pursuant to 28 U.S.C. §§1332(a)(2) and 1348 in that this case is between a citizen of a foreign state (Synergy) and citizens of the United States one of which (USB) is a national bank located in Ohio. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6. The venue is proper in this district pursuant to a provision contained in an escrow agreement made on or about October 23, 2015 between Synergy and LLFC.

## FACTUAL BACKGROUND

7. In late 2015 LLFC sought to purchase three new Airbus A320 – 214 jet aircraft for $47 million each in cash from Synergy, and to that end on October 6, 2015, made a detailed written offer to the CEO of Synergy, German Efromovich dated, October 6, 2015. See Exh. "A" hereto.

8. In the October 6 offer drafted by LLFC, it agreed, inter alia to establish an escrow fund (the "**Escrow Funds**") into which $4.7 million of the purchase price per

-2-

To: 17603250433   From: 19736223073   Date: 03/30/16   Time: 12:50 PM Page: 05
MAR-30-2016  Case 2:18-cv-02583-SMM   Document 198-20   Filed 12/29/18  Page 6 of 53  Page:5/52

Case 1:16-cv-02268-WHP   Document 1   Filed 03/28/16   Page 3 of 10

aircraft would be deposited by Purchaser in escrow prior to the time of the closing. The offer provided that the Escrow Funds were to be disbursed to Synergy by USB in accordance with the terms of the Escrow Agreement to be signed. The fees of the Escrow Agent would be the responsibility of LLFC.

9. In an addendum to the LLFC's offer, it agreed to establish the escrow account with an Escrow Agent in which the LLFC agreed to remit deposit of ten (10%) percent of the purchase price in three installments. The first payment of $500,000 for each aircraft was due on the opening of the escrow account. The initial payment was non-refundable if the Purchaser failed to remit 5% of the purchase price within 20 business days from October 14, 2015 and the remaining portion of the deposit within 25 business days from October 14, 2015.

10. On October 6, 2015 Synergy in writing accepted LLCF's offer (See Exh. "A") (the accepted offer shall be referred to as the "Underlying Agreement").

11. The parties selected USB as the Escrow Agent. A formal Escrow Agreement was signed on October 23, 2015. See Exh. "B" hereto. USB received a fee to "study" and consider the Underlying Agreement.

12. Pursuant to the terms of the Escrow Agreement, USB agreed to act as the "Escrow Agent" consistent with the terms of the Escrow Agreement.

13. The Escrow Agreement provided for the Escrow Period to begin on October 23, 2015 (the date the Escrow Agreement was signed) and end no later than December 15, 2015, unless otherwise agreed upon writing by Synergy and Purchaser, or

-3-

To: 17603250433  From: 19736223073   Date: 03/30/16  Time: 12:50 PM Page: 06
MAR-30-2016  Case 2:18-cv-02583-SMM   Document 198-20   Filed 12/30/19 Page 7 of 53 Page:6/52
Case 1:16-cv-02268-WHP   Document 1   Filed 03/28/16   Page 4 of 10

the termination of the Underlying Agreement, unless earlier terminated pursuant to the Escrow Agreement.

14. Section 4 of the Escrow Agreement provided that upon the termination of the Escrow Period and the receipt by USB of written payment instructions, USB was obligated to distribute the Escrow Funds to Synergy as promptly as practicable.

15. LLFC failed to satisfy its deposit payment obligations to Synergy. By way of letter dated March 4, 2016, (Exh. "C") Synergy gave formal notice to USB of the default by LLFC and the termination of the Underlying Agreement and demanded payment. Notwithstanding the provisions of the Escrow Agreement, USB refused to release or make arrangements to release the Escrow Fund (then comprising $800,000) to Synergy. At no time before December 15, 2015 (or thereafter) had USB received a valid Claim Notice from Synergy which, if contested, would require USB to hold back the contested amount, but to release the balance upon termination of the Escrow Period.

16. By way of email dated March 7, 2016 (See Exh. "D"), USB acknowledged that the Escrow Period was over, but wanted its legal department to look at the documents.

17. In response, LLFC, in an email dated March 8, 2016 asked USB to refrain from disbursing any funds or terminating the escrow until its counsel had a chance to review the documents and discuss the matter with Synergy. See Exh. "E". Thereupon, USB, having previously acknowledged that the Escrow Period was over, switched gears and announced that it was "awaiting clarity on this matter". USB provided no specifics or evidence to elucidate what might be unclear since in view of the fact that the payments

-4-

CONFIDENTIAL                                                    CAPITAL0001769

To: 17603250433   From: 19736223073   Date: 03/30/16   Time: 12:50 PM Page: 07
MAR-30-2016 Case 2:18-cv-02583-SMM   Document 198-20   Filed 12/20/18 Page 8 of 53 Page:7/52
Case 1:16-cv-02268-WHP   Document 1   Filed 03/28/16   Page 5 of 10

due to Synergy from LLFC pursuant to the Underlying Agreement were not made and
USB's distribution obligation had been triggered.

18.   Synergy representative Michael F. Welch ("Welch") wanted to speak
with the USB Vice President, Christopher Grell who was handing the matter for USB.
On March 15, 2016 Mr. Grell advised Welch that he had scheduled a call with his
counsel later that day and would be in touch shortly. (See Exh. "F"). Thereafter, Mr.
Grell then wrote to Welch to advise that in view of the "dispute" between the buyer and
seller and the correspondence received, the Escrow Agent would continue to hold the
funds in escrow until further notice. (See Exh. "G"). No dispute was specified.

19.   In response, Synergy sent an email to USB asking that it review its
position, and explained that termination for breach is a unilateral right, not something that
requires mutual agreement. (See Exh. "H"). USB then notified Synergy that it intended
to commence an interpleading proceeding. As of the present date, Synergy is not aware
that any such proceeding has been instituted.

20.   In acknowledging that the Escrow Period had terminated, then without
providing any specific facts (and upon information and belief, failing to conduct an
investigation as to the existence of a dispute), reversing gears and deciding that there was
a dispute between Purchaser and Synergy and refusing to disburse the Escrow Funds to
Synergy (or at least put the disbursement process in motion), the USB breached the
Escrow Agreement and acted in a grossly negligent and/or willful manner in performing
under the Escrow Agreement.

-5-

CONFIDENTIAL

CAPITAL0001770

To: 17603250433  From: 19736223073  Date: 03/30/16  Time: 12:50 PM Page: 08
MAR-30-2016  Case 2:16-cv-02583-SMM  Document 198-20  Filed 12/20/16  Page 9 of 53  Page:8/52
Case 1:16-cv-02268-WHP  Document 1  Filed 03/28/16  Page 6 of 10

## FIRST COUNT
### (Breach of the Escrow Agreement
### Against U.S. Bank National Association)

21. Synergy repeats and realleges each and every allegation contained in

paragraphs 1 through 20 hereof, as if fully set forth herein.

22. The Escrow Agreement is a valid and binding agreement.

23. Synergy has at all times performed its obligations under the Escrow

Agreement.

24. USB breached the Escrow Agreement in failing to distribute to

Synergy the Escrow Funds ($800,000) together with accrued interest.

## SECOND COUNT
### (Breach of the Underlying Agreement Against LLFC)

25. Synergy repeats and realleges each and every allegation contained in

Paragraphs 1 through 24 hereof, as if fully set forth herein.

26. The Underlying Agreement entered into between Synergy and LLFC is

a valid and binding agreement.

27. Synergy has at all times performed its obligations under the

Underlying Agreement.

28. LLFC breached the Underlying Agreement in failing to make the

payments due thereunder.

29. By reason of LLFC's breach of the Underlying Agreement, Synergy

has suffered damages in an amount to be determined at trial.

-6-

CONFIDENTIAL

CAPITAL0001771

To: 17603250433  From: 19736223073  Date: 03/30/16  Time: 12:50 PM Page: 09
MAR-30-2016 Case 2:18-cv-02583-SMM   Document 198-20   Filed 12/30/18  Page 10 of 53 Page:9/52
Case 1:16-cv-02268-WHP  Document 1  Filed 03/28/16  Page 7 of 10

## THIRD COUNT
## (Breach of Fiduciary Duty Against
## U.S. Bank National Association)

30. Synergy repeats and realleges the allegations contained in Paragraphs 1

through 29 as though fully set forth at length herein.

31. USB breached its fiduciary duty to Synergy by failing distribute the

Escrow Funds as required upon the termination of the Escrow Period and failing to

investigate and verify that there existed a legitimate basis to decline to distribute the

Escrow Funds to Synergy. In declining to make distribution to Synergy, USB acted in a

grossly negligent and/or willful manner

## FOURTH COUNT
## (Breach of the Obligation of Good Faith and Fair Dealing
## Against U.S. Bank National Association)

32. Synergy repeats and realleges the allegations contained in Paragraphs 1

through 31 as though fully set forth at length herein.

33. Under New York law which under the Escrow Agreement governs this

matter, every contract has an implied covenant of good faith and fair dealing.

34. USB breached the implied covenant of good faith and fair dealing by

failing to distribute the Escrow Funds, having studied the Underlying Agreement and

acknowledged that that the Escrow Period was terminated, which event mandated the

distribution of the Escrow Funds to Synergy.

35. Upon being notified of the termination of the Escrow Period, there was

no substantial purpose for USB to refuse to distribute the Escrow Funds to Synergy other

-7-

CONFIDENTIAL                                                    CAPITAL0001772

To: 17603250433   From: 19736223073   Date: 03/30/16   Time: 12:50 PM Page: 10
MAR-30-2016   Case 2:16-cv-02583-SMM   Document 198-20   Filed 12/20/18   Page 11 of 53   Page:10/52
Case 1:16-cv-02268-WHP   Document 1   Filed 03/28/16   Page 8 of 10

than to inflict needless legal fees and expenses on Synergy by requiring Synergy to retain counsel and to seek relief from this Court.

36. USB refused to release the funds in bad faith, and with a bias for its self-interest. As a direct and proximate cause of USB'S conduct, Synergy suffered damages.

WHEREFORE, plaintiff demands judgment in its favor and against LLFC and USB.

A. On the First Count, issuing an order by way of injunction to USB directing that it forthwith distribute the Escrow Funds, including accrued interest, to Synergy Aerospace Corp. together with damages and interest at the rate of 9% and refrain from paying itself any funds from the Escrow Funds to reimburse itself for expenses incurred by it in addressing this matter.

B. On the Second Count, against LLFC for damages in an amount to be proven at trial; interest at the rate of 9%.

C. On the Third Count, issuing an order to USB directing that it forthwith distribute the Escrow Funds, including accrued interest, to Synergy Aerospace Corp. together with damages and interest at the rate of 9% and refrain from paying itself any funds from the Escrow Funds to reimburse itself for expenses incurred by it in addressing this matter.

D. On the Fourth Count issuing an order by way of injunction to USB directing that it forthwith distribute the Escrow Funds including accrued interest to Synergy Aerospace Corp., including accrued interests, together with damages and interest

-8-

CONFIDENTIAL   CAPITAL0001773

To: 17603250433   From: 19736223073   Date: 03/30/16   Time: 12:50 PM Page: 11
MAR-30-2016  Case 2:18-cv-02583-SMM   Document 198-20   Filed 12/20/18   Page 12 of 53 Page: 11/52
Case 1:16-cv-02268-WHP   Document 1   Filed 03/28/16   Page 10 of 10

at the rate of 9% and refrain from paying itself any funds from the Escrow Funds to

reimburse itself for expenses incurred by it in addressing this matter.

             E. Awarding such other and further relief as the Court deems just and

appropriate under the circumstances.

Dated: Roseland, New Jersey          ORLOFF, LOWENBACH, STIFELMAN
       March 28, 2016                & SIEGEL, P.A.
                                   Attorneys for Plaintiffs
                                   101 Eisenhower Parkway - Suite 400
                                   Roseland, New Jersey 07068-1097
                                   Email: sf@olss.com
                                   (973) 622-6200

                                   By:/s/ *Samuel Feldman*
                                   SAMUEL FELDMAN, ESQ.
                                   ID# SF6704

CONFIDENTIAL
CAPITAL0001774

# EXHIBIT A

To: 17603250433  From: 19736223073   Date: 03/30/16  Time: 12:50 PM Page: 13
MAR-30-2016  Case 2:18-cv-02583-SMM   Document 198-20   Filed 12/29/18 03/30/18 Page 14 of 53 Page:13/52
Case 1:16-cv-02268-WHP  Document 1-1  Filed 03/28/16  Page 2 of 11

# LLFC CORPORATION

October 6, 2015

Germán Efromovich
CEO
SYNERGY AEROSPACE CORP.
São Paulo, Brazil

     Re:    Purchase of Three (3) New A320-214 Aircraft

Dear Mr. Efromovich:

The undersigned LLFC CORPORATION together with LE GROUPE DELTA S.A. and OCEAN SKY FINANCE LIMITED, hereby offers to purchase three (3) new Airbus A320-214 bearing manufacturer's serial numbers 6871, 6876, and 6896, subject to the general terms and conditions set forth in the "Summary of Purchase Terms and Conditions" transmitted herewith (the "Summary of Terms"), the terms of which are incorporated herein by reference. Defined terms used herein are used with the meaning assigned to such terms in the Summary of Terms.

If you find this proposal acceptable (the "Offer"), kindly execute the enclosed copy of this Offer in the space provided, initial each page of the Summary of Terms, and return the same by email and overnight courier to LLFC Corporation at the address referenced below. If a copy of this Offer is not received on or before October 7, 2015 (or such other date as the undersigned shall agree in writing) (the "Expiry Date"), this Offer shall terminate and be of no further force or effect whatsoever.

If we receive a copy of this Offer executed by Seller prior to the Expiry Date, each of us agree to negotiate in good faith with a view to conclude Sale Documentation on or prior to November 10, 2015 or such other later date as the parties shall agree in writing (the "Documentation Deadline").

If this sale and purchase has not been executed on or prior to the Documentation Deadline, the obligations of the parties hereunder and under the Summary of Terms (except those which by their terms survive such termination) shall terminate.

The terms and conditions of this offer and the Summary of Terms will be subject to both the Buyer's and Seller's Board approvals.

CONFIDENTIAL                   CAPITAL0001776

Looking forward to your acceptance of this offer and to proceeding to closing on this offer forthwith.

Sincerely,

LLFC CORPORATION

By: _____
W.M. Eddington
President

LE GROUPE DELTA S.A.

By: _____
Juan M. Cabrera-Cabrera
Director

OCEAN SKY FINANCE LIMITED

By: _____
J. Elroy Fimrite
Chairman

THE UNDERSIGNED, FOR AND ON BEHALF OF THE SELLER OF SUCH AIRCRAFT, HEREBY ACCEPTS THIS OFFER AS OF THIS 6ᵗʰ DAY OF October 2015.

SYNERGY AEROSPACE CORP.

By: _____

Name: Jamon Thomovich

Title: Officer.

870 Research Drive, Suite #2, Palm Springs, CA 92262  ·Tel: 760-325-0067    Fax: 760-325-0433

CONFIDENTIAL

## SUMMARY OF PURCHASE TERMS AND CONDITIONS

The undersigned parties hereby agree to the sale and purchase of the herein described Aircraft subject to the following general terms and conditions:

**SELLER:** SYNERGY AEROSPACE CORP, or its nominee.

**BUYER:** LLFC CORPORATION, or its nominee, together with LE GROUPE DELTA, S.A. and with support from OCEAN SKY FINANCE LIMITED.

**AIRCRAFT:** Three (3) new Airbus A320-214 aircraft, each equipped with a full complement of CFM56-5B4/3 engines, bearing manufacturer's serial numbers 6871, 6876, and 6896, and described further in the specification attached hereto as Exhibit "A" and as per the complete equipment list issued under the Seller's purchase contract with the manufacturer.

**DELIVERY CONDITION:** It is understood that the Aircraft will be sold "As-Is, Where-Is" with a valid certificate of airworthiness and delivered new at the manufacturer's facility.

**SALE PRICE:** Buyer shall pay Seller for the aircraft US$47,000,000.00 (UNITED STATES DOLLARS FORTY-SEVEN MILLION) cash per aircraft.

**DEPOSIT:** Buyer shall cause to be established an escrow account with the escrow agent mentioned below and shall transfer to it a refundable deposit equal to TEN PERCENT (10%) of the purchase price in three installments as follows:

    a. US$500,000 per aircraft payable within five (5) business days from acceptance and signing of this Offer and Summary of Terms and Conditions. This portion of the deposit shall be non-refundable if Buyer fails to fulfill the obligations to provide the deposits described in b. and c. below.

    b. FIVE PERCENT (5.0%) of the Purchase Price within twenty (20) business days from payment of the previous deposit installment.

    c. The remaining portion of the Deposit within twenty-five (25) business days from payment of the initial deposit installment.

The deposits described in b. and c. above, shall become non-refundable upon (i) Buyer's signature of the technical acceptance certificate for the Aircraft, (ii) Buyer's approval of official delivery date, and (iii) Buyer's signature of an acceptable Sale and Purchase Agreement. Upon receipt of

CONFIDENTIAL

CAPITAL0001778

TO: 17603250433   From: 19736223073   Date: 03/30/16   Time: 12:50 PM Page: 16
MAR-30-2016 Case 2:18-cv-02583-SMM   Document 198-20   Filed 12/20/19   Page 17 of 53   Page: 16/52
Case 1:16-cv-02268-WHP   Document 1-1   Filed 03/28/16   Page 5 of 11

the first installment of the Deposit in escrow the Aircraft shall be removed from market. The 10% deposit described herein shall credited against the Purchase Price.

**ESCROW:**  Parties shall agree upon an acceptable USA-based escrow agent regarding the payment of the deposit ("the Escrow Agent"). Parties and the Escrow Agent will sign an escrow agreement in which the specifics of the escrow will be agreed upon. Buyer will be responsible for all escrow fees.

**OTHER PAYMENT TERMS:**  Upon delivery of an acceptable Bill of Sale to buyer, payment of the remaining of the Purchase Price shall be made directly into Seller's bank account. All payments shall be made by wire transfer of immediately available funds to Seller's bank account.

**DELIVERY DATE:**  December 15, 2015, or such other date(s) as may be agreed in writing by the parties.

**DELIVERY SITE:**  A tax efficient location to be mutually agreed by the parties.

**WARRANTIES:**  Seller shall assign and transfer to the Buyer a full manufacturers' or major repair agency warranties available to itself which can be transferable at the time of delivery, and will assist the latter in exercising the same.

**TECHNICAL INSPECTION:**  Within a reasonable period of time, Seller shall tender the Aircraft for inspection at a suitable facility at the aircraft's current location. Following the inspection, Buyer may accept or reject the Aircraft for airworthiness discrepancies or material damage to the Aircraft, or other such discrepancies in the physical condition of the Aircraft or records that the Buyer and its customer deem unacceptable.   Provided no such discrepancies exist, Buyer will deliver to Seller a written acceptance of the Aircraft, at which time Buyer will be deemed to have accepted the technical condition of the Aircraft.

**TRANSFER OF TITLE:**  Free and clear title will pass from Seller to Buyer on the Delivery Date.

**SELLER'S WARRANTIES & REPRESENTATIONS:**  Seller warrants and represents the following:

---

870 Research Drive, Suite #2, Palm Springs, CA 92262   Tel: 760-325-0067   Fax: 760-325-0433

CONFIDENTIAL

To: 17603250433   From: 19736223073   Date: 03/30/16   Time: 12:50 PM   Page: 17
MAR-30-2016  Case 2:18-cv-02583-SMM   Document 198-20   Filed 12/20/18   Page 18 of 53  Page:17/52
Case 1:16-cv-02268-WHP   Document 1-1   Filed 03/28/16   Page 6 of 11

a. The Aircraft when delivered to Buyer shall be Airworthy and shall have a valid airworthiness certificate issued by a governmental authority having jurisdiction over the Aircraft.

b. The Aircraft shall be compliant with all Airworthiness Directives and manufacturer's service bulletins issued by any governmental authority having jurisdiction over the Aircraft at the time of delivery by Airbus to Seller.

**CONDITIONS PRECEDENT:**

a. Satisfactory inspection of the Aircraft by Buyer.

b. Entering into mutually satisfactory sale and other supporting documentation no later than November 10, 2015.

c. Approval of the sale by Buyer's and Seller's Board of Directors.

**TRANSACTION COSTS:**

Each party shall be responsible for its own expenses, including technical and legal expenses. Notwithstanding, Buyer will be responsible for escrow fees.

**TAXES:**

Each party shall be responsible for all taxes imposed on them by the government authorities of the country of their incorporation or the country of delivery location in accordance with the corresponding applicable laws. Seller shall only be responsible for any income tax due on the sale of the aircraft or other taxes imposed by the government authorities of Seller's country of incorporation.

Parties will choose a delivery location that will minimize any taxes.

**SALE DOCUMENTS:**

Seller shall provide draft Sale/Purchase documentation ("Sales Documentation") consistent with the terms of this Offer and Summary of Terms and Conditions and containing such other terms and conditions as are customary in transactions of the type contemplated hereby and mutually satisfactory to the parties. The Sale Documentation shall be governed by the laws of New York and shall include provisions standard for the sale of similar aircraft.

**EXPIRATION:**

These terms and conditions shall expire on October 7, 2015 unless accepted by Seller in writing prior to that date.

870 Research Drive, Suite #2, Palm Springs, CA 92262   Tel: 760-325-0067   Fax: 760-325-0433

CONFIDENTIAL                    CAPITAL0001780

## EXHIBIT A - AIRCRAFT SPECS

| ORIGINAL DATE | REVISION No. | REVISION DATE | PAGES |
|---|---|---|---|
| 08-Abril-2014 | ORIGINAL | 08-Abril-2014 | Page 1 of 8 |

| EFFECTIVITY | | | REFERENCES |
|---|---|---|---|
| ☑ A/C    FLEET: | A320-214 | | AIR - Airbus |
| ☐ Engines | | | |
| ☐ Units    Reg. / Serial No.: | | | |

| REASON |
|---|

### DATOS AERONAVE / AIRCRAFT DATA

| | |
|---|---|
| Matricula / Register | |
| Fabricante / Manufacture | Airbus |
| Modelo / Model - | A320-214 |
| No. SERIE / Serial Number | |
| No. SERIE Flota / Fleet Serial Number | FSN 002 |
| Weight Variant | 017 |
| Fecha de Fabricación / Manufacture Date | |
| Horas Totales / Total Hours | 00:00 |
| Ciclos Totales / Total Clycles | 0000 |
| SELCAL Code | GM-EH |
| SSR ModeS | 11100100100011111011101 |

### MOTORES / ENGINE

| | |
|---|---|
| CFM56-5B4/3 | |
| Post 1. (Izquierdo / Left) | |
| Post 2. (Derecho / Right) | |

### APU

| | |
|---|---|
| APU Model APIC 3200 | P/N 4500001C |

### Trenes de Aterrizaje / Landing Gear

| | |
|---|---|
| Main landing gear LH | P/N 201581001 |
| Main landing gear RH | P/N 201581002 |
| Nose landing gear | P/N NA28008-015 |

### FLUIDOS / FLUID

| | |
|---|---|
| APU | Mobil Jet II |
| Starter | Mobil Jet II |
| Sistemas    Hidráulicos    /    HydraulicSystem | HYJET IV PLUS |
| Amortiguadores de trenes / Landing Gear Shock Absorber | AS PER MANUAL |

### NAVEGACIÓN / NAVIGATION

| Equipo / Equipment | Fabricante / Manufacture | Parte número / Part number |
|---|---|---|
| HF # 1 | Rockwell Collins | 822-0990-003 |

870 Research Drive, Suite #2, Palm Springs, CA 92262   Tel: 760-325-0067   Fax: 760-325-0433

CONFIDENTIAL

To: 17603250433  From: 19736223073  Date: 03/30/16  Time: 12:50 PM Page: 19
MAR-30-2016  Case 2:18-cv-02583-SMM  Document 198-20  Filed 12/20/18  Page 20 of 53  Page:19/52
Case 1:16-cv-02268-WHP  Document 1-1  Filed 03/28/16  Page 8 of 11

| ORIGINAL DATE | REVISION No. | REVISION DATE | PAGES |
|---|---|---|---|
| 08-Abril-2014 | ORIGINAL | 08-Abril-2014 | Page 2 of 8 |
| ADF # 1 | Honeywell | | 066-50014-1202 |
| VHF # 1 / VHF # 2 / VHF # 3 | Honeywell | | 965-1696-051 |
| VOR # 1 / VOR # 2 | Honeywell | | 066-50012-1212 |
| DME# 1 / DME # 2 | Honeywell | | 066-50013-1222 |
| RADAR # 1 / RADAR # 2 | Rockwell Collins | | 822-1710-213 |
| MMR # 1 / MMR # 2 | Rockwell Collins | | 822-1821-430 |
| TCAS | Honeywell | | 940-0351-001 |
| EGPWS / TAWS | Honeywell | | 965-1676-002 |
| FDR | L3 | | 2100-4045-00 |
| CVR | L3 | | 2100-1026-02 |

Nota: Para efecto de intercambiabilidad de componentes de navegación es necesario referirse al manual aplicable para cada tipo de avión.
*Note: For purposes of navigation interchangeability of components is necessary to refer to the applicable manual for each aircraft type.*

| **MISCELANEOUS** | |
|---|---|
| MAXIMUM TAKEOFF GROSS WEIGHT (MTOW) | 78.000 kg (171.961 lb) |
| AIRCRAFT LENGTH | 37.57 m (123.26 ft) |
| AIRCRAFT HEIGHT | FWD CG 17% 11.98 m (39.30 ft) AFT CG 36.8% 11.83 m (38.81 ft) |
| AIRCRAFT WING SPAN | 35.80 m (117.45 ft) |
| CREW SEATS | 4 Cockpit (including crew) |
| CARGO HOLDS CAPACITY | |
| Forward Cargo Compartment | 3.402 kg (7.500 lb) |
| Aft Cargo Compartment | 4.536 kg (10.000 lb) |
| Aft Cargo Compartment (bulk cargo) | 1.497 kg (3.300 lb) |
| CARGO HOLDS VOLUME - USABLE | |
| Forward Cargo Compartment | 13.28 m³ (469 ft³) |
| Aft Cargo Compartment | 18.26 m³ (645 ft³) |
| Aft Cargo Compartment (bulk cargo) | 5.88 m³ (208 ft³) |

NOTA: El anterior documento es de referencia; para información específica refiérase a los manuales oficiales del avión.
*NOTE: The above document is a reference, for specific information refers to the official manuals of the aircraft.*

870 Research Drive, Suite #2, Palm Springs, CA 92262  Tel: 760-325-0067  Fax: 760-325-0433

CONFIDENTIAL

CAPITAL0001782

| ORIGINAL DATE | REVISION No. | REVISION DATE | PAGES |
|---|---|---|---|
| 08-Abril-2014 | ORIGINAL | 08-Abril-2014 | Page 3 of 8 |

**IFE**

IFE Vendor: Panasonic
System: Panasonic eX1
System Configuration:
- In-Seat Audio
- In-Seat Video (Backrest)
   o ECO monitor V1
   o Touchscreen
   o Ratio: 16:9
   o Size: 9"
- In-Seat Telephone
- In-Arm Video Display Unit (Row 1)
   o ECO monitor V1
   o Touchscreen
   o Ratio: 16:9
   o Size: 9"
- USB Port Included in Monitor
- PED Power Outlet
   o Under seat cushion between seats
   o Compliance with Brazilian Standard 10A

870 Research Drive, Suite #2, Palm Springs, CA 92262   Tel: 760-325-0067   Fax: 760-325-0433

CONFIDENTIAL

CAPITAL 0001783

# LLFC CORPORATION

### ADDENDUM #1
### To the Offer to Purchase Letter of Intent dated October 6, 2015 to
### SYNERGY AEROSPACE CORP.

This Addendum #1 to that certain offer to purchase three (3) A320-214 aircraft, manufacturer's serial numbers 6871, 6876 and 6896, dated October 6, 2015 (hereinafter referred to as the "Letter of Intent"), from LLFC CORPORATION ("Buyer") to SYNERGY AEROSPACE CORP. ("Seller") is entered into as of the 20th day of October 2015.

The parties hereby amend, modify, clarify and/or replace the following paragraph in the "Summary of Purchase Terms and Conditions" of the Letter of Intent:

DEPOSIT:    Buyer shall cause to be established an escrow account with the escrow agent mentioned below and shall transfer to it a refundable deposit equal to TEN PERCENT (10%) of the purchase price in three installments as follows:

a. US$500,000 per aircraft upon opening of the escrow account. This portion of the deposit shall be non-refundable if Buyer fails to fulfill the obligations to provide the deposits described in b. and c. below.

b. FIVE PERCENT (5.0%) of the Purchase Price within twenty (20) business days from October 14, 2015.

c. The remaining portion of the Deposit within twenty-five (25) business days from October 14, 2015.

The deposits described in b. and c. above, shall become non-refundable upon (i) Buyer's signature of the technical acceptance certificate for the Aircraft, (ii) Buyer's approval of official delivery date, and (iii) Buyer's signature of an acceptable Sale and Purchase Agreement. Upon receipt of the first installment of the Deposit in escrow the Aircraft shall be removed from market. The 10% deposit described herein shall credited against the Purchase Price.

All other terms, conditions, and provisions of the Letter of Intent that are not specifically modified by this Addendum #1 shall remain in full force and effect and the Letter of Intent along with this Addendum #1 shall represent the complete agreement of the parties with respect to the subject matter.

870 Research Drive, Suite #2, Palm Springs, CA 92262   Tel: 760-325-0067   Fax: 760-325-0433

CONFIDENTIAL

CAPITAL0001784

# LLFC CORPORATION

If the foregoing Addendum #1 is acceptable, please execute in the space provided below
and return one copy to LLFC CORPORATION, no later than October 21, 2015.

LLFC CORPORATION

By: _____

W.M. Eddington, President

ACCEPTED AND AGREED.

Seller:

SYNERGY AEROSPACE CORP.

By: _____

Name: _____

Title: _____

870 Research Drive, Suite #2, Palm Springs, CA 92262   Tel: 760-325-0067   Fax: 760-325-0433

CONFIDENTIAL

CAPITAL0001785

# EXHIBIT B

CONFIDENTIAL

CAPITAL0001786

To: 17603250433  From: 19736223073  Date: 03/30/16  Time: 12:50 PM Page: 24
MAR-30-2016 Case 2:18-cv-02583-SMM  Document 198-20  Filed 12/30/18 Page 25 of 53 age:24/52
Case 1:16-cv-02268-WHP  Document 1-2  Filed 03/28/16  Page 2 of 15

### ESCROW AGREEMENT

**THIS ESCROW AGREEMENT**, dated as of October 23 , 2015 ("Escrow Agreement"), is by and among LLFC CORPORATION, a Utah corporation ("Purchaser"); SYNERGY AEROSPACE CORP., a Panamanian corporation ("Seller"); and U.S. BANK NATIONAL ASSOCIATION, a national banking association, as escrow agent hereunder ("Escrow Agent").

### BACKGROUND

A. Purchaser and Seller have entered into a Letter of Intent (the "Underlying Agreement"), dated as of October 6, 2015, as amended pursuant to that certain Addendum N# 1 dated October 20, 2015, pursuant to which Purchaser is purchasing three (3) Airbus A320-200 aircraft bearing manufacturer serial numbers 6871, 6876 and 6891 (each an "Aircraft" and collectively, the "Aircrafts"). The Underlying Agreement provides that Purchaser shall deposit on behalf of the Seller the Escrow Funds (defined below) in a segregated escrow account to be held by Escrow Agent for the purpose of satisfying certain obligations set forth in the Underlying Agreement.

B. Escrow Agent has agreed to accept, hold, and disburse the funds deposited with it and the earnings thereon in accordance with the terms of this Escrow Agreement.

C. Purchaser and Seller have appointed the Representatives (as defined below) to represent them for all purposes in connection with the funds to be deposited with Escrow Agent and this Escrow Agreement.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, for themselves, their successors and assigns, hereby agree as follows:

1. <u>Definitions</u>. The following terms shall have the following meanings when used herein:

"Business Day" means any day other than (i) a Saturday or a Sunday or (ii) a day on which banking and savings and loan institutions are authorized or required by applicable law to be closed in New York City, Panama and California.

"Claim Notice" shall have the meaning set forth in Section 6(a).

"Escrow Funds" shall mean the funds deposited with Escrow Agent pursuant to Section 3 of this Agreement, together with any interest and other income thereon.

"Escrow Period" shall mean the period commencing on the date hereof and ending at the consummation of the transactions contemplated by the Underlying Agreement (the "Closing"), which is expected to occur on or before December 15th, 2015, unless otherwise agreed in writing by Seller and Purchaser or (ii) termination of the Underlying Agreement, unless earlier terminated pursuant to this Escrow Agreement.

"Indemnity Claim" shall have the meaning set forth in Section 6(a).

"Indemnified Party" shall have the meaning set forth in Section 11.

"Joint Written Direction" shall mean a written direction executed by the Representatives and directing Escrow Agent to disburse all or a portion of the Escrow Funds or to take or refrain from taking any other action pursuant to this Escrow Agreement.

"Purchaser Representative" shall mean the person(s) so designated on Schedule C hereto or any other person designated in a writing signed by Purchaser and delivered to Escrow Agent and the Seller Representative in accordance with the notice provisions of this Escrow Agreement, to act as its representative under this Escrow Agreement.

1

10.10.13

CONFIDENTIAL                                                      CAPITAL0001787

"Representatives" shall mean the Purchaser Representative and the Seller Representative.

"Seller Representative" shall mean the person(s) so designated on Schedule C hereto or any other person designated in a writing signed by Seller and delivered to Escrow Agent and the Purchaser Representative in accordance with the notice provisions of this Escrow Agreement, to act as its representative under this Escrow Agreement.

2.      **Appointment of and Acceptance by Escrow Agent.**  Purchaser and Seller hereby appoint Escrow Agent to serve as escrow agent hereunder. Escrow Agent hereby accepts such appointment and, upon receipt by wire transfer of the Escrow Funds in accordance with Section 3 below, agrees to hold, invest and disburse the Escrow Funds in accordance with this Escrow Agreement.

3.      **Deposit of Escrow Funds.**  Purchaser will transfer total Escrow Funds in the amount of US$14,100,000.00 (FOURTEEN MILLION ONE HUNDRED THOUSAND UNITED STATES DOLLARS), which correspond to 10% of the Purchase Price of the Aircrafts, being US$4,700,000.00 (FOUR MILLION SEVEN HUNDRED THOUSAND UNITED STATES DOLLARS) per Aircraft, by wire transfer of immediately available funds, to an account designated by Escrow Agent, which shall occur in three (3) installments as follows:

> a.  US$1,500,000.00 (ONE MILLION FIVE HUNDRED THOUSAND UNITED STATES DOLLARS) simultaneously with the execution and delivery of this Escrow Agreement, out of which US$400,000.00 (FOUR HUNDRED THOUSAND UNITED STATES DOLLARS) will be transferred by Seller given that Purchaser had already made a deposit into Seller's bank account as good faith consideration for the entering of Seller into the Underlying Agreement.
>
> b.  US$7,050,000.00 (SEVEN MILLION FIFTY THOUSAND UNITED STATES DOLLARS) within twenty (20) business days from October 14th, 2015.
>
> c.  US$5,550,000.00 (FIVE MILLION FIVE HUNDRED FIFTY THOUSAND UNITED STATES DOLLARS) within twenty-five (25) business days from October 14th, 2015.

4.      **Disbursements of Escrow Funds.**  Escrow Agent shall hold the Escrow Funds in its possession until instructed hereunder to deliver the Escrow Funds or any specified portion thereof in accordance with the provisions of this Section 4. Pursuant to the Underlying Agreement, the Escrow Funds shall become non-refundable to the Purchaser upon (i) Buyer's signature of the technical acceptance certificate for the Aircraft, (ii) Buyer's approval of official delivery date, and (iii) Buyer's signature of an acceptable Sale and Purchase Agreement. Escrow Agent shall disburse Escrow Funds or any specified portion thereof in a per Aircraft basis at any time and from time to time, upon receipt of, and in accordance with, a Joint Written Direction. Such Joint Written Direction shall contain complete payment instructions, including wiring instructions or an address to which a check shall be sent. Upon the expiration of the Escrow Period and receipt by Escrow Agent from Seller of complete payment instructions in writing, Escrow Agent shall distribute to Seller, as promptly as practicable, any remaining Escrow Funds not subject to a Claim Notice. Prior to any disbursement, Escrow Agent shall have received reasonable identifying information regarding the recipient such that Escrow Agent may comply with its regulatory obligations and reasonable business practices, including without limitation a completed United States Internal Revenue Service ("IRS") Form W-9 or original IRS Form W-8, as applicable. All disbursements of funds from the Escrow Funds shall be subject to the fees and claims of Escrow Agent and the Indemnified Parties pursuant to Section 11 and Section 12 below.

5.      **Suspension of Performance; Disbursement into Court.**  If, at any time, (i) there shall exist any dispute between Purchaser, Seller or the Representatives with respect to the holding or disposition of all or any portion of the Escrow Funds or any other obligations of Escrow Agent hereunder, (ii) Escrow Agent is unable to determine, to Escrow Agent's sole satisfaction, the proper disposition of all or any portion of the Escrow Funds or Escrow Agent's proper actions with respect to its obligations hereunder, or (iii) the Representatives have not, within 10 calendar days of the furnishing by Escrow Agent of a notice of resignation pursuant to Section 8 hereof, appointed a successor Escrow Agent to act hereunder, then Escrow Agent may, in its sole discretion, take either or both of the following actions:

> a.  suspend the performance of any of its obligations (including without limitation any disbursement obligations) under this Escrow Agreement until such dispute or uncertainty shall be resolved to the sole satisfaction of Escrow Agent or until a successor Escrow Agent shall have been appointed.

2

10.10.13

CONFIDENTIAL

CAPITAL0001788

b.      petition (by means of an interpleader action or any other appropriate method) any court of competent jurisdiction, in any venue convenient to Escrow Agent, for instructions with respect to such dispute or uncertainty, and to the extent required or permitted by law, pay into such court, for holding and disposition in accordance with the instructions of such court, all Escrow Funds, after deduction and payment to Escrow Agent of all fees and expenses (including court costs and attorneys' fees) payable to, incurred by, or expected to be incurred by Escrow Agent in connection with the performance of its duties and the exercise of its rights hereunder.

Escrow Agent shall have no liability to Purchaser, Seller or the Representatives, their respective owners, shareholders or members or any other person with respect to any such suspension of performance or disbursement into court, specifically including any liability or claimed liability that may arise, or be alleged to have arisen, out of or as a result of any delay in the disbursement of the Escrow Funds or any delay in or with respect to any other action required or requested of Escrow Agent.

6.      **Resolutions & Disbursement of Claims.** If during the Escrow Period Purchaser elects to make a claim for indemnity against the Seller, then the procedures for administering and resolving such claims shall be as follows:

(a)      If the Purchaser elects to assert a claim for indemnity (an "Indemnity Claim"), it must (i) give written notice of such claim (a "Claim Notice") to the Escrow Agent and the Seller prior to the expiration of the Escrow Period. Such Claim Notice shall include a reasonably detailed description of the claim and the basis therefor and the amount, if known, asserted by Purchaser for such claim (including, if appropriate, an estimate of all costs and expenses reasonably expected to be incurred by Purchaser by reason of such claim). Within thirty (30) calendar days after the date upon which such Claim Notice is delivered to the Escrow Agent (the " Claim Notice Delivery Date"), the Seller may advise Purchaser and the Escrow Agent in writing whether the Seller objects to some or all of the Indemnity Claim described in the Claim Notice.

(b)      Escrow Agent shall pay an Indemnity Claim to Purchaser in the amount of the Claim Notice (i) if the Escrow Agent has not received from the Seller a response to the Claim Notice within thirty (30) calendar days after the Claim Notice Delivery Date and the Purchaser has provided a written statement to the Escrow Agent stating that Purchaser has delivered the Claim Notice to the Seller in accordance with the notice provisions as defined herein, and that the Seller has failed to object to the Indemnity Claim; or (ii) pursuant to a Joint Written Direction.

(c)      If, within thirty (30) calendar days after the Claim Notice Delivery Date, the Escrow Agent receives from the Seller a written objection (a "Claim Response") to any or all (the "Contested Amount") of the Claim Notice amount, Escrow Agent shall release to the Purchaser all of the Claim Notice amount except for the Contested Amount. Thereafter, Escrow Agent shall release the Contested Amount only pursuant to (i) a Joint Written Direction or (ii) the order, judgment or decree of any court or the award of an arbitrator chosen by Purchaser and Seller.

(d)      Escrow Agent shall have no responsibility to determine the validity or sufficiency of any Claim Notice or Claim Response or whether any Claim Notice or Claim Response has been received by, or to provide a copy of any Claim Notice or Claim Response to, any of Purchaser, Seller or their respective Representatives.

7.      **Investment of Funds.** Based upon Purchaser's and Seller's prior review of investment alternatives, in the absence of further specific written direction to the contrary, the Escrow Agent is directed to initially invest and reinvest the Escrow Funds in the investment indicated on Schedule B hereto. The Seller may provide written instructions changing the investment of the Escrow Funds to the Escrow Agent; provided, however, that no investment or reinvestment may be made except in the following: (a) direct obligations of the United States of America or obligations the principal of and the interest on which are unconditionally guaranteed by the United State of America; (b) U.S. dollar denominated deposit accounts and certificates of deposits issued by any bank, bank and trust company, or national banking association (including Escrow Agent and its affiliates), which such deposits are either (i) insured by the Federal Deposit Insurance Corporation or a similar governmental agency, or (ii) with domestic commercial banks which have a rating on their short- term certificates of deposit on the date of purchase of "A-1" or "A-1+" by S&P or "P-1" by Moody's and maturing no more than 360 days after the date of purchase (ratings on holding companies are not considered as the rating of the bank); (c) repurchase agreements with any

3

10.10.13

CONFIDENTIAL                                                                                            CAPITAL0001789

bank, trust company, or national banking association (including Escrow Agent and its affiliates); or (d) institutional money market funds, including funds managed by Escrow Agent or any of its affiliates; provided that the Escrow Agent will not be directed to invest in investments that the Escrow Agent in its sole discretion determines are not consistent with the Escrow Agent's policy or practices. Purchaser and Seller acknowledge that the Escrow Agent does not have a duty nor will it undertake any duty to provide investment advice.

If Escrow Agent has not received a written instruction from Seller at any time that an investment decision must be made, Escrow Agent is directed to invest the Escrow Funds, or such portion thereof as to which no written investment instruction has been received, in the investment indicated on Schedule B hereto. All investments shall be made in the name of Escrow Agent. Notwithstanding anything to the contrary contained herein, Escrow Agent may, without notice to Purchaser and Seller, sell or liquidate any of the foregoing investments at any time for any disbursement of Escrow Funds permitted or required hereunder. All investment earnings shall become part of the Escrow Funds and investment losses shall be charged against the Escrow Funds. Escrow Agent shall not be liable or responsible for loss in the value of any investment made pursuant to this Escrow Agreement, or for any loss, cost or penalty resulting from any sale or liquidation of the Escrow Funds. With respect to any Escrow Funds received by Escrow Agent after twelve o'clock, p.m., Central Standard Time, Escrow Agent shall not be required to invest such funds or to effect any investment instruction until the next day upon which banks in St. Paul, Minnesota and the New York Stock Exchange are open for business.

8.      Resignation or Removal of Escrow Agent. Escrow Agent may resign and be discharged from the performance of its duties hereunder at any time by giving thirty (30) days prior written notice to Purchaser and Seller specifying a date when such resignation shall take effect. Similarly, Purchaser and Seller may remove and discharge Escrow Agent from the performance of its duties hereunder at any time by jointly giving thirty (30) days prior written notice to the Escrow Agent specifying a date when such removal shall take effect. Upon any such notice of resignation or removal, Purchaser and Seller jointly shall appoint a successor escrow agent hereunder prior to the effective date of such resignation or removal. If the Purchaser and Seller fail to appoint a successor escrow agent within such time, the Escrow Agent shall have the right to petition a court of competent jurisdiction to appoint a successor escrow agent, and all costs and expenses (including without limitation attorneys' fees) related to such petition shall be paid jointly and severally by Purchaser and Seller. The Escrow Agent shall transmit all records pertaining to the Escrow Funds and shall pay all Escrow Funds to the successor escrow agent, after making copies of such records as the Escrow Agent deems advisable and after deduction and payment to the Escrow Agent of all fees and expenses (including court costs and attorneys' fees) payable to, incurred by, or expected to be incurred by the Escrow Agent in connection with the performance of its duties and the exercise of its rights hereunder. After the Escrow Agent's resignation or removal, the provisions of this Escrow Agreement shall inure to its benefit as to any actions taken or omitted to be taken by it while it was Escrow Agent under this Escrow Agreement.

9.      Binding Effect; Successors. This Escrow Agreement shall be binding upon the respective parties hereto and their heirs, executors, successors or assigns. If the Escrow Agent consolidates, merges or converts into, or transfers all or substantially all of its corporate trust business (including the escrow contemplated by this Escrow Agreement) to another corporation, the successor or transferee corporation without any further act shall be the successor Escrow Agent.

10.     Liability of Escrow Agent. The Escrow Agent undertakes to perform only such duties as are expressly set forth herein and no duties shall be implied. The Escrow Agent has no fiduciary or discretionary duties of any kind. The Escrow Agent shall have no liability under and no duty to inquire as to the provisions of any agreement other than this Escrow Agreement, including without limitation any other agreement between any or all of the parties hereto or any other persons even though reference thereto may be made herein. The Escrow Agent shall not be liable for any action taken or omitted by it in good faith except to the extent that a court of competent jurisdiction determines that the Escrow Agent's gross negligence or willful misconduct was the sole cause of any loss to the Purchaser or Seller. Escrow Agent's sole responsibility shall be for the safekeeping and disbursement of the Escrow Funds in accordance with the terms of this Escrow Agreement. Escrow Agent shall not be charged with knowledge or notice of any fact or circumstance not specifically set forth herein. Escrow Agent may rely upon any notice, instruction, request or other instrument, not only as to its due execution, validity and effectiveness, but also as to the truth and accuracy of any information contained therein, which Escrow Agent shall believe to be genuine and to have been signed or presented by the person or parties purporting to sign the same. In no event shall Escrow Agent be liable for incidental, indirect, special, consequential or punitive damages or penalties (including, but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such damages or penalty and

4

10.10.13

1

CONFIDENTIAL                                                      CAPITAL0001790

regardless of the form of action. Escrow Agent shall not be responsible for delays or failures in performance resulting from acts beyond its control, including without limitation acts of God, strikes, lockouts, riots, acts of war or terror, epidemics, governmental regulations, fire, communication line failures, computer viruses, power failures, earthquakes or other disasters. Escrow Agent shall not be obligated to take any legal action or commence any proceeding in connection with the Escrow Funds, any account in which Escrow Funds are deposited, this Escrow Agreement or the Underlying Agreement, or to appear in, prosecute or defend any such legal action or proceeding. Escrow Agent may consult legal counsel selected by it in the event of any dispute or question as to the construction of any of the provisions hereof or of any other agreement or of its duties hereunder, or relating to any dispute involving any party hereto, and shall incur no liability and shall be fully indemnified from any liability whatsoever in acting in accordance with the advice of such counsel. Purchaser and Seller, jointly and severally, shall promptly pay, upon demand, the reasonable fees and expenses of any such counsel. Purchaser and Seller agree to perform or procure the performance of all further acts and things, and execute and deliver further documents, as may be required by law or as Escrow Agent may reasonably request in connection with its duties hereunder.

The Escrow Agent is authorized, in its sole discretion, to comply with final orders issued or process entered by any court with respect to the Escrow Funds, without determination by the Escrow Agent of such court's jurisdiction in the matter. If any portion of the Escrow Funds is at any time attached, garnished or levied upon under any court order, or in case the payment, assignment, transfer, conveyance or delivery of any such property shall be stayed or enjoined by any court order, or in case any order, judgment or decree shall be made or entered by any court affecting such property or any part thereof, then and in any such event, the Escrow Agent is authorized, in its sole discretion, to rely upon and comply with any such order, writ, judgment or decree which it is advised by legal counsel selected by it is binding upon it without the need for appeal or other action; and if the Escrow Agent complies with any such order, writ, judgment or decree, it shall not be liable to any of the parties hereto or to any other person or entity by reason of such compliance even though such order, writ, judgment or decree may be subsequently reversed, modified, annulled, set aside or vacated.

11.    Indemnification of Escrow Agent. From and at all times after the date of this Escrow Agreement, Purchaser and Seller, jointly and severally, shall, to the fullest extent permitted by law, indemnify and hold harmless Escrow Agent and each director, officer, employee, attorney, agent and affiliate of Escrow Agent (collectively, the "Indemnified Parties") against any and all actions, claims (whether or not valid), losses, damages, liabilities, penalties, costs and expenses of any kind or nature (including without limitation reasonable attorneys' fees, costs and expenses) incurred by or asserted against any of the Indemnified Parties, whether direct, indirect or consequential, as a result of or arising from or in any way relating to any claim, demand, suit, action or proceeding (including any inquiry or investigation) by any person, including without limitation Purchaser, Seller and the Representatives, whether threatened or initiated, asserting a claim for any legal or equitable remedy against any person under any statute or regulation, including, but not limited to, any federal or state securities laws, or under any common law or equitable cause or otherwise, arising from or in connection with the negotiation, preparation, execution, performance or failure of performance in connection with this Escrow Agreement or any transactions contemplated herein, whether or not any such Indemnified Party is a party to any such action, proceeding, suit or the target of any such inquiry or investigation; provided, however, that no Indemnified Party shall have the right to be indemnified hereunder for any liability finally determined by a court of competent jurisdiction, subject to no further appeal, to have resulted solely from the gross negligence or willful misconduct of such Indemnified Party. Purchaser and Seller further agree, jointly and severally, to indemnify each Indemnified Party for all costs, including without limitation reasonable attorney's fees, incurred by such Indemnified Party in connection with the enforcement of Purchaser's and Seller's indemnification obligations hereunder. Each Indemnified Party shall, in its sole discretion, have the right to select and employ separate counsel with respect to any action or claim brought or asserted against it, and the reasonable fees of such counsel shall be paid upon demand by the Purchaser and Seller jointly and severally. The obligations of Purchaser and Seller under this Section 11 shall survive any termination of this Escrow Agreement and the resignation or removal of Escrow Agent.

The parties agree that neither the payment by Purchaser or Seller of any claim by Escrow Agent for indemnification hereunder nor the disbursement of any amounts to Escrow Agent from the Escrow Funds in respect of a claim by Escrow Agent for indemnification shall impair, limit, modify, or affect, as between Purchaser and Seller, the respective rights and obligations of Purchaser and Seller under the Underlying Agreement.

12.    Compensation of Escrow Agent

5

10.10.13

(a)    Fees and Expenses.  Purchaser and Seller agree, jointly and severally, to compensate Escrow Agent on demand for its services hereunder in accordance with Schedule A attached hereto.  Without limiting the joint and several nature of their obligations to Escrow Agent, the Purchaser and Seller agree between themselves that Purchaser will be wholly responsible for Escrow Agent's compensation.  The obligations of Purchaser and Seller under this Section 12 shall survive any termination of this Escrow Agreement and the resignation or removal of Escrow Agent.

(b)    Disbursements from Escrow Funds to Pay Escrow Agent.  Escrow Agent is authorized to, and may disburse to itself from the Escrow Funds, from time to time, the amount of any compensation and reimbursement of out-of-pocket expenses due and payable hereunder (including any amount to which Escrow Agent or any Indemnified Party is entitled to seek indemnification hereunder).  Escrow Agent shall notify Purchaser and Seller of any disbursement from the Escrow Funds to itself or any Indemnified Party in respect of any compensation or reimbursement hereunder and shall furnish Purchaser and Seller copies of related invoices and other statements.

(c)    Security and Offset.  Seller, Purchaser and the Representatives hereby grant to Escrow Agent and the Indemnified Parties a security interest in, lien upon and right of offset against the Escrow Funds with respect to any compensation or reimbursement due any of them hereunder (including any claim for indemnification hereunder).  If for any reason the Escrow Funds are insufficient to cover such compensation and reimbursement, Purchaser and Seller shall promptly pay such amounts to Escrow Agent or any Indemnified Party upon receipt of an itemized invoice.

13.    Representations and Warranties.  Purchaser and Seller each respectively make the following representations and warranties to Escrow Agent:

(a)    it has full power and authority to execute and deliver this Escrow Agreement and to perform its obligations hereunder; and this Escrow Agreement has been duly approved by all necessary action and constitutes its valid and binding agreement enforceable in accordance with its terms; and

(b)    each of the applicable persons designated on Schedule C attached hereto have been duly appointed to act as authorized representatives hereunder and individually have full power and authority to execute and deliver any Joint Written Direction, to amend, modify or waive any provision of this Escrow Agreement and to take any and all other actions as authorized representatives under this Escrow Agreement, all without further consent or direction from, or notice to, it or any other party, provided that any change in designation of such authorized representatives shall be provided by written notice delivered to each party to this Escrow Agreement.

14.    Identifying Information.  To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.  For a non-individual person such as a business entity, a charity, a trust, or other legal entity, the Escrow Agent requires documentation to verify its formation and existence as a legal entity.  The Escrow Agent may ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.  The parties acknowledge that a portion of the identifying information set forth herein is being requested by the Escrow Agent in connection with the USA Patriot Act, Pub.L.107-56 (the "Act"), and each agrees to provide any additional information requested by the Escrow Agent in connection with the Act or any other legislation or regulation to which Escrow Agent is subject, in a timely manner.

15.    Consent to Jurisdiction and Venue.  In the event that any party hereto commences a lawsuit or other proceeding relating to or arising from this Escrow Agreement, the parties hereto agree to the personal jurisdiction by and venue in the state and federal courts in a) the Supreme Court of the State of New York, New York County, and (b) the United States District Court for the Southern District of New York, and waive any objection to such jurisdiction or venue. The parties hereto consent to and agree to submit to the jurisdiction of any of the courts specified herein and agree to accept service of process to vest personal jurisdiction over them in any of these courts.

16.    Notices.  All notices, approvals, consents, requests, and other communications hereunder shall be in writing and shall be delivered (i) by personal delivery, or (ii) by national overnight courier service, or (iii) by certified or registered mail, return receipt requested, or (iv) via facsimile transmission, with confirmed receipt or (v)

6

10.10.13

CONFIDENTIAL

CAPITAL0001792

To: 17603250433   From: 19736223073   Date: 03/30/16   Time: 12:50 PM Page: 30
MAR-30-2016  Case 2:18-cv-02583-SMM   Document 198-20   Filed 12/20/18   Page 31 of 53  Page:30/52
Case 1:16-cv-02268-WHP   Document 1-2   Filed 03/28/16   Page 8 of 15

via email by way of a PDF attachment thereto of an executed document. Notice shall be effective upon receipt except for notice via email, which shall be effective only when the recipient, by return email or notice delivered by other method provided for in this Section 16, acknowledges having received that email (with an automatic "read receipt" or similar notice not constituting an acknowledgement of an email receipt for purposes of this Section 16.) Such notices shall be sent to the applicable party or parties at the address specified below:

If to Purchaser or Purchaser Representative at:

           LLFC Corporation
           870 E Research Drive, Suite 2
           Palm Springs, California 92262
           Telephone: 760.325.0067
           Facsimile: 760.325.0433
           E-mail: markeddington@laserlinelease.com

If to Seller or Seller Representative at:

           Synergy Aerospace Corp.
           Av. Calle 26 N° 59 – 15 Piso 9
           Edificio Avianca – Bogota, Colombia
           Telephone: + 57 (1) 744-5454
           Facsimile:
           E-mail: mike.welch@synergygroupcorp.com

If to the Escrow Agent at:

           U.S. Bank National Association, as Escrow Agent
           ATTN: Global Corporate Trust Services
           Address: 100 Wall Street, 16th Fl.
           New York, NY 10005
           Attn: Christopher J. Grell
           Telephone:    212-951-6990
           Facsimile:     212-361-6153
           E-mail:        christopher.grell@usbank.com

           and to:

           U.S. Bank National Association
           ATTN:       Amy Gutz
                       Trust Finance Management
                       60 Livingston Avenue
                       EP-MN-WS3T
                       St. Paul, MN 55107
           Telephone:    651-466-6091
           Facsimile:     651-312-2599
           E-mail:        amy.gutz@usbank.com

or to such other address as each party may designate for itself by like notice and unless otherwise provided herein shall be deemed to have been given on the date received.

    17.    Optional Security Procedures. In the event funds transfer instructions, address changes or change in contact information are given (other than in writing at the time of execution of this Escrow Agreement), whether in writing, by facsimile or otherwise, the Escrow Agent is authorized but shall be under no duty to seek confirmation of such instructions by telephone call-back to the person or persons designated on Schedule C hereto, and the Escrow Agent may rely upon the confirmation of anyone purporting to be the person or persons so designated. The persons and telephone numbers for call-backs may be changed only in writing actually received and acknowledged by Escrow Agent and shall be effective only after Escrow Agent has a reasonable opportunity to act on such changes. If the Escrow Agent is unable to contact any of the designated representatives identified in Schedule C, the Escrow Agent is hereby authorized but shall be under no duty to seek confirmation of such instructions by telephone call-back to any one or more of Purchaser or Seller's executive officers ("Executive Officers"), as the case may be,

7

10.10.13

CONFIDENTIAL

To: 17603250433   From: 19736223073   Date: 03/30/16   Time: 12:50 PM Page: 31
MAR-30-2016  Case 2:18-cv-02583-SMM   Document 198-20   Filed 12/20/18  Page 32 of 53  Page:31/52
Case 1:16-cv-02268-WHP   Document 1-2   Filed 03/28/16   Page 9 of 15

which shall include the titles of Chief Executive Officer, President and Vice President, as the Escrow Agent may select. Such Executive Officer shall deliver to the Escrow Agent a fully executed incumbency certificate, and the Escrow Agent may rely upon the confirmation of anyone purporting to be any such officer. Purchaser and Seller agree that the Escrow Agent may at its option record any telephone calls made pursuant to this Section. The Escrow Agent in any funds transfer may rely solely upon any account numbers or similar identifying numbers provided by Purchaser or Seller s to identify (a) the beneficiary, (b) the beneficiary's bank, or (c) an intermediary bank. The Escrow Agent may apply any of the Escrow Funds for any payment order it executes using any such identifying number, even when its use may result in a person other than the beneficiary being paid, or the transfer of funds to a bank other than the beneficiary's bank or an intermediary bank designated. Purchaser and Seller acknowledge that these optional security procedures are commercially reasonable.

18.     Amendment, Waiver and Assignment. None of the terms or conditions of this Escrow Agreement may be changed, waived, modified, discharged, terminated or varied in any manner whatsoever unless in writing duly signed by each party to this Escrow Agreement. No course of conduct shall constitute a waiver of any of the terms and conditions of this Escrow Agreement, unless such waiver is specified in writing, and then only to the extent so specified. A waiver of any of the terms and conditions of this Escrow Agreement on one occasion shall not constitute a waiver of the other terms of this Escrow Agreement, or of such terms and conditions on any other occasion. Except as provided in Section 9 hereof, this Escrow Agreement may not be assigned by any party without the written consent of the other parties.

19.     Severability. To the extent any provision of this Escrow Agreement is prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision of the remaining provisions of this Escrow Agreement.

20.     Governing Law. This Escrow Agreement shall be construed and interpreted in accordance with the internal laws of the State of New York without giving effect to the conflict of laws principles thereof.

21.     Entire Agreement; No Third Party Beneficiaries. This Escrow Agreement constitutes the entire agreement between the parties relating to the holding, investment and disbursement of the Escrow Funds and sets forth in their entirety the obligations and duties of Escrow Agent with respect to the Escrow Funds. Nothing in this Escrow Agreement, express or implied, is intended to or shall confer upon any other person any right, benefit or remedy of any nature whatsoever under or by reason of this Escrow Agreement.

22.     Execution in Counterparts, Facsimiles. This Escrow Agreement and any Joint Written Direction may be executed in two or more counterparts, which when so executed shall constitute one and the same agreement or direction. The delivery of copies of this Escrow Agreement and any Joint Written Instruction and their respective signature pages by PDF or facsimile transmission shall constitute effective execution and delivery as to the parties and may be used in lieu of originals for all purposes.

23.     Termination. This Escrow Agreement shall terminate upon the distribution of all the Escrow Funds pursuant to any applicable provision of this Escrow Agreement, and Escrow Agent shall thereafter have no further obligation or liability whatsoever with respect to this Escrow Agreement or the Escrow Funds.

24.     Dealings. The Escrow Agent and any stockholder, director, officer or employee of the Escrow Agent may buy, sell, and deal in any of the securities of the Purchaser or Seller and become pecuniarily interested in any transaction in which the Purchaser or Seller may be interested, and contract and lend money to the Purchaser or Seller and otherwise act as fully and freely as though it were not Escrow Agent under this Agreement. Nothing herein shall preclude the Escrow Agent from acting in any other capacity for the Purchaser or Seller or for any other entity.

25.     Brokerage Confirmation Waiver. Purchaser and Seller acknowledge that to the extent regulations of the Comptroller of the Currency or other applicable regulatory entity grant either the right to receive brokerage confirmations for certain security transactions as they occur, Purchaser and Seller specifically waive receipt of such confirmations to the extent permitted by law. The Escrow Agent will furnish the Purchaser and Seller periodic cash transaction statements that include detail for all investment transactions made by the Escrow Agent.

8

10.10.13

1

CONFIDENTIAL                                                          CAPITAL0001794

To: 17603250433  From: 19736223073  Date: 03/30/16  Time: 12:50 PM Page: 32
MAR-30-2016  Case 2:18-cv-02583-SMM  Document 198-20  Filed 12/29/18  Page 33 of 53 Page: 32/52
Case 1:16-cv-02268-WHP  Document 1-2  Filed 03/28/16  Page 10 of 15

26.    Tax Reporting.    Escrow Agent shall have no responsibility for the tax consequences of this Agreement and Purchaser and Seller shall consult with independent counsel concerning any and all tax matters. Purchaser and Seller shall provide Escrow Agent Form W-9 and an original Form W-8, as applicable, for each payee, together with any other documentation and information requested by Escrow Agent in connection with Escrow Agent's reporting obligations under applicable IRS regulations. If such tax documentation is not so provided, Escrow Agent shall withhold taxes as required by the IRS. Seller and Purchaser have determined that any interest or income on Escrow Funds shall be reported on an accrual basis and deemed to be for the account of Seller. Purchaser and Seller shall prepare and file all required tax filings with the IRS and any other applicable taxing authority; provided that the parties further agree that:

    (a)    Escrow Agent IRS Reporting.  Purchaser shall provide the Escrow Agent with all information requested by the Escrow Agent in connection with the preparation of all applicable Form 1099 and Form 1042-S documents with respect to all distributions as well as in the performance of Escrow Agent's reporting obligations under the Foreign Account Tax Compliance Act and Foreign Investment in Real Property Tax Act or other applicable law or regulation.

    (b)    Withholding Requests and Indemnification. Purchaser and Seller jointly and severally agree to (i) assume all obligations imposed now or hereafter by any applicable tax law or regulation with respect to payments or performance under this Agreement, (ii) request the Escrow Agent in writing with respect to withholding and other taxes, assessments or other governmental charges, and advise Escrow Agent in writing with respect to any certifications and governmental reporting that may be required under any applicable laws or regulations, and (iii) indemnify and hold the Escrow Agent harmless pursuant to Section 11 hereof from any liability or obligation on account of taxes, assessments, additions for late payment, interest, penalties, expenses and other governmental charges that may be assessed or asserted against Escrow Agent.

    (c)    Imputed Interest. To the extent that IRS imputed interest regulations apply, Purchaser and Seller shall so inform Escrow Agent, provide Escrow Agent with all imputed interest calculations and direct Escrow Agent to disburse imputed interest amounts as Purchaser and Seller deem appropriate. Escrow Agent shall rely solely on such provided calculations and information and shall have no responsibility for the accuracy or completeness of any such calculations or information.

27.    WAIVER OF TRIAL BY JURY.    EACH PARTY TO THIS AGREEMENT HEREBY WAIVES ANY RIGHT THAT IT MAY HAVE TO A TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (1) ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT OR (2) IN ANY WAY IN CONNECTION WITH OR PERTAINING OF RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES TO THIS AGREEMENT OR IN CONNECTION WITH THIS AGREEMENT OR THE EXERCISE OF ANY SUCH PARTY'S RIGHTS AND REMEDIES UNDER THIS AGREEMENT OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES TO THIS AGREEMENT, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER IN CONTRACT, TORT OR OTHERWISE. EACH OF THE PARTIES HERETO HEREBY FURTHER ACKNOWLEDGES AND AGREES THAT EACH HAS REVIEWED OR HAD THE OPPORTUNITY TO REVIEW THIS WAIVER WITH ITS RESPECTIVE LEGAL COUNSEL, AND THAT IT KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH SUCH LEGAL COUNSEL. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A CONSENT BY ALL PARTIES TO A TRIAL BY THE COURT.

28.    Publicity.  No party will (a) use any other party's proprietary indicia, trademarks, service marks, trade names, logos, symbols, or brand names, or (b) otherwise refer to or identify any other party in advertising, publicity releases, or promotional or marketing publications, or correspondence to third parties without, in each case, securing the prior written consent of such other party.

IN WITNESS WHEREOF, the parties hereto have caused this Escrow Agreement to be executed under seal as of the date first above written.

9

10.10.13

I

CONFIDENTIAL

**LLPC CORPORATION**

By:
Name: W-M Boddington
Title: President

**SYNERGY AEROSPACE CORP.**

By:
Name: Mariana Kesia
Title: Director

**U.S. BANK NATIONAL ASSOCIATION**
as Escrow Agent

By:
Name:
Title:

10

10.16.13

CONFIDENTIAL

CAPITAL0001796

To: 17603250433  From: 19736223073  Date: 03/30/16  Time: 12:50 PM Page: 34
MAR-30-2016  Case 2:18-cv-02583-SMM  Document 198-20  Filed 12/20/19  Page 35 of 53  Page:34/52
Case 1:16-cv-02268-WHP  Document 1-2  Filed 03/28/16  Page 12 of 15

**LLFC CORPORATION**

By: _____
Name: _____
Title: _____

**SYNERGY AEROSPACE CORP.**

By: _____
Name: _____
Title: _____

**U.S. BANK NATIONAL ASSOCIATION**
**as Escrow Agent**

By: _____
Name: Christopher J. Grell
Title: Vice President

10

10.10.13

CONFIDENTIAL

CAPITAL0001797

## SCHEDULE A

### Schedule of Fees for Services as Escrow Agent

01010 **Acceptance Fee**                                                            $8,500.00

To cover the acceptance of appointment as escrow agent, the study and consideration of the agreement, and documents related to the execution and delivery thereof, communication and coordination with the Issuer and members of the working group and establishing the account on the corporate trust records of the escrow agent. Payable at the closing.

**Out of Pocket Expenses**

Includes all related expenses, including but not limited to: postage, travel, counsel        At Cost
fees and their disbursements. Fees for services not specifically covered will be based
upon services rendered.

**Extraordinary Services**

Extraordinary fees are payable to the Agent for duties or responsibilities not expected to be incurred at the outset of the transaction, not routine or customary, and not incurred in the ordinary course of business. Payment of extraordinary fees is appropriate where particular inquiries, events or developments are unexpected, even if the possibility of such things could have been identified at the inception of the transaction. In the event that this transaction does not close, any related out-of-pocket expenses will be billed to the client, at cost.

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. For a non-individual person such as a business entity, a charity, a Trust, or other legal entity, we ask for documentation to verify its formation and existence as a legal entity. We may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.

CONFIDENTIAL                                                        CAPITAL0001798

## SCHEDULE B

### U.S. BANK NATIONAL ASSOCIATION
### MONEY MARKET ACCOUNT AUTHORIZATION FORM
### DESCRIPTION AND TERMS

The U.S. Bank Money Market account is a U.S. Bank National Association ("U.S. Bank") interest-bearing money market deposit account designed to meet the needs of U.S. Bank's Corporate Trust Services Escrow Group and other Corporate Trust customers of U.S. Bank. Selection of this investment includes authorization to place funds on deposit and invest with U.S. Bank.

U.S. Bank uses the daily balance method to calculate interest on this account (actual/365 or 366). This method applies a daily periodic rate to the principal balance in the account each day. Interest is accrued daily and credited monthly to the account. Interest rates are determined at U.S. Bank's discretion, and may be tiered by customer deposit amount.

The owner of the account is U.S. Bank as Agent for its trust customers. U.S. Bank's trust department performs all account deposits and withdrawals. Deposit accounts are FDIC Insured per depositor, as determined under FDIC Regulations, up to applicable FDIC limits.

### AUTOMATIC AUTHORIZATION

In the absence of specific written direction to the contrary, U.S. Bank is hereby directed to invest and reinvest proceeds and other available moneys in the U.S. Bank Money Market Account. The U.S. Bank Money Market Account is a permitted investment under the operative documents and this authorization is the permanent direction for investment of the moneys until notified in writing of alternate instructions.

SYNERGY AEROSPACE CORP

Signature of Authorized Directing Party

SEI # 2S1423000

Trust Account Number – includes existing
and future sub-accounts unless otherwise directed

DIRECTOR / OCT 23 2015
Title / Date

CONFIDENTIAL

CAPITAL0001799

Ticker #DDAFC5  CUSIP# 9AMMF05B2

## SCHEDULE C

Each of the following person(s) is a Purchaser Representative authorized to execute documents and direct Escrow Agent as to all matters, including fund transfers, address changes and contact information changes, on Purchaser's behalf (only one signature required):

| William Mack Eddington | | (760) 673-7704 |
| Name | Specimen signature | Telephone No. |

| Devon Cottrell | | (760) 673-7705 |
| Name | Specimen signature | Telephone No |

| | | |
| Name | Specimen signature | Telephone No |

*(Note: if only one person is identified above, please add the following language:)*
The following person not listed above is authorized for call-back confirmations:

| [ | ] |
| Name | Telephone Number |

Each of the following person(s) is a Seller Representative authorized to execute documents and direct Escrow Agent as to all matters, including fund transfers, address changes and contact information changes, on Seller's behalf (only one signature required):

| Michael Franklin Welch | | + 57 (1) 744-5454 |
| Name | Specimen signature | Telephone No |

| German Efromovich | | +57 (1) 587-7695 |
| Name | Specimen signature | Telephone No |

| José Efromovich | | + 55 (11) 3797-5003 |
| Name | Specimen signature | Telephone No |

*(Note: if only one person is identified above, please add the following language:)*
The following person not listed above is authorized for call-back confirmations:

| [ | ] |
| Name | Telephone Number |

CONFIDENTIAL

# EXHIBIT C

CONFIDENTIAL

CAPITAL0001801

To: 17603250433  From: 19736223073  Date: 03/30/16  Time: 12:50 PM Page: 39
MAR-30-2016  Case 2:18-cv-02583-SMM  Document 198-20  Filed 12/28/18  Page 40 of 53  Page:39/52
Case 1:16-cv-02268-WHP  Document 1-3  Filed 03/28/16  Page 2 of 3

 **SYNERGY AEROSPACE**

March 4, 2016

<u>BY ELECTRONIC MAIL</u> (christopher.grell@usbank.com and amy.gutz@usbank.com )

U.S. Bank National Association, as Escrow Agent
ATTN: Global Corporate Trust Services
100 Wall Street, 16th Fl.
New York, NY 10005

U.S. Bank National Association
ATTN: Amy Gutz
Trust Finance Management
60 Livingston Avenue
EP-MN-WS3T
St. Paul, MN 55107

<u>BY ELECTRONIC MAIL</u> (markeddington@laserlinelease.com and devoncottrell@laserlinelease.com)

**LLFC Corporation**
870 E Research Drive, Suite 2
Palm Springs, California 92262
Telephone: 760.325.0067
Facsimile: 760.325.0433

**Re:    ESCROW AGREEMENT (the "Escrow Agreement") dated October 23, 2015 by and among
        LLFC CORPORATION ("Purchaser"), SYNERGY AEROSPACE CORP. ("Seller"), and U.S.
        BANK NATIONAL ASSOCIATION ("Escrow Agent") - RELEASE NOTICE**

This letter is provided under the above-referenced Escrow Agreement and Underlying Agreement (capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the Escrow Agreement or the Underlying Agreement, as applicable) and serves as notification of the termination of the Underlying Agreement. The termination of the Underlying Agreement is motivated by the failure of the Purchaser to (i) make the deposit into escrow with the Escrow Agent of the installments provided for in items "a" (the "Non-Refundable Deposit") and "b" of Section 3 of the Escrow Agreement and the Deposit Section of the "Summary of Purchase Terms and Conditions" of the Underlying Agreement; and (ii) conclude the Sale Documentation on or prior to the Documentation Deadline, i.e., November 10th, 2015, pursuant to the Underlying Agreement.

This letter constitutes a notice for the disbursement to the Seller of the portion of the Escrow Funds currently held by the Escrow Agent in the amount of US$ 800,000.00 (EIGHT HUNDRED THOUSAND US DOLLARS), plus any accrued interest, which correspond to part of the Non-Refundable Deposit (the "Partial Non-Refundable Deposit"), and is being delivered pursuant to item "a" to the Deposit Section of the "Summary of Purchase Terms and Conditions" of the Underlying Agreement. As a result, the Escrow Agent is hereby directed to release and disburse the Partial Non-Refundable Deposit to the undersigned Seller immediately following Escrow Agent's receipt of this notice.

Finally, this letter also constitutes a notice of demand for immediate payment by Purchaser into Seller's account of the outstanding portion of the Non-Refundable Deposit in the amount of US$ 700,000.00 (SEVEN HUNDRED THOUSAND US DOLLARS) (the "Outstanding Non-Refundable Deposit"), together with any fees and expenses eventually deducted from the Partial Non-Refundable Deposit by the Escrow Agent.

CONFIDENTIAL

CAPITAL0001802



Please contact the undersigned at + 57 (1) 744-5454 or mike.welch@synergygroupcorp.com with any
questions with respect to the foregoing. Thank you for your prompt attention to this matter.

SYNERGY AEROSPACE CORP.

Michael Franklin Welch
Director

CAPITAL0001803

# EXHIBIT D

CONFIDENTIAL

CAPITAL0001804

close the transaction as previously agreed. We are currently finalizing arrangements to complete the 10% deposit eviously agreed.

M, <Christopher.Grell@usbank.com> wrote:

urses any funds I would like our Legal Department to review the documents. I will let you know if they have any comments or

efinition of the "Escrow Period", the termination of the Underlying Agreement marks the end of the Escrow Period.

t Upon the Expiration of the Escrow Period and receipt by Escrow Agent from Seller of complete payment instructions in writing, to Seller any remaining funds.

ice did not contain wire instructions. Those will be necessary in order for the funds to be released.

Services, New York

.com

1993

strepo@rs.com.co>
tinelease.com>
Christopher.Grell@usbank.com>, "Fernanda Lima" <fernanda.lima@synergygroupcorp.com>, Denise Marin <denise.marin@synergygroupcorp.com>, Felipe D'Acquarica
groupcorp.com>, Juan M Cabrera <jmcabrera@legroupedelta.com>, "Lance.Bondy@usbank.com" <Lance.Bondy@usbank.com>, Jeff Cottrell <legal@laserlinelease.com>,
elease.com> Mike Welch <mike.welch@synergygroupcorp.com>

elease Notice

6

CONFIDENTIAL

# EXHIBIT E

CONFIDENTIAL

CAPITAL0001806

k.com>

 at 13:53

ton@laserlinelease.com>

nise Marin <denise.marin@synergygroupcorp.com>, Devon Cottrell <devoncottrell@laserlinelease.com>, Felipe :asagrande@synergygroupcorp.com>, Fernanda Lima <fernanda.lima@synergygroupcorp.com>, Juan M Cabrera >, "Lance.Bondy@usbank.com" <Lance.Bondy@usbank.com>, Jeff Cottrell <legal@laserlinelease.com>, Mario @rs.com.co>, Michael Welch <mike.welch@synergygroupcorp.com>, <ted.cheesebrough@usbank.com>
A320s - Release Notice

ssage. No funds have been sent. US Bank is awaiting clarity on this matter. Please let me know if you have any questions.

ervices, New York

om

93

serlinelease.com>

)@rs.com.co>, Denise Marin <denise.marin@synergygroupcorp.com>, Devon Cottrell <devoncottrell@laserlinelease.com>, "Felipe D'Acquarica Casagrande" Fernanda Lima <fernanda.lima@synergygroupcorp.com>, Juan M Cabrera <jmcabrera@legroupedelta.com>, "Lance.Bondy@usbank.com" gal@laserlinelease.com>, Mike Welch <mike.welch@synergygroupcorp.com>, amy.gutz@usbank.com, ted.cheesebrough@usbank.com

Release Notice

f the letter from Synergy dated March 4th regarding the escrow account. We are in the process of reviewing the 'ith counsel, but we have certain concerns about its contents at this stage, so we kindly request that US Bank refrain :erminating the escrow until LLFC has had a chance to fully review the documents with counsel and discuss further d that although certain dates considered in the LOI (and addenda to the LOI) have passed, LLFC and Synergy have itions regarding the status of this purchase throughout the life of the escrow and LLFC always understood that the

5

CONFIDENTIAL

CAPITAL 0001807

close the transaction as previously agreed. We are currently finalizing arrangements to complete the 10% deposit previously agreed.

M, <Christopher.Grell@usbank.com> wrote:

urses any funds I would like our Legal Department to review the documents. I will let you know if they have any comments or

finition of the "Escrow Period", the termination of the Underlying Agreement marks the end of the Escrow Period.

Upon the Expiration of the Escrow Period and receipt by Escrow Agent from Seller of complete payment instructions in writing, o Seller any remaining funds.

ce did not contain wire instructions. Those will be necessary in order for the funds to be released.

Services  New York

com

993

repo@rs.com.co>
nelease.com>
ristopher.Grell@usbank.com>, "Fernanda Lima" <fernanda.lima@synergygroupcorp.com>, Denise Marin <denise.marin@synergygroupcorp.com>, Felipe D'Acquarica upcorp.com>, Juan M Cabrera <jmcabrera@legroupedella.com>, "Lance.Bondy@usbank.com" <Lance.Bondy@usbank.com>, Jeff Cottrell <legal@laserlinelease.com>, ease.com> Mike Welch <mike.welch@synergygroupcorp.com>

lease Notice

6

CONFIDENTIAL

CAPITAL0001808

# EXHIBIT F

CONFIDENTIAL

CAPITAL0001809

são confidenciais e para uso exclusivo da pessoa ou organização a que se destina. Se este não for o destinatário autorizado, qualquer retenção, ensagem é proibida e punida por lei. Se você receber errado, por favor, reenvie ao remetente e apague a mensagem imediatamente. Os anexos foram de vírus. No entanto, é da responsabilidade do destinatário garantir isso. O Synergy Group não é responsável por perdas ou danos causados pela sua

s confidential and for exclusive use of the person or organization that is intended. If this is not the authorized recipient, any retention, dissemination, ohibited and punishable by law. If you received this in error please resubmit to the sender and delete the message immediately. Annexes have been e of viruses. However, it is the responsibility of the recipient to ensure that. The Synergy Group is not responsible for loss or damage caused by their use.

ink.com>

at 09:42

@synergygroupcorp.com>

)enise Marin <denise.marin@synergygroupcorp.com>, Felipe D'Acquarica Casagrande
)upcorp.com>, Fernanda Lima <fernanda.lima@synergygroupcorp.com>, "Lance.Bondy@usbank.com"
Mario Restrepo Torres <mario.restrepo@rs.com.co>, <ted.cheesebrough@usbank.com>
- A320s - Release Notice

unsel later today. I will be in touch shortly.

Services, New York

:om

3

CONFIDENTIAL

093

groupcorp.com>

arin <denise.marin@synergygroupcorp.com>, Felipe D'Acquarica Casagrande <felipe.casagrande@synergygroupcorp.com>, Fernanda Lima
nce.Bondy@usbank.com" <Lance.Bondy@usbank.com>, Mario Restrepo Torres <mario.restrepo@rs.com.co>, <ted.cheesebrough@usbank.com>

Release Notice

I wonder if you could call me so that we can discus this situation. Your email below indicates that you are waiting for clarification on the
is required. LLFC is in default under the Escrow Agreement. I believe in this case it is clear that funds should be paid to Synergy.

: with you at your earliest convenience.

1 são confidenciais e para uso exclusivo da pessoa ou organização a que se destina. Se este não for o destinatário autorizado, qualquer retenção,
iensagem é proibida e punida por lei. Se você receber errado, por favor, reenvie ao remetente e apague a mensagem imediatamente. Os anexos foram
. de vírus. No entanto, é da responsabilidade do destinatário garantir isso. O Synergy Group não é responsável por perdas ou danos causados pela sua

is confidential and for exclusive use of the person or organization that is intended. If this is not the authorized recipient, any retention, dissemination,
ohibited and punishable by law. If you received this in error please resubmit to the sender and delete the message immediately. Annexes have been
ie of viruses. However, it is the responsibility of the recipient to ensure that. The Synergy Group is not responsible for loss or damage caused by their use.

4

CAPITAL0001811

# EXHIBIT G

CONFIDENTIAL

CAPITAL0001812

To: 17603250433   From: 19736223073    Date: 03/30/16   Time: 12:50 PM Page: 50
MAR-30-2016 Case 2:18-cv-02583-SMM    Document 98-20    Filed 12/20/18  Page 51 of 53  Page:50/52
Case 1:16-cv-02268-WHP   Document 1-7   Filed 03/28/16   Page 2 of 2

confidenciais e para uso exclusivo da pessoa ou organização a que se destina. Se este não for o destinatário autorizado, qualquer retenção, divulgação, distribuição ou cópia
a você receber errado, por favor, reenvie ao remetente e apague a mensagem imediatamente. Os anexos foram digitalizados e acredita-se que estão livres de vírus. No entanto, é
a. O Synergy Group não é responsável por perdas ou danos causados pela sua utilização.
nfidential and for exclusive use of the person or organization that is intended. If this is not the authorized recipient, any retention, dissemination, distribution or copying of this message
ived wrong, please resubmit the sender and delete the message immediately. Annexes have been scanned and it is believed that they are free of viruses. However, it is the
rgy Group is not responsible for loss or damage caused by their use.

m [mailto:Christopher.Grell@usbank.com]
março de 2016 10:00

om; amy.gutz@usbank.com; 'Mark Eddington'; 'Devon Cottrell'; 'Denise Marin'; Lance.Bondy@usbank.com
- A320s - Release Notice

irchaser and the seller, and the correspondence received by the Escrow Agent to date, the Escrow Agent will, until further notice,
ow pursuant to the terms of the Escrow Agreement. If you have any questions, please contact me at (212) 951-6990.

Services, New York

.com

4993

worougegrp.com>

s - Release Notice

to the Escrow account? I would appreciate an update. If there is a convenient time tomorrow morning please let me know and I will call

2

CONFIDENTIAL

**JS 44C/SDNY**
**REV. 2/2016**

Case 1:16-cv-02268-WHP  **CIVIL COVER SHEET**  Filed 03/28/16  Page 1 of 2

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of
pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the
Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of
initiating the civil docket sheet.

| PLAINTIFFS<br>SYNERGY AEROSPACE CORP. | DEFENDANTS<br>LLFC CORPORATION AND U.S. BANK NATIONAL ASSOCIATION |
|---|---|
| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br>Orloff, Lowenbach, Stifelman & Siegel, P.A.<br>101 Eisenhower Parkway - Suite 400<br>Roseland, New Jersey 07068 | ATTORNEYS (IF KNOWN) |

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. 1332(a)(2); Breach of Contract to purchase aircraft and breach of Escrow Agreement, breach of fiduciary duty of good faith
and fair dealing

Has this action, case, or proceeding, or one essentially the same been previously filed in SDNY at any time? No ☑Yes ☐ Judge Previously Assigned

If yes, was this case Vol. ☐ Invol. ☐ Dismissed. No ☐ Yes ☐  If yes, give date _____ & Case No. _____

IS THIS AN INTERNATIONAL ARBITRATION CASE?  No ☒  Yes ☐

*(PLACE AN [x] IN ONE BOX ONLY)*  **NATURE OF SUIT**

**TORTS**  **ACTIONS UNDER STATUTES**

| CONTRACT | PERSONAL INJURY | PERSONAL INJURY | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 INSURANCE | [ ] 310 AIRPLANE | [ ] 367 HEALTHCARE/<br>PHARMACEUTICAL PERSONAL<br>INJURY/PRODUCT LIABILITY | [ ] 625 DRUG RELATED<br>SEIZURE OF PROPERTY | [ ] 422 APPEAL<br>28 USC 158 | [ ] 375 FALSE CLAIMS<br>[ ] 376 QUI TAM |
| [ ] 120 MARINE | [ ] 315 AIRPLANE PRODUCT | [ ] 365 PERSONAL INJURY | 21 USC 881 | [ ] 423 WITHDRAWAL | [ ] 400 STATE |
| [ ] 130 MILLER ACT | LIABILITY | PRODUCT LIABILITY | [ ] 690 OTHER | 28 USC 157 | REAPPORTIONMENT |
| [ ] 140 NEGOTIABLE | [ ] 320 ASSAULT, LIBEL & | [ ] 368 ASBESTOS PERSONAL | | | [ ] 410 ANTITRUST |
| INSTRUMENT | SLANDER | INJURY PRODUCT | | | [ ] 430 BANKS & BANKING |
| [ ] 150 RECOVERY OF | [ ] 330 FEDERAL | LIABILITY | | PROPERTY RIGHTS | [ ] 450 COMMERCE |
| OVERPAYMENT &<br>ENFORCEMENT | EMPLOYERS'<br>LIABILITY | | | | [ ] 460 DEPORTATION |
| OF JUDGMENT | [ ] 340 MARINE | PERSONAL PROPERTY | | [ ] 820 COPYRIGHTS | [ ] 470 RACKETEER INFLU- |
| [ ] 151 MEDICARE ACT | [ ] 345 MARINE PRODUCT | | | [ ] 830 PATENT | ENCED & CORRUPT |
| [ ] 152 RECOVERY OF | LIABILITY | [ ] 370 OTHER FRAUD | | [ ] 840 TRADEMARK | ORGANIZATION ACT |
| DEFAULTED | [ ] 350 MOTOR VEHICLE | [ ] 371 TRUTH IN LENDING | | | (RICO) |
| STUDENT LOANS | [ ] 355 MOTOR VEHICLE | | | | [ ] 480 CONSUMER CREDIT |
| (EXCL VETERANS) | PRODUCT LIABILITY | | | SOCIAL SECURITY | [ ] 490 CABLE/SATELLITE TV |
| [ ] 153 RECOVERY OF | [ ] 360 OTHER PERSONAL | | | | |
| OVERPAYMENT | INJURY | [ ] 380 OTHER PERSONAL | LABOR | [ ] 861 HIA (1395ff) | [ ] 850 SECURITIES/ |
| OF VETERAN'S | [ ] 362 PERSONAL INJURY - | PROPERTY DAMAGE | | [ ] 862 BLACK LUNG (923) | COMMODITIES/ |
| BENEFITS | MED MALPRACTICE | [ ] 385 PROPERTY DAMAGE | [ ] 710 FAIR LABOR | [ ] 863 DIWC/DIWW (405(g)) | EXCHANGE |
| [ ] 160 STOCKHOLDERS<br>SUITS | | PRODUCT LIABILITY | STANDARDS ACT<br>[ ] 720 LABOR/MGMT | [ ] 864 SSID TITLE XVI<br>[ ] 865 RSI (405(g)) | |
| [x] 190 OTHER | | PRISONER PETITIONS | RELATIONS | | [ ] 890 OTHER STATUTORY |
| CONTRACT | | [ ] 463 ALIEN DETAINEE | [ ] 740 RAILWAY LABOR ACT | | ACTIONS |
| [ ] 195 CONTRACT | | [ ] 510 MOTIONS TO | [ ] 751 FAMILY MEDICAL | FEDERAL TAX SUITS | [ ] 891 AGRICULTURAL ACTS |
| PRODUCT | ACTIONS UNDER STATUTES | VACATE SENTENCE | LEAVE ACT (FMLA) | | |
| LIABILITY | | 28 USC 2255 | | [ ] 870 TAXES (U.S. Plaintiff or | |
| [ ] 196 FRANCHISE | CIVIL RIGHTS | [ ] 530 HABEAS CORPUS | [ ] 790 OTHER LABOR | Defendant) | [ ] 893 ENVIRONMENTAL |
| | | [ ] 535 DEATH PENALTY | LITIGATION | [ ] 871 IRS-THIRD PARTY | MATTERS |
| | [ ] 440 OTHER CIVIL RIGHTS | [ ] 540 MANDAMUS & OTHER | [ ] 791 EMPL RET INC | 26 USC 7609 | [ ] 895 FREEDOM OF |
| **REAL PROPERTY** | (Non-Prisoner) | | SECURITY ACT (ERISA) | | INFORMATION ACT |
| | [ ] 441 VOTING | | IMMIGRATION | | [ ] 896 ARBITRATION |
| [ ] 210 LAND | [ ] 442 EMPLOYMENT | PRISONER CIVIL RIGHTS | | | [ ] 899 ADMINISTRATIVE |
| CONDEMNATION | [ ] 443 HOUSING/ | | [ ] 462 NATURALIZATION | | PROCEDURE ACT/REVIEW OR |
| [ ] 220 FORECLOSURE | ACCOMMODATIONS | [ ] 550 CIVIL RIGHTS | APPLICATION | | APPEAL OF AGENCY DECISION |
| [ ] 230 RENT LEASE & | [ ] 445 AMERICANS WITH | [ ] 555 PRISON CONDITION | [ ] 465 OTHER IMMIGRATION | | |
| EJECTMENT | DISABILITIES - | [ ] 560 CIVIL DETAINEE | ACTIONS | | [ ] 950 CONSTITUTIONALITY OF |
| [ ] 240 TORTS TO LAND | EMPLOYMENT | CONDITIONS OF CONFINEMENT | | | STATE STATUTES |
| [ ] 245 TORT PRODUCT | [ ] 446 AMERICANS WITH | | | | |
| LIABILITY | DISABILITIES -OTHER | | | | |
| [ ] 290 ALL OTHER<br>REAL PROPERTY | [ ] 448 EDUCATION | | | | |

Check if demanded in complaint:

☐ CHECK IF THIS IS A CLASS ACTION
   UNDER F.R.C.P. 23

DEMAND $800,000+  OTHER injunction

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.?
IF SO, STATE:

JUDGE _____  DOCKET NUMBER _____

Check YES only if demanded in complaint
JURY DEMAND: ☐ YES ☒ NO

NOTE: You must also submit at the time of filing the Statement of Relatedness form (Form IH-32).

CONFIDENTIAL  CAPITAL0001814

*(PLACE AN x IN ONE BOX ONLY)*       **ORIGIN**

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from (Specify District)    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge Judgment

     a. all parties represented

     ☐ b. At least one party is pro se.

*(PLACE AN x IN ONE BOX ONLY)*      **BASIS OF JURISDICTION**      *IF DIVERSITY, INDICATE CITIZENSHIP BELOW.*

☐ 1 U.S. PLAINTIFF    ☐ 2 U.S. DEFENDANT    ☐ 3 FEDERAL QUESTION (U.S. NOT A PARTY)    ☒ 4 DIVERSITY

CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

|  | PTF | DEF |  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [x] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [x] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)
Synergy Aerospace Corp.
AV. Calle 26 N° 59-15 Piso 9
Edificio Aviana - Borgota Columbia

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)
LLFC Corporation
870 Research Drive, Suite #2
Palm Springs, California 92262
Riverside County

U.S. Bank National Association
60 Livingston Street
St. Paul, Minnesota 55107
Ramsey County

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN
THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:    THIS ACTION SHOULD BE ASSIGNED TO:    ☐ WHITE PLAINS    ☒ MANHATTAN
(DO NOT check either box if this a PRISONER PETITION/PRISONER CIVIL RIGHTS COMPLAINT.)

DATE 3/28/16    SIGNATURE OF ATTORNEY OF RECORD      ADMITTED TO PRACTICE IN THIS DISTRICT

     /s/Samuel Feldman      [ ] NO

RECEIPT #      [x] YES (DATE ADMITTED Mo. __4__ Yr. _1977_ )
     Attorney Bar Code # SF6704

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ _____ is so Designated.

Ruby J. Krajick, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

CONFIDENTIAL      CAPITAL0001815