# EXHIBIT 20

# LLFC CORPORATION

870 Research Drive, Suite #2-Palm Springs, California 92262
Telephone: (760) 325-0067    Facsimile: (760) 325-0433

## LETTER OF INTENT

LLFC CORPORATION together with OCEAN SKY FINANCE LTD. is pleased to present the following Letter of Intent, which is subject to and based upon the terms and conditions contained herein:

1. **LESSOR**

   A to-be-formed special purpose company established by LLFC CORPORATION and OCEAN SKY FINANCE LTD., or their nominee.

2. **LESSEE**

   YUNNAN HONGTU AIRLINES CO., LTD. ("HONGTU AIR")
   Yunnan Province, Peoples Republic of China

3. **TRANSACTION**

   The transaction involves the operating lease of two (2) new Airbus A320-214 aircraft bearing manufacturer's serial numbers 6871 and 6876. The aircraft will be leased on 72-month operating leases.

4. **AIRCRAFT**

   Two (2) new Airbus A320-214 aircraft bearing manufacturer's serial numbers 6871 and 6876, each equipped with a full complement of CFM56-5B4/3 engines (hereinafter the "Aircraft").

5. **SCHEDULED DELIVERY DATE, DELIVERY CONDITIONS; RE-DELIVERY LOCATION AND CONDITIONS**

   a) Lessee shall accept the Aircraft "As-Is, Where-Is" new with a valid EASA Certificate of Airworthiness. The aircraft will be delivered at Teruel, Spain, and the lease term is expected to commence on or about May 20, 2016.

   b) The Re-delivery location shall be such major U.S. International Airport as may be mutually agreed upon by the parties.

   c) The Aircraft will be redelivered in substantially the same condition as at delivery with normal wear and tear excepted and with the same minimum times and cycles (whichever is more limiting) remaining on the airframe, engines, landing gear and APU other time limited parts.

16.0414 LOI OPERATING LEASE (HONGTU A320'S).5.DOCX

EFGLLC000226

6.    **REGISTRATION**

It will be the Lessee's responsibility to see that the Aircraft is duly registered in Lessor's name, as Owner, and in Lessee's name, as Lessee/Operator, with the appropriate authorities having jurisdiction over such matters. Any costs and expenses incurred in connection with this registration requirement will be borne by Lessee.

7.    **TERM**

The lease term shall commence upon acceptance and delivery of the Aircraft by Lessee and shall continue for seventy-two (72) consecutive months thereafter.

8.    **LEASE PAYMENT SCHEDULE**

The total lease payment, payable monthly in advance and expressed in dollars of the United States (US$), shall be THREE HUNDRED NINETY THOUSAND UNITED STATES DOLLARS (US$390,000.00) per aircraft per month. See Exhibit "B" attached hereto for a summary of economic terms described herein.

9.    **SECURITY DEPOSIT**

Lessee will deliver to Lessor a refundable deposit in cash equal to two (2) monthly payments, or SEVEN HUNDRED EIGHTY THOUSAND UNITED STATES DOLLARS UNITED STATES DOLLARS (US$780,000.00) per aircraft (hereinafter the "Security Deposit") after 10 business days from acceptance and signing of this Letter of Intent unless before then this Letter of Intent is terminated by either party with a cause. When the Lease Agreement is executed the deposit shall be the Security Deposit referenced in the Lease Agreement and shall be refund able only as provided in the Lease Agreement.

Provided Lessee shall have fully performed its obligations under the Lease Agreement and further provided that Lessee is not then in default, Lessor shall return the Security Deposit to Lessee at termination of the Lease Term.

10.    **END OF LEASE EXTENSION OPTIONS**

Provided Lessee is in compliance with all terms and conditions of the lease and no events of default are continuing or threatened, Lessee shall have the option to renew the lease on terms consistent with the existing Lease Agreement, for up to two (2) consecutive twelve (12) month extension periods. Lessee shall give Lessor not less than 180 days' prior written notice of its intent to exercise its option to extend the charter. Lessee shall be responsible for any costs and expenses related to exercising such extension.

11.    **LEASE DOCUMENTATION**

Each party will furnish the other with all documents, financial information, waivers, and other forms as may be reasonably required to finalize this transaction.

16.0414 LOI OPERATING LEASE (HONGTU A320'S).5.DOCX

EFGLLC000227

The lease, which will be prepared by Lessor pursuant to good faith negotiation with Lessee, will contain provisions normally found in an aircraft transaction of this type, including but not limited to provisions on use, condition upon delivery and return, condemnation, expropriation, taxes, maintenance, insurance and financial reporting. All instruments and documents contemplated or required hereby or relating Lessor's and Lessee's capacity and authority to enter into the lease and to execute the documents, instruments, certificates, opinions and assurances as Lessor or Lessee may reasonably request, and all procedures in connection therewith, will be subject to the approval of Lessor and its counsel and Lessee as to form and substance, such approval not to be unreasonably withheld.

12.  **COSTS AND EXPENSES**

Each party shall be responsible for its own costs and expenses incurred in connection with this transaction, including but not limited to attorney fees, documentation and recording fees, escrow fees, facility fees, appraisal fees, travel and out-of-pocket expenses.

13.  **TAXES, FEES, ASSESSMENTS, ETC.**

All taxes, other than taxes on the income of Lessor, shall be the responsibility of Lessee, subject to customary lease exclusions, including but not limited to sales, use and VAT taxes related to the leasing, use, operation (including, but not limited to landings and take-offs), return or other disposition thereof, or upon the rentals, receipts or earnings arising therefrom (including, without limitation, the Rent or the Maintenance Reserves) or otherwise with respect to or in connection with the transaction contemplated by the Lease and any out-of-pocket costs and expenses attributable to any of the foregoing incurred by Lessor.

14.  **LESSEE'S OBLIGATIONS UNDER LEASE AGREEMENT**

Lessee will be obligated to make timely lease payments and to pay all expenses and other payments as more fully described in the Lease. Consistent with this type of arrangement, Lessee and Lessor will agree on mutually acceptable indemnification provisions pursuant to which (subject to certain standard exceptions) Lessee will indemnify Lessor against all liabilities, hazards, contingences and risks of loss of the Aircraft, except for the gross negligence or willful misconduct of Lessor.

15.  **INSURANCE**

Lessee will provide Lessor with evidence of insurance coverage by insurance companies acceptable to Lessor. Such coverage will include: (i) all risk hull and physical damage insurance in an amount equal to US$50,000,000 per aircraft, naming Lessor (or its nominee) as Loss Payee and containing a breach of warranty endorsement; and (ii) appropriate liability insurance, naming Lessor as additional insured, and in such amounts as are satisfactory with Lessor and in keeping with industry practices but in no case shall the amount be less than US$500,000,000.00 per aircraft. All insurance shall contain the usual breach of warranty endorsement and requirement for thirty (30) days prior written notice to Lessor in case of termination or material alteration and seven (7) days written notification in case of war. Lessee will be liable for the payment of all insurance premiums covering the Aircraft under the Lease Agreement.

16.0414 LOI OPERATING LEASE (HONGTU A320'S).5.DOCX



EFGLLC000228

16. **MAINTENANCE AND WARRANTIES**

LESSOR WILL HAVE NO OBLIGATION OF ANY KIND TO LESSEE WITH RESPECT TO MAINTENANCE OR WARRANTY OF THE AIRCRAFT. ALL MANUFACTURER'S, VENDOR'S, PRIOR OWNER'S OR OPERATOR'S, OR ANY REPAIR STATION'S WARRANTIES SHALL BE ASSIGNED BY LESSOR TO LESSEE TO THE FULLEST EXTENT POSSIBLE. The Aircraft will at all times be maintained by Lessee as "airworthy" and in accordance with all applicable laws, rulings or mandatory guidelines, as promulgated by the FAA or any other governmental authority having jurisdiction over the Aircraft and the manufacturer.

If at any time the Aircraft are returned to Lessor either by reason of early termination or expiration of the lease term, the Aircraft will be redelivered to Lessor in the same condition as when it was originally delivered to Lessee, less normal wear and tear. The Aircraft will be redelivered with the fuselage and vertical fin painted white. The Aircraft must be redelivered with a fresh "C" check and the engines must have no less than the remaining hours or cycles between major overhaul and other continuous check and inspections as when originally delivered to Lessee. Any remedial action required to meet this requirement will be accomplished at Lessee's expense.

Lessee will be responsible for any AD's issued within the term of the Lease and requiring compliance within six months after lease termination or expiration.

Lessee shall pay to Lessor during the term of the Lease and as a reserve for maintenance a US$ amount based upon the then prevailing maintenance cost, for every hour or cycle, as the case may be, of usage, as describe in "Exhibit A" attached hereto.

17. **MISCELLANEOUS**

a) Lessee warrants that the lease of the Aircraft does not violate the terms of any revolving credit, loan or lease agreement currently in effect and that Lessee is not currently in violation of any long terms revolving credit, loan or lease agreements.

b) Provided, Lessee is not in default under the terms and conditions contained in the Lease Agreement, neither Lessor nor any party claiming lawfully by, through or on account of Lessor will interfere with the quiet use, possession and enjoyment of the Aircraft by Lessee. At delivery, Lessee shall be entitled to a letter of quiet enjoyment (the form and substance of which shall be reasonably satisfactory to Lessee) from Lessor and its senior lender.

18. **GUARANTOR**

The obligations of the Lessee under the Lease Agreement contemplated hereby shall be fully and unconditionally guaranteed by the parent company and/or majority shareholder of Lessee.

19. **CONDITIONS PRECEDENT**

16.0414 LOI OPERATING LEASE (HONGTU A320'S).5.DOCX

EFGLLC000229

This Letter of Intent will be subject to the following conditions:

a) Verification and final approval of Lessee's and Guarantor's credit by Lessor's Board of Directors and its senior lender.

b) The lack of material adverse change in the financial condition of Lessee or Guarantor prior to the lease commencement.

c) Inspection of the Aircraft by Lessee. Lessee's representatives shall have full access to Aircraft records as may reasonably be required.

d) Availibility of the Aircraft.

e) Approval of the final lease and purchase document by Lessee's and Lessor's Board of Directors and its senior lender.

20.  **CONFIDENTIALITY**

THE TERMS AND CONDITIONS SET FORTH IN THIS LETTER OF INTENT ARE CONFIDENTIAL AND ARE BETWEEN LESSOR AND LESSEE ONLY. NEITHER LESSOR NOR LESSEE MAY AT ANY TIME DISCLOSE THE INFORMATION CONTAINED HEREIN TO THIRD PARTIES (OTHER THAN SUCH PARTY'S ADVISORS OR AS MAY BE REQUIRED BY APPLICABLE LAW OR TO OBTAIN ANY NECESSARY GOVERNMENT CONSENTS OR TO OTHERWISE FULFILL SUCH PARTY'S OBLIGATIONS HEREUNDER) WITHOUT THE PRIOR WRITTEN CONSENT OF THE OTHER PARTY.

21.  **FINAL LEASE AGREEMENT**

It is the intention of Lessor and Lessee that the final Lease Agreement will basically incorporate the terms of this Letter of Intent along with other terms normally found in such transactions.

22.  **GOVERNING LAW**

This Letter of Intent shall be governed by and construed in accordance with the laws of the State of California, United States of America.

23.  **LANGUAGE**

In case of any discrepancies in translation between Chinese and English versions of the documentation, the English language version will prevail.

16.0414 LOI OPERATING LEASE (HONGTU A320'S).5.DOCX

EFGLLC000230

If the foregoing Letter of Intent is acceptable, please execute in the space provided and return one copy along with the Security Deposit as described in paragraph 9 within three (3) working days from the date hereof.

Dated:    April 15, 2016

LLFC CORPORATION

By: _____

W.M. Eddington , President

OCEAN SKY FINANCE LTD.

By: _____
Name: _____
Title: _____

ACCEPTED THIS ___ day of April 2016.

YUNNAN HONGTU AIRLINES CO., LTD.

By: _____
Name: _____
Title: _____

GUARANTOR: _____

By: _____
Name: _____
Title: _____

16.0414 LOI OPERATING LEASE (HONGTU A320'S).5.DOCX

EFGLLC000231

EXHIBIT "A"
MAINTENANCE RESERVES

Lessee shall pay the following amounts by way of Maintenance Reserves, monthly in arrears in respect of hours flown on the Aircraft, based upon an assumed hour/cycle ratio of 2:1. Maintenance Reserves are payable on the tenth day of each month in respect of hours flown in the previous calendar month as follows:

| | |
|---|---|
| Airframe 6Y/4C Check: | US$13,900 per month |
| Airframe 12Y/8C Check: | US$6,950 per month |
| Engine Reserves (Restoration): | US$88.50 per flight hour per engine |
| Engine (LLP's): | US$125.00 per cycle per engine |
| Landing Gear Reserves: | US$3,625 per month |
| APU Reserves: | US$36.00 per APU operating hour |

Maintenance Reserves will be subject to annual adjustment where the hour/cycle ratio varies from that of 2:1. Adjustments to the maintenance reserve rates will be made if the maintenance program, engine thrust or derate, operating environment, and hour to cycle ratios or utilization vary from the original assumptions.

The hours and cycles to calculate the reserve payments shall be provided to Lessor on or prior to the 10th day of each month for the prior month's utilization. The above amounts are quoted in January 2016 US dollars and shall be adjusted 3.0% on January 1st of each year thereafter, with the exception of the engine LLPs, which shall be escalated in accordance to the then OEM LLP catalogue prices.

**The Maintenance Reserves shall be subject to review and agreement between the parties and the rates and terms shall be confirmed in the final lease agreement.**

Financial Adjustment:

To the extent that at redelivery the maintenance status of the Aircraft differs from that at delivery to Lessee, a Financial Adjustment will be made in respect of each maintenance item to compensate the Lessee or the Lessor as the case may be. It is envisioned that the then current Maintenance Reserve rates will be used to perform this adjustment. Notwithstanding anything contained herein to the contrary, Lessor shall not be obligated to make any payment, cash or otherwise, to Lessee beyond the amounts in the Maintenance Reserve account. Conversely, if after the Financial Adjustment, insufficient amounts exist in the Maintenance Reserve account to compensate the Lessor for the changes in maintenance status since the delivery date, according to the manufacturer's MPA or as mutually agreed, the Lessee will pay to the Lessor the amount of such deficiency.

16.0414 LOI OPERATING LEASE (HONGTU A320'S).5.DOCX



EFGLLC000232

EXHIBIT "B"
SUMMARY OF ECONOMIC TERMS

The following is a summary of economic terms as described further in the preceding terms and conditions:

| | |
|---|---|
| Term: | 72 Months |
| End of Lease Extension Options: | Two (2) consecutive twelve (12) month extension periods. |
| Lease Payments: | US$390,000 per month per aircraft |
| Security Deposit: | US$780,000 per aircraft |
| All Risk Hull and Physical Damage Insurance Coverage Minimum Limits: | US$50,000,000 per aircraft |
| Liability Insurance Coverage Minimum Limits: | US$500,000,000 per aircraft |

16.0414 LOI OPERATING LEASE (HONGTU A320'S).5.DOCX

EFGLLC000233