IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eversource Capital LP, | No. CV-18-02583-PHX-SMM |
| Plaintiff, | **ORDER** |
| v. | |
| Douglass Elroy Fimrite, et al., | |
| Defendants. | |

Before the Court is Plaintiff Eversource Capital, LP's ("Eversource") Motion for Partial Summary Judgment. (Doc. 198.) The motion is fully briefed. (Docs. 199; 203; 204; 209.) Having reviewed the parties' briefings, separate statement of facts, and relevant exhibits, the Court issues the following ruling.

**I.    BACKGROUND[1]**

Eversource is an Idaho limited partnership in the business of providing and evaluating investment opportunities for its members. (Doc. 143 at 9.) Eversource also provides short-term private loans to individuals and entities. (Id.)

Defendant Douglas Fimrite ("Fimrite") is a Canadian citizen who is the president and chief executive officer of Defendant EFG America, LLC ("EFG") and Defendant EF Global Corporation ("EF Global") and controls Defendant Ocean Sky Finance Limited ("Ocean Sky"). (Id. at 10; Doc. 204-1 at 2.) Defendant Don Carroll ("Carroll") and

---

[1] The Court will review only the relevant background upon which Eversource's motion is based. A more comprehensive background can be found in previous orders. (See Docs. 217 at 2-6; 227 at 1-5.)

Defendant Mark Boyd ("Boyd") are each a vice president of EFG and both reside in Arizona. (Doc. 143 at 14.) Defendant Charles Niehaus ("Niehaus") is an attorney licensed in Ohio with clients in Arizona and is the principal in Defendant Niehaus Kalas & Hinshaw, Ltd. (Id. at 15.)

Eversource filed the instant suit in federal district court on the basis of diversity jurisdiction, alleging that as part of a scheme to defraud investors, Defendants Fimrite– using a network of entities related to Fimrite including EFG, Enviropark Texas, LLC, EF Global, EFG Polymers, LLC, D&H Sophie Brown, LLC ("Sophie Brown"), Ocean Sky, Tex-Gas Holdings, LLC, Carey Holdings, Ltd., Texen Holdings, International Tejas, and Gate Corporation Limited–and Carroll, Boyd, Niehaus, Niehaus Kalas & Hinshaw, Ltd., and Doris Fimrite (collectively, "Defendants"), induced Eversource to make a series of loans to EFG totaling $1,200,000.00. (Id. at 1-2.) Eversource also alleges that Defendants induced Eversource to purchase royalty units in EFG based on false and fraudulent information. (Id. at 2.) In the instant motion, Eversource moves the Court to grant summary judgment against Fimrite and EFG for breach of specific alleged loans made in December 2015, June 3, 2016, and June 10, 2016; against EFG for breach of an alleged Royalty Agreement; and against Ocean Sky and EF Global on each of their counterclaims. (Doc. 198.) What follows next are details concerning the disputed loans Eversource alleges to have made to Fimrite and EFG, the contested Royalty Agreement, and Ocean Sky and EF Global's counterclaims.

**A. The Loans**

Ryan McHugh ("McHugh") is Eversource's manager and a non-party to this suit. (Doc. 143 at 9.) On August 25, 2015, McHugh began consulting with EFG through MQ Management Group, and in September 2015 he "traveled to EFG to begin transitions accounting" and to perform financial functions for EFG. (Id. at 24.)

Eversource alleges that on December 2, 2015, it provided $100,000.00 to EFG for the "benefit of EFG" (the "December 2015 loan"). (Docs. 199 at 1-2.) Eversource states that the funds were loaned to EFG pursuant to an oral agreement. (Id.) Defendants admit

that EFG received $100,000.00; however, Defendants assert that the funds could have been provided to EFG by McHugh, his investors, or Eversource and the funds were not provided pursuant to an agreement. (Doc. 204 at 2.)

Then, on June 3, 2016, McHugh sent the following email to Fimrite:

Please confirm the following terms are acceptable to you and EFG [] for a $250,000.00 advance of funds to be utilized in an extension with EFG's due diligence of its approved purchase of Edge Rubber.

- Advance of $250,000.00 to the [Niehaus Kalas & Hinshaw, Ltd.] IOLTA account, c/o Charles Niehaus, attorney for EFG [] by the end of business 6-3-2016
- Repayment to be made from the following commitments due EFG []
  - Elliot Crosby $100,000.00
  - Marvin John $50,000.00 to $100,000.00
  - Jay Hathcock $50,000.00
- If above investors do not materialize, EFG will repay with first available funds after the end of June 2016.
- Interest / Fees $60,000.00 cash plus one share of EFG Class A Royalty unit – face value $50,000.00
- Total Repayment $310,000.00 cash plus one EFG Class A Royalty Unit
- Investor will have 15 days after repayment to convert the $60,000.00 cash into one additional Class A Royalty Unit.

(Doc. 198-11 at 2.) In response, Fimrite confirmed the terms of the agreement. (Id.) On June 3, 2016, Eversource provided $250,000.00 to the Niehaus Kalas & Hinshaw, Ltd. IOLTA account (the "June 3, 2016 loan"). (Docs. 199 at 2; 204 at 3.) The June 3, 2016 loan was used for EFG's benefit. (Docs. 199 at 3; 204 at 4.)

Then, on June 9, 2016, Fimrite contacted McHugh to request an additional $50,000.00 loan. (Docs. 199 at 2-3; 204 at 4.) The purpose of the loan was to supplement EFG's payroll needs. (Docs. 199 at 2-3; 204 at 4.) On June 10, 2016, Eversource wired $50,000.00 to EFG (the "June 10, 2016 loan"). (Docs. 199 at 3; 204 at 4.) Eversource alleges that it provided the funds to EFG pursuant to an oral agreement. (Doc. 198 at 4.)

Thereafter, on October 17, 2016, EFG entered into a loan agreement with a third party for $500,000.00. (Docs. 199 at 3; 204 at 4.) Pursuant to the loan agreement the proceeds of the loan were to be "used for business purposes" of EFG. (Doc. 198-15 at 2.)

- 3 -

EFG, subsequently, used the loan to pay $250,000.00 to Niehaus Kalas & Hinshaw, Ltd. and $250,000.00 to Sophie Brown. (Docs. 199 at 3; 204 at 4.)

Then, on October 27, 2016, McHugh, from Eversource's email account, made a demand for repayment of the December 2015 loan, the June 3, 2016 loan, and the June 10, 2016 loan. (Docs. 199 at 3; 204 at 4; 198-13 at 2-3.) Subsequently, on December 2, 2016, McHugh, sent the following email from Eversource's email account to Niehaus: "Please refund the $250,000.00 deposited in your firms [*sic*] IOLTA account from Eversource [] on June 3, 2016. I have attached wiring instructions for your reference. My expectation is to have this matter closed no later than close of business on Monday, December 5, 2016." (Doc. 198-14 at 2.)

### B. The Royalty Agreement

During the transaction of the alleged loans, Eversource asserts that it also entered into a Royalty Agreement with EFG, for which EFG sold to Eversource six EFG Class A Royalty Units each valued at $50,000.00. (See Doc. 198 at 4.) Eversource alleges that the transaction began with an email to McHugh from Fimrite stating the following: "Thank you for your time today and for your interest in our project. I have attached the [Private Placement Memorandum] and related documents per your request." (Doc. 198-3 at 2.) Fimrite attached to the email unsigned copies of EFG's Private Placement Memorandum, Proforma Royalty ROI, and Subscription Agreement. (Docs. 198-4; 198-5; 198-6.) The Private Placement Memorandum contained a copy of EFG's unsigned Royalty Agreement and Royalty Units Certificate. (Doc. 198-4 at 30-41.)

Then, on November 18, 2015, McHugh emailed Carroll and advised Carroll that he wanted his Royalty Certificate issued to Eversource. (Doc. 198-7 at 2.) In response, Carroll directed McHugh to "[f]ill out the attached entity subscription agreement" and return it. (Id.) The Subscription Agreement attached to the email contained a "confidential entity investor questionnaire" for the purchase of EFG securities. (Doc. 198-8 at 5-17.) While it is unclear if McHugh completed and returned the Subscription Agreement and it is unclear whether this communication was related to the beforementioned communication between

McHugh and Fimrite, on February 11, 2016, Carroll sent the following email to EFG's vendor: "Please print the following three 'A' certificates to the following… Eversource [] Cert #A122 Five and zero thousandths – (5 Series A Units)." (Doc. 198-9 at 2.) Subsequently, a Series A Royalty Unit Certificate numbered A122 was issued to Eversource on October 1, 2015. (Doc. 198-10 at 2.) The certificate read that Eversource owned "Five and zero thousandths – (5 Series A Units) [i]n the amount of Fifty Thousand Dollars ($50,000.00) Per Royalty Unit." (Id.) Additionally, the certificate contained the signature of EFG's president. (Id.)

Thereafter, on June 3, 2016, a Series A Royalty Unit certificate number A151 was issued to Eversource. (Doc. 198-12 at 2.) The certificate read that Eversource owned "One and zero thousandths Series A Royalty Unit(s) (1,000 Series A Units) [i]n the amount of fifty thousand dollars ($50,000.00) per Royalty Unit." (Id.) Additionally, the certificate contained the signature of EFG's president. (Id.)

### C. The Counterclaims

During the above transactions, Ocean Sky and EF Global entered into an agreement with a third party for the purchase of aircrafts. (See Doc. 199 at 5-9.) On October 6, 2015, Ocean Sky and Le Groupe Delta S.A., a nonparty in this suit, made an offer to Synergy Aerospace Corporation, another nonparty in this suit, for the purchase of three "new Airbus A320-214 bearing manufacturer's serial numbers 6872, 6896, and 6876" for $47,000,000.00 per aircraft. (Doc. 198-18 at 2.) Pursuant to the offer, the named buyer was "LLFC Corporation, or its nominee, together with LE Groupe Delta, S.A. and with support from Ocean Sky []." (Id. at 4.) The same day the offer was sent, Synergy accepted the offer. (Id. at 3.) According to the agreement between the entities, the buyer was required to pay an initial deposit of ten percent of the purchase price in the following three installments: $500,00.00 per aircraft payable within five business days from acceptance of the offer, five percent of the purchase price within twenty business days from the payment of the previous deposit, and the remaining portion of the deposit within twenty-five business days after payment of the initial deposit. (Id. at 4.)

Then, Defendants allege, on October 19, 2015, McHugh, on behalf of Eversource, made a deposit of $400,000.00 to Synergy Aerospace Corporation and on October 30, 2015, Eversource made a second deposit of $400,000.00 to Synergy Aerospace Corporation, each for the aircraft purchase. (Doc. 204 at 6.) Defendants assert that the deposits were made pursuant "[Eversource's], McHugh's, or McHugh's investors' agreement to fund the initial deposits for the aircrafts." (Id.)

Subsequently, on February 17, 2016, Fimrite sent the following email to Mark Eddington, a representative of LLFC Corporation and a nonparty to this suit:

> Further to our conversation, I understand that we are close to finalizing a letter of intent with our customer and the establishment of a new escrow account that will be funded from their deposit. Upon the release of a current deposit, please accept this as my authority to pay out these funds to or at the written direction of [] McHugh. These funds were advanced to EF Global Corporation pursuant to an intended loan/investment structure in EFG [] Class A Royalty Units; that proposed structure has been disrupted and will require restructuring. I anticipate, and hope, that we will be able to restructure the investment on mutually acceptable terms; however, we will do so with the intended investment funds in the hands of the potential investors.

(Doc. 198-19 at 2.)

Thereafter, Synergy Aerospace Corporation provided LLFC Corporation notice that it was terminating the agreement and filed suit against LLFC Corporation for breaching the agreement. (Docs. 199 at 8; 204 at 7.) Synergy Aerospace Corporation sought release of the $800,000.00 deposit from escrow. (Id.) Later, the $800,000.00 deposit was released to Synergy Aerospace Corporation by an escrow agent. (Id.)

On April 15, 2017, LLFC Corporation and Ocean Sky executed a letter of intent with nonparty Yunnan Hongtu Airlines Co., Ltd. for the "lease of two (2) new Air bus A320-214 aircraft bearing manufacturer's serial numbers 6871 and 6876." (Docs. 199 at 8; 204 at 7; 198-22 at 2.) The letter of intent required a payment of $390,000.00 for a seventy-two-month lease with a deposit of $780,0000.00 per aircraft. (Doc. 198-22 at 2-3.) However, Yunnan Hongtu Airlines Co., Ltd. failed to make the required deposit and the agreement was terminated. (Docs. 199 at 8; 204 at 7.)

Then, on July 25, 2016, LLFC Corporation entered into an agreement with Terra

Master Incorporated for the sale of "up to four (4) new Airbus A320-214" for $58,000,000.00 per aircraft. (Docs. 199 at 9; 204 at 7; 198-23 at 2-3.) Ocean Sky was not a party to this agreement. (Docs. 199 at 9; 204 at 7.) The terms of the sale required Terra Master Incorporated to pay a deposit of ten percent of the total purchase price within three business days of acceptance of the agreement. (Doc. 198-23 at 4.) Terra Master Incorporated failed to make the required deposit and the agreement was terminated. (Docs. 199 at 9; 204 at 7.)

Based on the above, Ocean Sky and EF Global contend that they lost a total of $1,248,000.00 in lost profits in regard to the lease transaction with Yunnan Hongtu Airlines Co., Ltd. and a total of $3,166.666.50 in regard to the sale transaction with Terra Master Incorporated. (Docs. 199 at 9; 204 at 7; 178 at 66-67.) Ocean Sky and EF Global now bring a counterclaim against Eversource for breach of contract and promissory estoppel. (Docs. 199 at 9; 204 at 7; 178 at 66-67.)

**II.   LEGAL STANDARD**

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." Fed. R. Civ. P. 56(a). A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, show "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Id.; see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130. The court will determine whether a genuine issue of material fact exists through the "lens of the quantum of proof applicable to the substantive claim at

issue." Steven Baicker-McKee et al., Federal Civil Rules Handbook 1104 (Thomson Reuters 25th ed. 2018); see Anderson, 477 U.S. at 254.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial; instead, the moving party may identify the absence of evidence in support of the opposing party's claims. See Celotex, 477 U.S. at 317, 323-24. The party opposing summary judgment need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." Id. at 324. However, the opposing party "may not rest upon the mere allegations or denials of [the party's] pleadings, but … must set forth specific facts showing that there is a genuine issue for trial." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)).

**III.   DISCUSSION**

Eversource moves the Court to enter summary judgment against Fimrite and EFG for breach of the December 2015, June 3, 2016 and June 10, 2016 loans; against EFG for breach of the Royalty Agreement; and against Ocean Sky and EF Global for their counterclaims of breach of contract and promissory estoppel. (Doc. 198.) However, within the instant issues are material questions of fact for which the parties provide scant, ambiguous, and conflicting evidence. As a result, the Court can neither determine a choice of law forum nor grant summary judgment in favor of Eversource.

First, a question of fact exists as to the identity of the parties to the December 2015 and June 10, 2016 loans, which are both alleged oral agreements. While none of the parties here dispute that there is somewhat of an agreement with respect to the loans, with nothing in writing and nothing to guide the Court, each party relies on statements that are in

complete odds in material issues. For example, to show that Eversource, Fimrite, and EFG are all parties to the December 2015 and June 10, 2016 loans, Eversource submits to the Court its complaint in this matter, Defendants' answer, McHugh's declaration, and an email from McHugh to Fimrite demanding repayment of the loans. (Docs. 143; 178; 198-1; 198-13.) The Court is unable to consider Eversource's complaint nor Defendants' answer because Eversource's complaint is not verified. Keenan v. Hall, 83 F.3d 1083, 1090 n. 1 (9th Cir.1996) ("A verified complaint may be treated as an affidavit to oppose summary judgment to the extent it is 'based on personal knowledge' and sets forth specific facts admissible in evidence.'"); see also Jones v. Blanas, 393 F.3d 918, 922–23 (9th Cir.2004); Lopez v. Smith, 203 F.3d 1122, 1132 n. 14 (9th Cir.2000) (en banc); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir.1995); Archer v. Gipson, 108 F.Supp. 3d 895, 906 (E.D. Cal. 2015) ("If a plaintiff states that the facts in the complaint are true under penalty of perjury … the pleading is verified.") This leaves only McHugh's declaration and an email between McHugh and Fimrite; however, neither exhibit provides adequate support to meet the summary judgment standard. In his declaration, while McHugh states that Eversource loaned EFG $100,000.00 in December 2015 and $50,000.00 on June 10, 2016, McHugh never asserts that Fimrite is a party to either loan. (See Doc. 198-1 at 2-3.) Additionally, McHugh's email to Fimrite gives no indication that Fimrite is a party to the loan nor personally guaranteed the loans, stating only that a wire transfer for repayment was to be made by EFG to Eversource. (Doc. 198-13 at 2-3.) Because the evidence Eversource submits fails to show that Eversource, and Fimrite, and EFG are all parties to the loans, Eversource does not meet its initial burden to demonstrate the absence of genuine issue of material fact.

Next, while the parties do not dispute the existence of the June 3, 2016 loan, the parties do dispute the identity of the parties to the loan and the loan's terms, including the meaning of "first available funds." The evidence Eversource submits to show the absence of genuine issue of dispute with respect to the identity of the parties to the loan and the loan's terms is ambiguous and conflicting. First, Defendants rigorously dispute

Eversource's interpretation of "first available funds," and the email Eversource submits to the Court detailing the loan does not make the definition clear. Next, with respect to the parties to the loan, Eversource submits to the Court McHugh's declaration, which states that McHugh, on behalf of Eversource, emailed Fimrite to discussion the terms of the loan and that Eversource required both Fimrite and EFG to agree to the terms. (Doc. 198-1 at 2.) However, it is unclear in the email whether McHugh is acting on behalf of Eversource because McHugh is using an EFG email account and does not mention whatsoever that Eversource will be a party to the loan or will be providing the loan funds. (Doc. 198-11.) Additionally, McHugh's declaration conflicts with the email as nowhere in the email does it state that Fimrite is a party to the loan or that he is personally guaranteeing the loan. (See id.) The email only states that EFG will be required to repay the loan with first available funds. (Id.) As a result of the before mentioned, Eversource fails to make an evidentiary showing that it is a party to the loan or concerning Fimrite's liability to the loan. See Richardson v. Runnels, 594 F.3d 666, 671-72 (9th Cir. 2010) (movant must make some evidentiary showing to support claim for summary judgment).

The Court next finds that there is a genuine issue of material fact with respect to the Royalty Agreement. To show that EFG breached the terms of the Royalty Agreement, Eversource submits to the Court EFG's Private Placement Memorandum, Royalty Agreement and Certificate, Subscription Agreement, and Subscription Booklet; however, each document is unsigned and blank. (Docs. 198-4 at 3-28; 29-53; 55-63; 65-80.) Eversource's other evidence includes two Royalty Certificates. (Docs. 198-10 at 2; 198-12 at 2.) This evidence is incomplete. First, although the Royalty Certificates are in Eversource's name, signed by EFG's president, and including language describing the monetary value of the certificates, the Royalty Certificates also include the following language: "This Certificate and its terms are subject to the terms of the Royalty Agreement and Certificate." (Doc. 198-10 at 2; 198-12 at 2.) Despite this language, Eversource fails to provide the Court a Royalty Agreement and Certificate which has been signed by all parties to be charged, therefore, Eversource's evidence to show the existence of an

agreement is incomplete. Accordingly, Eversource does not meet its initial burden to demonstrate the absence of genuine issue of material fact.

The Court finally finds that there is a genuine issue of material fact with respect to Ocean Sky and EF Global's counterclaims. The parties, here, dispute that an actual agreement between Eversource, Ocean Sky, and EF Global exists. (Docs. 198 at 7; 203 at 17.) Eversource asserts that it did not enter into an agreement with Ocean Sky and EF Global, while Ocean Sky and EF Global claim that Eversource did agree to pursue an investment opportunity in which it would receive, in return, proceeds from the purchase of the airplanes. The facts and the record with respect to Ocean Sky and EF Global's counterclaims are very much in dispute and Eversource has submitted very little evidence to meet its burden to show the absence of genuine issue of material fact. Therefore, this matter will be left for a jury to decide and, at the end of the line, the question presented will be: Is anyone is entitled to a verdict?

## IV. CONCLUSION

Eversource has provided to the Court scant, ambiguous, conflicting, and incomplete evidence, thus, failing to meet its initial burden of showing that there is no genuine issue of material fact. In light of the above, the Court denies Eversource's motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED denying** Eversource's Motion for Partial Summary Judgment. (Doc. 198.)

Dated this 30th day of November, 2020.

_____
Honorable Stephen M. McNamee
Senior United States District Judge